**POMERANTZ LLP**
Jeremy A. Lieberman (*pro hac vice*)
J. Alexander Hood II (*pro hac vice*)
Murielle J. Steven Walsh (*pro hac vice*)
Eric D. Gottlieb (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile:  212-661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com
Email: mjsteven@pomlaw.com
Email: egottlieb@pomlaw.com

*Counsel for Lead Plaintiff, the Proposed Class, and Additional Plaintiff*

- additional counsel on signature page -

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS MENDOZA, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HF FOODS GROUP INC., ZHOU MIN NI, XIAO MOU ZHANG, CAIXUAN XU, and JIAN MING NI,<br><br>Defendants. | Case No. 2:20-cv-02929-ODW-JPR [c/w: 2:20-cv-03967-ODW-JPR]<br><br>AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED<br><br>TRIAL DATE:  None set<br>JUDGE:          Hon. Otis D. Wright II<br>CTRM:           5D, 5th Floor |

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ..................................................................1

II.     JURISDICTION AND VENUE ................................................................4

III.    PARTIES ..................................................................................................5

        A.     Plaintiffs ........................................................................................5

        B.     Defendants .....................................................................................5

IV.     RELEVANT NON-PARTIES ..................................................................8

V.      FACTUAL BACKGROUND ..................................................................10

        A.     The Company ................................................................................10

        B.     The Company's Undisclosed Fleet of Luxury Cars ....................12

        C.     Related Party Misconduct ...........................................................15

               1.     Related Party Transactions in Violation of Company Policy, As Well As GAAP and SEC Rules, Funnel Money to Defendants and Their Family Members, while Decreasing the Company's Wholesale Margins ..............................................................................20

                      a.     Revolution Industry, LLC, and Revolution Automotive LLC 21

                      b.     NC Noodle ...................................................22

                      c.     Other Disclosed Related Party Transactions .........................25

               2.     The B&R Merger: An Apparent Undisclosed Related Party Transaction Rife with Conflict of Interest Given the Link Between B&R, Chinese Investment Groups, and HF Foods .........................25

        D.     The Gaming of the Russell Index/Freely Tradable Shares and Float ..........29

VI.     DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS ........................................................................................31

        A.     Defendants' Failure to Disclose the Company's Fleet of Luxury Cars .......32

        B.     Misrepresentations and Omissions Concerning Related Party Transactions ........................................................................................46

        C.     "Gaming" of the Russell Index ...................................................94

VII.    THE TRUTH BEGINS TO EMERGE BUT DEFENDANTS CONTINUE TO MISLEAD INVESTORS ..............................................95

        A.     The Hindenburg Research Report Shocks the Market by Beginning to Reveal the Truth ......................................................95

        B.     Defendants Issue False and Misleading Statements in the Wake of the Hindenburg Report ...........................................................106

VIII.   THE TRUTH CONTINUES TO EMERGE ..........................................112

IX.     ADDITIONAL SCIENTER ALLEGATIONS ......................................113

X.      LOSS CAUSATION ............................................................................120

XI.     CLASS ACTION ALLEGATIONS ......................................................121

COUNT I ..........................................................................................................124

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

COUNT II ......................................................................................................128
COUNT III .....................................................................................................130
PRAYER FOR RELIEF ...............................................................................132
JURY TRIAL DEMANDED ........................................................................132

2

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Lead Plaintiff Yun F. Yee ("Lead Plaintiff") and additional plaintiff Walter Ponce-Sanchez ("Additional Plaintiff," and collectively, with Lead Plaintiff, "Plaintiffs"), individually and on behalf of all other persons similarly situated, by Plaintiffs' undersigned attorneys, allege the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a review of the Defendants' public documents, announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding HF Foods Group Inc. ("HF Foods," "HF" or the "Company"), analysts' reports and advisories about the Company, and review and analysis of information readily obtainable on the Internet and through public databases. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.   PRELIMINARY STATEMENT

1.   This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired HF Foods securities between August 23, 2018 and November 9, 2020, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rules 10b-5 and 14a-9(a)

promulgated thereunder, against the Company and certain of its current and former top officials.

2.    HF Foods, formerly known as Atlantic Acquisition Corp. ("Atlantic"), through its subsidiaries, purports to market and distribute fresh produce, frozen and dry food products, and non-food products to Asian restaurants, primarily Chinese restaurants, and other food service customers throughout the Southeast, Pacific, and Mountain West regions in the United States.

3.    In August 2018, Atlantic completed a merger with a privately held corporation, "HF Group Holding Corporation" ("HF Group"), under which HF Group merged with a subsidiary formed by Atlantic and became the surviving entity and wholly owned subsidiary of Atlantic, which changed its name to, and began publicly trading as, HF Foods.

4.    In November 2019, HF Foods completed a business combination with B&R Global Holdings Inc. ("B&R Global" or "B&R"), a California-based Asian food service distributor and supplier, for approximately 30.7 million shares of HF Foods common stock in a deal valued at over $500 million.

5.    Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. In particular, Defendants made false and/or misleading statements and/or failed to disclose that: (i) HF Foods owned an undisclosed fleet of luxury vehicles that

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Defendants Zhou Min Ni, Chan Sin Wong, and their son, Raymond Ni, used for non-business purposes; (ii) HF Foods insiders and related parties were enriching themselves by misusing shareholder funds and HF Foods' related party transactions violated company policy, SEC regulations, and Generally Accepted Accounting Practices; (iii) HF Foods engaged in undisclosed related party transactions, including its merger with B&R, and failed to disclose ties between HF, B&R and its controlling Chinese investment group, as well as the relationship between the Company and other related parties; (iv) HF Foods was "gaming" the FTSE/Russell Index by masking the true number of shares free floating; and (v) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

6.     The truth began to be revealed on March 23, 2020, when Hindenburg Research published a report (the "Report") exposing materially adverse facts about HF Foods, including its failure to disclose: (i) transactions with related parties; (ii) its flagrant misuse of shareholder funds, including an undisclosed fleet of luxury vehicles worth approximately $1.5 million for the personal use of Zhou Min Ni, Chan Sin Wong, and their son, as well as through numerous other related party transactions; and (iii) its gaming of the FTSE/Russell Index criteria.

7.     On this news, HF Foods' stock price fell $2.52 per share, or over 20%, to close at $9.80 per share on March 23, 2020, damaging investors.

3

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

8.      On March 25, 2020, the Company and its Co-CEOs issued a statement in response to the Hindenburg Report, in which they sought to downplay the damning claims made in the Report. For example, they noted their awareness of the "derogatory claims," and instructed the public to not rely on them. They also reaffirmed the accuracy of their prior statements.

9.      However, on November 9, 2020, after the market closed, the Company stunned the public by disclosing a formal SEC investigation, as well as a previously undisclosed internal investigation, relating to the claims in the Report and this Action, as well as other related actions. The Company further disclosed that the investigations were ongoing. In response, the Company's stock price fell by about $0.92 per share on the next trading day, to close at about $7.19 per share on November 10, 2020, damaging investors.

10.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## II.      JURISDICTION AND VENUE

11.      The claims asserted herein arise under Sections 10(b), 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78n(a)(1), and 78t(a)) and Rules 10b-5 and 14a-9(a) promulgated thereunder by the SEC (17 C.F.R. §§ 240.10b-5, 240.14a-9).

12.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

13.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered, the subsequent damages took place in, and the Company maintains locations in this judicial district.

14.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## III.   PARTIES

### A.   Plaintiffs

15.     Lead Plaintiff Yun F. Yee acquired HF Foods securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

16.     Additional Plaintiff Walter Ponce-Sanchez acquired HF Foods securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

### B.   Defendants

17.     Defendant HF Foods is incorporated in Delaware. On April 30, 2020, the Company's Board of Directors decided that it will move its headquarters to 19319 Arenth Avenue, City of Industry, CA 91748. Previously, the Company's principal executive offices and headquarters were located at 6001 W. Market Street, Greensboro, NC. HF

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Foods' securities trade on the NASDAQ exchange under the ticker symbol "HFFG." HF Foods went public on the U.S. Stock market on August 23, 2018 via a reverse merger with Atlantic Acquisition Corp, at which time HF Foods' securities traded on the NASDAQ exchange under the ticker symbol "HFFG."

18.     Defendant Zhou Min Ni, together with his wife, Chan Sin Wong, founded HF Group in 1997. He has served as the Company's Chief Executive Officer ("CEO") until November 2019, at which time he began serving as the Company's Co-Chief Executive Officer ("Co-CEO"). Zhou Min Ni also served as the Company's Chairman at all relevant times during the Class Period. The Company's SEC filings during the Class Period, including its October 2, 2019 proxy, refer to Zhou Min Ni as "[k]ey management personnel[.]"

19.     Chan Sin Wong, the wife of Zhou Min Ni, co-founded HF Foods in 1997 and served as its President, Chief Operating Officer, and Director, until November 2019. Throughout the Class Period, Chan Sin Wong served as an executive of many of HF Food's key operating subsidiaries, including as President of its main operating entity, Han Feng, Inc. At all relevant times during the Class Period, Chan Sin Wong was responsible for the operation and supervision of the Company, including sales, inventory, logistics distribution, human resources, regulations and legal compliance, and she also led the development of the Company's logistics and distribution network. The Company's SEC

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

filings during the Class Period, including its October 2, 2019 proxy, refer to Chan Sin Wong as "[k]ey management personnel[.]"

20.     Defendant Xiao Mou (Peter) Zhang ("Zhang") has served as the Company's Co-CEO and as a Director since November 4, 2019. Between November 4, 2019 and May 1, 2020, he served as the Company's Chief Financial Officer ("CFO"). He served as the CEO and Secretary of B&R Global Holdings, Inc. ("B&R") prior to the combination of B&R and HF Foods that closed in November 2019.

21.     Defendant Jian Ming (Jonathan) Ni ("Jonathan Ni") served as the Company's CFO and Principal Accounting Officer during the Class Period until April 2019.

22.     Defendant Caixuan Xu ("Xu") has served as the Company's Vice President, Chief Internal Control and Financial Planning Officer since November 4, 2019. She previously served as the Company's CFO and Principal Accounting Officer from April 2019 to November 2019.

23.     Defendants Zhou Min Ni, Chan Sin Wong, Zhang, Jonathan Ni, and Xu are sometimes collectively referred to herein as the "Individual Defendants."

24.     The Individual Defendants possessed the power and authority to control the contents of HF Foods' SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of HF Foods' SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the

7

ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with HF Foods, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

25. HF Foods is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

26. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to HF Foods under *respondeat superior* and agency principles.

27. The Company and the Individual Defendants are referred to herein collectively as the "Defendants."

**IV.    RELEVANT NON-PARTIES**

28. Raymond Ni is the son of Chan Sin Wong and Zhou Min Ni. According to the Company's SEC filings, Raymond Ni owns 100% of Revolution Industry, LLC, an entity that HF Foods purportedly made millions in purchases from prior to and during the Class Period. For example, the Company's October 2, 2019 Schedule 14A proxy

8

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

disclosed that HF Foods reported over $2 million in purchases from Revolution Industry for the year ended December 31, 2018, and about $1.6 million in purchases from Revolution Industry for the six months ended June 30, 2019. Raymond Ni also is the manager and 100% owner of Revolution Automotive LLC, a company formed in February 2018 with which the Company executed a promissory note agreement with a principal amount of nearly $500,000 on March 1, 2018.

29.     Yi Tuan Zhang is the President and apparent head of investment groups based in, and with substantial ties to, China, including the Fujian Rongjin Group and American International Rongjin Investment Group, or International Rongjin Investment Group, which is reportedly composed of five major food distribution groups in the United States, including the California Rongcheng Food Group (B&R/Rongcheng Trading LLC) and East Coast Hefeng Food Group (HF Foods Group/Han Feng, Inc.).[1] Yi Tuan Zhang is identified as the initial agent for service of process of Rongcheng Trading, LLC,[2] a key operating subsidiary of B&R that is now a subsidiary of HF Foods according to the Company's SEC Filings, including the Company's October 2, 2019 Schedule 14A proxy

---

[1] The other distribution groups include: Chicago Hengtai Food Group (Best Food Services Inc.), New York Huarong Food Group (Win Woo Trading LLC), and Great Wall Food Group (Rice Field Corp.). The names in the parentheses are the English names, while the names outside of the parentheses are the direct translations from the Chinese names.

[2] *See* Rongcheng Trading, LLC, Cal. Sec. of State Registration, filed Jan. 31, 2006 (File No. 200603810084), https://businesssearch.sos.ca.gov/ (LP/LLC Name search: "Rongcheng Trading").

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

and Exhibit 21 to the Company's 2019 Annual Report on Form 10-K, dated March 3, 2020.

## V.    FACTUAL BACKGROUND

### A.    The Company

30.    HF Group, acting through its subsidiaries, is a foodservice distributor and supplier to Chinese restaurants that was founded by the husband and wife duo of Defendants Zhou Min Ni and Chan Sin Wong in 1997 in North Carolina.[3] By mid-2018, it had developed distribution channels throughout the southeastern United States, with three distribution centers located in Greensboro, North Carolina, Ocala, Florida, and Atlanta Georgia. Now known as HF Foods, the Company has grown to be a leading Asian foodservice distributer to Asian restaurants, primarily Chinese restaurants located in the Southeastern, Pacific and Mountain West regions in the United States.

31.    HF Foods started trading on Nasdaq on August 23, 2018 through a reverse merger with Atlantic Acquisition Corporation, a special purpose acquisition company, or SPAC, formed by Richard Xu. The transaction resulted in the stockholders of HF Group becoming majority holders of Atlantic's shares and Atlantic changing its name to HF Foods Group Inc. The founders and principals of HF Group, Defendants Zhou Min Ni and Chan Sin Wong, respectively, became CEO and Chairman of the Company's Board, and, Chief Operating Officer, President and member of the Company's Board, which

---

[3] As of its 1997 founding, the company was named Hang Feng, Inc. ("Han Feng"). Hang Fen remains the Company's main operating subsidiary.

10

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

mirrored their positions at HF Group prior to the reverse merger. Jonathan Ni, HF Group's CFO prior to the reverse merger, continued to serve as CFO of HF Foods.

32.     By that point, in anticipation of the completion of reverse merger with Atlantic, HF Group had become the whole or majority owner of a number of entities through which it operated and that were controlled by its co-founders and executives, including Zhou Min Ni, Chan Sin Wong, and Jonathan Ni. Those entities included Han Feng, as well as a number of other entities, such as Truse Trucking, Inc. ("TT"), a North Carolina corporation whose principal activities were "[t]rucking service[s]" according to the Company's SEC filings.[4]

33.     However, there remained a number of other related entities that the group conducted substantial business with and were owned and controlled by certain Individual Defendants, including Zhou Min Ni, Chan Sin Wong, and Jonathan Ni, that were not transferred to HF Group, allowing them to remain independently owned by HF Group's principals. Those related entities included Revolution Industry and Revolution Automotive, which are both wholly owned by Chan Sin Wong and Zhou Min Ni's son, Raymond Ni.[5] They also included UGO USA Inc, in which Zhou Min Ni disclosed a 30%

---

[4] *See, e.g.*, Atlantic Def. Proxy (July 18, 2018), at F-8, https://www.sec.gov/Archives/edgar/data/1680873/000161577418006598/s111401_def14a.htm ("Atlantic Proxy").

[5] Although the July 18, 2018 Atlantic Proxy disclosed Zhou Min Ni as owning a 51% equity interest in Revolution Automotive and failed to disclose any ownership interest in that entity by Raymond Ni, the Company's subsequent SEC filings during the Class Period disclose Raymond Ni as owning 100% of Revolution Automotive equity interest.

11

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

equity ownership interest, and NC Good Taste Noodle Inc., in which Jian Ming Ni disclosed a 66.6% equity ownership interest.[6]

### B. The Company's Undisclosed Fleet of Luxury Cars

34. The Definitive Proxy, dated July 18, 2018, issued in connection with the reverse merger that took HF Foods public provided an overview of the Company's business, which was incorporated by reference into the August 23, 2018 Form 8-K filed by the Company and signed by Jonathan Ni. The August 23, 2018 Form 8-K disclosed, among other things, that the Company had three distribution centers and it currently owns a fleet of 105 refrigerated vehicles, all of which "are identical in make and model," and a fleet of 12 tractors and 17 trailers for long-haul operations. It noted that 50 of the 105 refrigerated vehicles operated out of the Company's Greensboro, North Carolina location.

35. However, Hindenburg's Report uncovered and Plaintiffs' own independent investigation confirmed, that by that point, and throughout the Class Period, one of the Company's trucking subsidiaries, Truse Trucking, Inc., owned a fleet of luxury cars—all of which were co-owned and co-registered with either Zhou Min Ni or Sin Wong Chan. The following chart provides a breakdown of vehicles with titles owned by and registered

_____

*Compare* Atlantic Def. Proxy at 118-19, F-23-34, *with* HF Foods Def. Proxy (filed Apr. 30, 2019) at 12-13 (discussed below at ¶¶ 109-10).

[6] NC Good Taste Noodle, Inc., a/k/a North Carolina Good Taste Noodle, Inc., is referred to herein as NC Noodle. As alleged herein, Zhou Min Ni also owned substantial equity in this entity during the Class Period, which had been concealed from the market until the Company filed its quarterly report for the period ending September 30, 2020 on November 9, 2020.

12

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF<br>THE FEDERAL SECURITIES LAWS

to Truse Trucking during the Class Period, which is based on Plaintiffs' own independent investigation corroborating the Hindenburg Report's findings:

| | | | | | | |
|---|---|---|---|---|---|---|
| **Vehicles with titles owned by and registered to Truse Trucking** | | | | | | |
| *Vehicle* | *MSRP Base Price* | *Earliest Registration Date* | *Latest Reg. Date* | *Reg. Expiration Date* | *Co-owned and co-registered with/by* | *Vanity License Plate* |
| 2015 Audi S5 | $60,150 | 12/29/2014 | 1/13/2020 | 12/31/2020 | Zhou Min Ni | n/a |
| 2003 Ferrari 360 | $143,860 | 3/27/2017 | 5/6/2020 | 3/31/2021 | Zhou Min Ni | H0P0NIT |
| 2016 Porsche Cayenne | $95,500 | 9/8/2015 | 9/10/2019 | 8/31/2020 | Sin Wong Chan | n/a |
| 2015 Ferrari 458 | $263,553 | 8/10/2015 | 11/20/2019 | 8/31/2020 | Zhou Min Ni | IMSINGLE |
| 2017 Ferrari F12 | $319,995 | 11/23/2016[7] | 10/8/2019 | 6/30/2020 | Zhou Min Ni | WANTMY |
| 2013 Bentley Continental[8] | $216,400 | 6/14/2016 | 9/16/2019 | 6/30/2020 | Zhou Min Ni | 99PROBZ BENT0VER (prior) |

---

[7] The database records for this vehicle identify November 23, 2016 as the earliest registration date and December 8, 2016 as the title issue date.

[8] It appears from the database records for this vehicle that it was originally leased in 2014 by Truse Trucking and Zhou Min Ni and was then purchased by Truse Trucking and Zhou Min Ni in 2016. The June 14, 2016 "earliest registration date" included for this vehicle corresponds to what appears to be the earliest post-purchase registration date.

13

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

| | | | | | | |
|---|---|---|---|---|---|---|
| 2005 Ford GT | $149,995 | 6/24/2017[9] | 12/21/2018 | 6/30/2020 | Zhou Min Ni | UPGIRL MAKNBBYZ (prior) RIDEIT69 (prior) FENZ0 (prior) |
| 2014 Ferrari 458 | $288,000 | 3/23/2018 | 5/13/2019 | 8/31/2019 | Zhou Min Ni | n/a |
| 2015 BMW 435[10] | $48,250 | 7/2/2015 | 8/10/2020 | 7/31/2021 | Zhou Min Ni | n/a |
| TOTAL: | $1,585,703 | | | | | |

36.     Defendants never disclosed this fact to the market, including in connection with the compensation to Zhou Min Ni or Chan Sin Wong that Defendants disclosed throughout the Class Period. In fact, when called out in the Report, the Company, through a joint statement issued by Zhou Min Ni and Zhang, issued a statement instructing investors to not rely on the claims made in the report, effectively denying it.

37.     While it is unclear why a trucking company purportedly involved in refrigerated food deliveries would own one, let alone many, of some of the finest and

---

[9] The database records for this vehicle identify June 24, 2017 as the earliest relevant registration date and June 5, 2017 as the title issue date for Truse Trucking and Zhou Min Ni.

[10] Not identified in the Hindenburg Report. In addition to the vehicles listed in the Report and the above chart, Plaintiffs' investigation uncovered a number of other luxury vehicles owned by Truse Trucking, Zhou Min Ni, and Chan Sin Wong with registrations that expired prior to the Class Period. Additionally, database records indicate that a 2005 Mercedes Benz SL 500 initially owned by Truse Trucking has been owned by Defendant Jonathan Ni since 2014.

14

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

most desirable sports cars in the world, it is clear that there is no justifiable or reasonable business purpose for such vehicles.

38.    The available evidence suggests that these vehicles are for the personal use and benefit of Zhou Min Ni, Chan Sin Wong, and their son, Raymond Ni. For example, the Hindenburg Report traced many of these luxury vehicles to Raymond Ni, who "puts these vehicles to apparent personal use, bragging openly about his stable of cars on [what was then] his public Instagram."

39.    Additionally, by not solely registering the vehicles in their personal name, Zhou Min Ni and Chan Sin Wong may reap tax benefits and deductions they would otherwise not receive.

## C.    Related Party Misconduct

40.    SEC Regulations and Generally Accepted Accounting Principles ("GAAP")[11] required the Company to disclose all material related party transactions during the Class Period.

41.    Under Accounting Standards Codification ("ASC") No. 850, a public company's "[f]inancial statements shall include disclosures of material related party

---

[11] GAAP are the standards recognized by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practices at a particular time. SEC rules and regulations require that publicly traded companies include financial statements that comply with GAAP in their annual and quarterly filings with the SEC. See § 13 of the Exchange Act (15 U.S.C. § 78m); Rule 10-01(d) of Regulation S-X (17 C.F.R. § 210.10-01(d)). SEC Rule 4-01(a) of Regulation S-X states that "[f]inancial statements filed with the Commission which are not prepared in accordance with generally accepted accounting principles will be presumed to be misleading or inaccurate." 17 C.F.R. § 210.4-01(a)(1).

15

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

transactions." ASC 850-10-50-1. "Related party transactions" include those between "an enterprise and its principal owners, management, or members of their immediate families" and those between a company and its "affiliates." ASC 850-10-05-3. "Affiliate" includes any company that is under common control or management with the public company. ASC 850-10-20. Management is defined as "[p]ersons who are responsible for achieving the objectives of the enterprise and who have the authority to establish policies and make decisions by which those objectives are to be pursued. Management normally includes members of the board of directors, the chief executive officer, chief operating officer, vice presidents in charge of principal business functions (such as sales, administration, or finance), and other persons who perform similar policymaking functions. Persons without formal titles also may be members of management." ASC 850-10-20.

42.     According to GAAP, disclosures of related party transactions must include: (a) the nature of the relationship involved; (b) a description of the transactions for each period for which income statements are presented and such other information necessary to an understanding of the effects of the transactions on the financial statements; (c) the dollar amount of transactions for each of the periods for which income statements are presented; and (d) amounts due from or to related parties as of the date of each balance sheet presented and, if not otherwise apparent, the terms and manner of settlement. ASC 850-10-50-1.

16

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

43.     SEC Regulations also mandated disclosure of related party transactions at all relevant times. SEC Regulation S-K ("Reg. S-K"), together with the General Rules and Regulations under the Securities Act and Exchange Act and the Forms under these Acts, states the requirements applicable to the content of the non-financial statement portions of annual reports on Form 10-K, quarterly reports on Form 10-Q, and proxy statements on Form 14A. *See* 17 C.F.R. § 229.10. Item 404 of Reg. S-K ("Item 404") requires the disclosure of detailed information concerning related-party transactions in which the amount[12] involved exceeds $120,000, including the names of the "related person" or entity participating in the transaction, the related person's interest in the transaction, including related person's position, relationship or ownership in the other entity that is a party to the transaction, and the amount involved in the transaction. *See* 17 C.F.R. § 229.404(a). A "related person" under Item 404 is defined to include any director or executive officer of the company, any nominee for director, any immediate family member of a director or executive officer of the registrant, or of any nominee for director, or any person who is known to the registrant to be the beneficial owner of more than five percent of any class of the registrant's voting securities (*i.e.*, a 5% or greater shareholder), or the immediate family member of such beneficial owner. *See* Instruction 1 to 17 C.F.R. § 229.404(a); 17 C.F.R. § 229.403(a).

---

[12] The term "amount," when used in regard to securities, means the principal amount if relating to evidences of indebtedness, the number of shares if relating to shares, and the number of units if relating to any other kind of security. *See* 17 C.F.R. § 270.8b-2(a).

17

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

44.    During the Class Period, HF Foods disclosed that it conducts a significant amount of business with related parties owned by executives of the Company. However, the Company's purported disclosures pertaining to related party transactions were deficient. As Plaintiffs' investigation and the Hindenburg Report uncovered, the Company's numerous disclosed related party transactions with purported affiliates are rife with red flags and it has engaged in undisclosed related party transactions.

45.    During the Class Period, Defendants also claimed to have policies in place and close board oversight of related party transactions to avoid conflicts of interest that could arise. For example, as the Company disclosed in its October 1, 2019 Definitive Proxy issued in connection with the HF Foods/B&R combination:

> Our Code of Ethics, which we adopted upon consummation of our IPO, requires us to avoid, wherever possible, all related party transactions that could result in actual or potential conflicts of interests, except under guidelines approved by the board of directors (or the audit committee). Related-party transactions are defined as transactions in which (1) the aggregate amount involved will or may be expected to exceed $120,000 in any calendar year, (2) we or any of our subsidiaries is a participant, and (3) any (a) executive officer, director or nominee for election as a director, (b) greater than 5% beneficial owner of our common stock, or (c) immediate family member, of the persons referred to in clauses (a) and (b), has or will have a direct or indirect material interest (other than solely as a result of being a director or a less than 10% beneficial owner of another entity). A conflict of interest situation can arise when a person takes actions or has interests that may make it difficult to perform his or her work objectively and effectively. Conflicts of interest may also arise if a person, or a member of his or her family, receives improper personal benefits as a result of his or her position.
>
> We also require each of our directors and executive officers to annually complete a directors' and officers' questionnaire that elicits information about related party transactions.
>
> Our audit committee, pursuant to its written charter, is responsible for reviewing and approving related-party transactions to the extent we enter into such transactions. All ongoing and future transactions between us and any of our officers and directors or their respective affiliates will be on terms believed by us to be no less favorable to us

18

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

than are available from unaffiliated third parties. Such transactions will require prior approval by our audit committee and a majority of our uninterested "independent" directors, or the members of our board who do not have an interest in the transaction, in either case who had access, at our expense, to our attorneys or independent legal counsel. We will not enter into any such transaction unless our audit committee and a majority of our disinterested "independent" directors determine that the terms of such transaction are no less favorable to us than those that would be available to us with respect to such a transaction from unaffiliated third parties. Additionally, we require each of our directors and executive officers to complete a directors' and officers' questionnaire that elicits information about related party transactions.

These procedures are intended to determine whether any such related party transaction impairs the independence of a director or presents a conflict of interest on the part of a director, employee or officer.

To further minimize potential conflicts of interest, we have agreed not to consummate a business combination with an entity which is affiliated with any of our initial shareholders unless we obtain an opinion from an independent investment banking firm that the business combination is fair to our unaffiliated shareholders from a financial point of view. Furthermore, in no event will any of our existing officers, directors, special advisors or initial shareholders, or any entity with which they are affiliated, be paid any finder's fee, consulting fee or other compensation prior to, or for any services they render in order to effectuate, the consummation of a business combination.

46.     During the Class Period, the Company engaged in a significant merger with B&R valued at over $500 million, which strongly appears to be a undisclosed related party transaction rife with conflict of interest, given the long-standing preexisting ties between HF, B&R, and Chinese investment groups, as alleged in further detail below.

47.     In addition, the Company engaged in dozens additional related party transactions throughout the Class Period. Although the Company disclosed these transactions and certain details about them in its SEC filings, it failed to disclose that many of the transactions were rife with conflicts of interest, as well as the relationship between certain of those entities and Defendant Zhou Min Ni, in violation of the

19

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Company's policies regarding related party deals, as well as applicable SEC Regulations and GAAP.

### 1. Related Party Transactions in Violation of Company Policy, As Well As GAAP and SEC Rules, Funnel Money to Defendants and Their Family Members, while Decreasing the Company's Wholesale Margins

48. Although Defendants purported to disclose all material related party transactions and such transactions were purportedly subject to the Company's Code of Ethics, Plaintiffs' investigation and the Hindenburg Report have uncovered facts evidencing that many of the Company's related party transactions, and disclosures of such transactions, violated Company policy, applicable SEC Regulations and GAAP.

49. The collapse in the Company's wholesale margins by about 33% following its August 23, 2018 listing, as reflected in the Company's Annual Report for the year ended December 31, 2018 on Form 10-K ("2018 Annual Report") and identified in the Hindenburg Report, casts doubt whether the related party transactions were on terms "no less favorable to us than are available from unaffiliated third parties," as required by the Company's related party transaction policy. Additionally, the Company failed to disclose the interest of Defendant Zhou Min Ni in certain related party transactions, in violation of SEC Regulations, GAAP and Company policy.

50. Indeed, as the Hindenburg Report found, many of the Company's related party transactions "are largely shams designed to extract cash from the business."

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

### a. Revolution Industry, LLC, and Revolution Automotive LLC

51. For example, as explained in the Report, the Company suspiciously directed about $4 million in business to Raymond Ni, the son of Defendants Zhou Min Ni and Chan Sin Wong, who was likely a senior in high school at the time of the transactions. As alleged above, Raymond Ni owns 100% of Revolution Industry, LLC. The Company purportedly directed approximately $4 million in business to either Revolution Industry, LLC, or Revolution Automotive, LLC.[13] Both businesses are registered to the same address as HF Foods' then headquarters, in North Carolina. According to the Hindenburg Report, the underlying investigation on which it was based "found no signs that Revolution Industry is an actual business—no website, no social media profile, and no evidence of it having customers."

52. Additionally, the Company provided a loan of nearly $500,000 to Revolution Automotive, despite it having no apparent business justification or purpose. According to

[13] There is a discrepancy in the Company's SEC filings as to which of the two entities received about $3.3 million in purchases and about $700,000 in advances. *Compare e.g.*, HF Foods Def. Proxy (Apr. 30, 2019), at 12-13 (discussed below at ¶¶ 128-30), *with* HF Foods Def. Proxy (Oct. 2, 2019) (discussed below at ¶¶ 155-56). Revolution Industry describes its business as food processing, distribution. *See, e.g., , e.g.* April 4, 2019 Revolution Industry Annual Report for the 2018 Calendar Year, Doc. Id. CA201909409300, https://www.sosnc.gov/online_services/business_registration/flow_annual_report/13931690. Revolution Automotive describes its business as "Automotive." *See, e.g., , e.g.* April 4, 2019 Revolution Automotive Annual Report for the 2018 Calendar Year, Doc. Id CA201909409080, https://www.sosnc.gov/online_services/business_registration/flow_annual_report/12940322. Revolution Automotive, according to the Hindenburg Report, owns its own fleet of luxury cars, including multiple Ferraris.

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

the Report, Revolution Automotive assets consist entirely of a fleet of nine Ferraris, with a total combined MSRP of nearly $3 million.

53.    In a highly suspicious transaction providing further evidence of Defendants efforts to pillage the Company, Zhou Min Ni later bought that loan (and others made to other related parties totaling nearly $12 million) back from the Company using his own illiquid Company stock, at an inflated value due to the fraud and misconduct alleged herein.

### b.    NC Noodle

54.    Another related party involved in transactions that appear to be designed to move money from the Company into the pockets of its executives and their family members is NC Noodle. NC Noodle's business registration materials filed with the North Carolina Secretary of State, and signed and submitted by Jonathan Ni, describes that company's business as manufacturing noodles.[14]

55.    The Company's Class Period SEC filings disclosed NC Noodle was 66.6% owned by the Company's former CFO, Jonathan Ni. However, they failed to disclose the material interest that Defendant Zhou Min Ni had in NC Noodle. As alleged herein, on November 9, 2020, the Company belatedly disclosed for the first time that Zhou Min Ni owned a 37.34% equity interest in NC Noodle as of December 31, 2019, which was

---

[14] *See, e.g.* June 6, 2020 NC Noodle Annual Report for Fiscal Date Dec. 31, 2019, Doc. Id. CA202015800065, https://www.sosnc.gov/online_services/business_registration/flow_annual_report/8983933.

22

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

disposed of on January 1, 2020.[15] The SEC Rules and GAAP standards, as well as the Company's Code of Ethics, addressed above mandated disclosure of Zhou Min Ni's interest in NC Noodle prior to November 9, 2020. Defendants' failure to timely disclose Zhou Min Ni's interest in NC Noodle violated those rules and regulations, as well as the Company's own policy.

56.    Plaintiffs' investigation and the Hindenburg Report have found other evidence calling into question legitimacy of the Company's transactions with NC Noodle. According the Hindenburg Report, "NC Noodle sold ~$4.2 million to HF in 2019" but it "found no customer-facing business presences on line." Further, according to the Report, "[g]iven the volume of product sold to HF during the year, we expected a sprawling operation." But, "[i]nstead, we discovered what our investigator described as a 'completely vacant' building except for 3 employees handling a pallet of product in an otherwise empty-looking back warehouse." The Report accordingly concluded that "[w]e suspect this is little more than an insider-owned entity that sells product to nearby HF" and "[w]e have serious doubts about whether this 'middleman' provides value to anyone but HF insiders."

---

[15]The Company has offered no explanation as to why Defendant Zhou Min Ni's interest in NC Noodle was not disclosed in earlier SEC filings, including in its definitive proxy dated April 29, 2020 provided in connection with the Company's 2020 Annual Meeting. This was suspiciously disclosed in the same SEC filing revealing that the Company was under an SEC investigation relating to related party misconduct and the other claims made in this suit and the Hindenburg Report.

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

57.    Plaintiffs' investigation also involved an on-the-ground investigation of NC Noodle. Although Plaintiffs' investigation did not—and could not—entail gaining access to NC Noodle's offices or warehouse like the Hindenburg investigation, it corroborated the absence of the sprawling operation one would expect given the volume of product NC Noodle purportedly sold to HF Foods at all relevant times. Plaintiffs' investigation also led to the observation of other suspicious activity at NC Noodle. For instance, Plaintiffs' investigator observed no more than five apparent employees at the NC Noodle warehouse and office facility during the day. Ten additional individuals were observed appearing late in the day, beginning at around 4:30 p.m., presumably to work a night shift. Moreover, prior to, during, and after business hours on a business day, not a single delivery to NC Noodle was observed. Given the volume of noodles or other products HF Foods purportedly purchased from NC Noodle, one would expect deliveries of materials necessary for the manufacturing and sale of noodles to be made on a daily basis.

58.    The facts uncovered during Plaintiffs' investigation and detailed in the Hindenburg report thus strongly indicate that HF Foods' transactions with NC Noodle were not on terms as favorable to HF Foods as terms available from unaffiliated third parties, as required by the Company's policies, and were part of Defendants' scheme to funnel the Company's funds into their own personal pockets.

24

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

### c.   Other Disclosed Related Party Transactions

59.   Plaintiffs' investigation and the Hindenburg Report uncovered a number of other suspicious related party transactions.

60.   For example, HF Foods made approximately $1 million in purchases from UGO USA (NC) Inc., in which Zhou Min Ni has a 30% interest. However, that entity's address matches HF Foods' North Carolina headquarters. Additionally, the Hindenburg Report "found little evidence that UGO is an actual operating business."

61.   The Hindenburg Report uncovered questionable transactions with other related parties—namely, Eastern Fresh NJ LLC and Fortune One Foods Inc—that are "consistent with what we would expect if these entities are being used to funnel out shareholder cash." HF Foods has directed over $11.5 million to Eastern Fresh, in which Zhou Min Ni owned a 30% interest prior to and throughout the Class Period. The Hindenburg Report investigation found that Eastern Fresh has signage at its facility with HF Foods' logo, indicating it is not a separate business as HF Foods claims. Similarly, HF Foods directed nearly $1.8 million to Fortune One Foods, which describes itself as being part of HF Foods despite HF Foods' SEC filings describing it as a separate entity in which Zhou Min Ni has a 17.5% ownership interest at all relevant times.

**2.   The B&R Merger: An Apparent Undisclosed Related Party Transaction Rife with Conflict of Interest Given the Link Between B&R, Chinese Investment Groups, and HF Foods**

62.   On June 25, 2019, HF Foods filed a current report on Form 8-K announcing that it had entered into a merger agreement with B&R Group and a wholly owned

25

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

subsidiary of the Company created for acquisition purposes. The merger agreement between HF Foods and B&R Group provided that the transaction was negotiated at "arm's-length."

63.    However, Hindenburg Research's investigations uncovered formal ties between both companies, tracking back to 2012. According to the Hindenburg Report, both were under the same Chinese investment group, American International Rongjin Investment Group and closely affiliated through this investment vehicle, and an interview with the Present of Fujian Rongjin Group in 2018 confirmed that both HF Foods and B&R Group were under the same umbrella and utilized by the group to distribute food in the United States. More specifically, the Hindenburg Report explained:

> ***HF's massive $509 million merger with food distributor B&R appears to be a blatant undisclosed related-party transaction.*** The company claimed that the deal was negotiated at "arm's length", but we found multiple documents showing that both HF and B&R were part of the same Chinese investment group for years prior to the acquisition.

> *         *         *

> We found that the massive $509 million merger with B&R appears to be an undisclosed related-party transaction.

> *         *         *

> **HF Foods' Massive $509 Million Merger with B&R Appears To Be Just One of Dozens of Suspicious Related-Party Transactions**

> Our review of HF Foods uncovered a staggering number of related-party transactions, both disclosed and undisclosed, that we believe are suspicious.

> *         *         *

26

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

*We believe insiders are using these dozens of related-party transactions to suck cash out of the business, eventually leaving shareholders with a hollow, debt-laden company.*

**Undisclosed Related-Party Transactions: HF Group Had Clear Ties to B&R Before Consummating its $509 Million "Arm's-Length" Deal, Yet None of It Was Disclosed to Shareholders**

In June 2019, HF Foods announced [] it would be merging with B&R Global Holdings, a West Coast food distribution company. The merger [] was a 2-part transaction valued at a massive $509 million.

It included HF Foods issuing 30.7 million shares to former B&R shareholders, more than doubling the company's outstanding share count and adding [] ~$101 million in debt to the balance sheet.

According to deal documents, the acquisition process started when HF's CEO phoned B&R's CEO in October 2018. [] T*he deal documents describe the transaction as being negotiated "at arm's-length".* []

Contrary to those representations, we found longstanding formal ties between HF Foods and B&R:

•      *HF and B&R were both under the umbrella of the same investment group, the American International Rongjin Investment Group,[] according to an announcement [] by the Chinese Ministry of Commerce in 2012.*[]

•      In 2012, an affiliate of the above-named entity also affirmed [] that HF and B&R are part of the same investment holding group.

•      *A May 2018 interview [] with the President of Fujian Rongjin Group [], Zhang Yi Tuan (张贻团) also affirmed the relationship.* According to the interview, the American International Rongjin Investment Group's distribution business operates in the U.S. and includes both HF and B&R. According to the interview, the group uses B&R as its official American headquarters and works with HF Foods and others to jointly distribute food in the U.S.

27

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Instead of being "at arm's length", these entities look to have been closely affiliated through the same investment group for at least 8 years, which we believe clearly makes them related-parties.

***These intricate pre-existing connections represent a major conflict of interest, yet none of this was disclosed to investors prior to, or after, the merger.***

[Emphases added.]

64.     The business combination was valued at a massive $509 million and included HF Foods issuing 30.7 million shares to former B&R Group shareholders, effectively doubling HF Foods' outstanding shares, and adding $101 million in debt to HF Foods' balance sheet. The affiliation between the companies, however, remained undisclosed.

65.     Plaintiffs' independent investigation has corroborated many of the key details addressing the relationship between B&R and HF that was uncovered in the Report. For example, the Chinese-language source materials cited in the Report from 2012 and 2014 disclosed that the International Rongjin Investment Holding Group is composed of five major food cold chain distribution groups in the United States, including: California Rongcheng Food Group (B&R/Rongcheng Trading), Chicago Hengtai Food Group (Best Food Services), East Coast Hefeng Food Group (HF Foods

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Group/Han Feng, Inc.), New York Huarong Food Group (Win Woo Trading), Great Wall Food Group (Rice Field Corp).[16]

66.     Plaintiffs' independent investigation also revealed deeper ties between B&R and the Chinese investment groups, which remained undisclosed. For instance, a commercial database search indicates that Zhang, former CEO of B&R and current co-CEO of HF, is a potential relative of Yi Tuan Zhang, president of the Fujian Rongjin Investment Group and apparent head of the American International Rongjin Investment Group of which HF Foods and B&R were part. The same commercial database also found that Zhang and Yi Tuan Zhang were associated with or shared at least five addresses over the past twenty years. Further, an August 25, 2020 article about the Fujian Rongjin Group noted that the International Rongjin Investment Holding Group would be building offices that will include the Chinese headquarters of its four major US food groups, consisting of the US Rongcheng Food Group (B&R), the US Hefeng Food Group (HF Foods/Han Feng Inc.), the US Hengtai Food Group, and Huarong Food Group.[17]

### D.     The Gaming of the Russell Index/Freely Tradable Shares and Float

67.     The FTSE/Russell 2000 index is a financial index that tracks the performance of the largest 2,000 publicly traded U.S. firms, weighted by market

---

[16] The names in the parentheses are English names of the entities' names, while the names preceding the parentheses are the direct translation of the names in Chinese.

[17] The names in the parentheses are English names of the entities' names, while the names preceding the parentheses are the direct translation of the names in Chinese.

29

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

capitalization. Each year, at the end of June, the FTSE/Russell index reconstitutes, or updates, the companies that are included in that index, relying on a variety of eligibility criteria, including market capitalization and free float requirements mandating at least 5% of a company's voting rights to be in publicly traded shares.[18] "The [reconstitution] event often results in the highest volume trading day of the year," and "prompts fund managers [including passive index funds] to adjust their portfolios to reflect the new weightings and components." *Id.*

68.     By no later than July 1, 2019, HF Foods has been included in the FTSE/Russell index. However, the Hindenburg report pointed out the error in HF Foods' free floating shares reflected on FTSE/Russell indices, and maintained that the company was likely manipulating the index rebalancing process through shares held by family or affiliates, which serve to constrain the true free-float—exposing those shares to forced selling. Specifically, the Hindenburg Report explained:

> The B&R merger more than doubled HF's share count. However, FTSE/Russell mistakenly included almost all of these shares as part of the company's free float, which sent HFFG's price and volume soaring on Friday's index rebalancing. We think this mistake may be reversed.
>
> ***We believe HF and its insiders are masking the true number of shares held by its affiliates.*** Once made clear to FTSE/Russell, we expect the recent forced index buying in HF will reverse and become forced selling.

---

[18] *See generally* Chuck Mikolajczak, *Explainer: The Russell index reconstitution is coming up. What is it?,* reuters.com (Apr. 16, 2020), https://www.reuters.com/article/us-usa-stocks-russell-coronavirus-explai/explainer-the-russell-index-reconstitution-is-coming-up-what-is-it-idUSKBN21Y2NF.

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

* * *

FTSE/Russell had calculated HFFG's free float to be 21.8 million shares (per its subscription-only service). **This calculation was just flat out wrong**. The freely tradable shares were **6.2 million** per HF's own recent March filing. []

The source of the mistake appears to have been the accidental addition of shares from the B&R transaction, which closed in November []. As with every such merger, shares issued to the acquirees are restricted for at least 6 months, according to SEC Rule 144 []. FTSE/Russell apparently missed this and added the shares to its free float calculation anyway. We think FTSE/Russell should reverse this decision, which would lead to a forced selling of the shares purchased.

Beyond the above, which appears to largely be a FTSE/Russell error, sometimes *companies are able to juke the index rebalancing process to ensure that the actual free float [] is tighter than it appears. We think this may also be taking place.*

For example, as shown earlier, *to the extent that shares are held by family members or affiliates (potentially through dozens of related-party entities), this can serve to constrain the true free float. Given the sheer consistency of the index rebalancing irregularities around HF (and Wins, backed by the same sponsor), we believe this to be likely.* To the extent Russell takes action, forced sales by passive investors could add severe selling pressure to HF's shares.

[Emphases added.]

## VI.    DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS

69.    The Class Period begins on August 23, 2018, when HF Foods issued a press release, announcing Atlantic Acquisition Corp.'s ("Atlantic") (then the Company's name) recent "consummation of its business combination with privately-held HF Group Holding Corporation ("HF Group"); its name change to "HF Foods Group Inc."; and the change in ticker symbol from "ATACU," "ATAC," and "ATACR," to "HFFG".

31

70.     Further, the press release announced the following: "As a result of the completion of the business combination, the former shareholders of HF Group will be issued 19.97 million shares of stock (representing approximately 88.5% of the outstanding common stock) at a value of $10.00 each, based on a $199.7M valuation of the combined company." The press release also quoted Defendant Zhou Min Ni as stating:

> Our long-term vision is to become a nation-wide leader in this niche market. After more than 20 years of operational experience and growing into a nearly $300M U.S. entity, we are excited to introduce HF Foods Group as a public company listed on the NASDAQ stock market. We look forward to expanding our customer base, streamlining infrastructure and undertaking strategic expansion through product enhancements, all of which we expect to create value for our investors.

71.     The statements referenced in the preceding paragraph made by Defendants were materially false and/or misleading because they misrepresented and failed to disclose: (i) the fact that HF Foods' insiders and related parties had been, and were then, enriching themselves through related party transactions with entities that appear to have illusory operations; (ii) that certain of the Company's related party transactions violated the Company's policies pertaining to related party transactions (iii) the fact that the Company owned a fleet of luxury vehicles that Zhou Min Ni, Chan Sin Wong, and their Son, Raymond Ni, used for personal purposes; and (iv) the fact that HF Foods was "gaming" the FTS/Russell Index by masking the true number of shares free floating.

**A.     Defendants' Failure to Disclose the Company's Fleet of Luxury Cars**

72.     On August 27, 2018, HF Foods filed with the SEC a Form 8-K ("August 27, 2018 Form 8-K"), signed by Defendant Jonathan Ni, which, among other things, attached a copy of the Company's August 23, 2018 press release as an exhibit and incorporated by

32

referenced many key portions of the July 18, 2018 Definitive Proxy issued in connection with the reverse merger through which HF Foods became public.

73.    The August 27, 2018 Form 8-K, incorporated by reference the description of the HF Group's business beginning on page 70 in the July 18 Definitive Proxy, explaining, in part:

> With three warehouses, over one hundred trucks on the road daily, and the vast majority of its service routes are within 200 miles of its distribution centers, HF Group offers its customers prompt delivery of high quality products.
>
> Currently HF Group currently owns a fleet of 105 refrigerated vehicles. Each vehicle is 24 feet long and has a 12,000 lb capacity.
>
> *        *        *
>
> All vehicles are identical in make and model. This is essential, as the fleet can be maintained by a single set of mechanics and suppliers for commonality…. The Group also operates a fleet of 12 tractors and 17 trailers for long-haul operations.

74.    The statements referenced in the preceding paragraph describing the Company's fleet of vehicles were materially false and/or misleading. Specifically, Defendants' statements describing and touting the fleet of vehicles owned and operated by the Company—such as the claims about the fleet of refrigerated and other vehicles it currently owns and operates—failed to disclose that the Company, through its wholly owned subsidiary, owned an undisclosed fleet of luxury vehicles that Zhou Min Ni, Chan Sin Wong, and their Son, Raymond Ni, used for personal purposes.

75.    The August 27, 2018 Form 8-K, also incorporated by reference the discussion of the compensation to Zhou Min Ni, Chan Sin, Wong, and Jonathan Ni, beginning at page 105 in the July 18 Definitive Proxy. The summary compensation table summarizing the

33

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

total compensation accrued for HF Group's named executive officers in 2016 and 2017 stated that each of those individual's compensation was entirely attributable to salaries, specifically:

| Name and Principal Position | Year Ended December 31, | Salary ($) | Bonus ($) | Stock and Option Awards number | All Other Compensation ($) | Total ($) |
|---|---|---|---|---|---|---|
| Ni, Zhou Min (Chairman and Chief Executive Officer) | 2017 | 240,000 | — | — | — | 240,000 |
| | 2016 | 240,000 | — | — | — | 240,000 |
| Wong, Chan Sin (Director and President) | 2017 | 240,000 | — | — | — | 240,000 |
| | 2016 | 240,000 | — | — | — | 240,000 |
| Jian Ming Ni (Chief Financial Officer) | 2017 | 70,000 | — | — | — | 70,000 |
| | 2016 | 70,000 | — | — | — | 70,000 |

76.     The statements referenced in the preceding paragraph disclosing the total annual salaries of Defendants Zhou Min Ni, Chan Sin Wong, and Jonathan Ni, were materially false and/or misleading because they misrepresented and failed to disclose or account for the fleet of luxury vehicles worth over $1.5 million that were owned by the Company but that Zhou Min Ni, Chan Sin Wong, and their son, Raymond Ni, used for personal purposes.

77.     On September 13, 2018, HF Foods filed with the SEC a Form 8-K signed by Jonathan Ni ("September 13, 2018 Form 8-K"), which provided the following information, in pertinent part, about Zhou Min Ni's, Chan Sin Wong's, and Jonathan Ni's employment with HF Foods:

> The Company's agreement with Mr. Zhou Min Ni provides that he will serve as Chief Executive Officer of the Company and its subsidiaries. The agreement has a term which expires August 31, 2023. The agreement

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

provides for automatic extensions of additional one-year terms unless either party provides written notice of termination at least 90 days prior to the termination date. ***Mr. Ni's base salary is $400,000 per year*** and he is eligible for bonus awards based upon criteria which may be set from time to time by the Compensation Committee of the Board of the Company. He is eligible to receive benefits such as health care and related benefits as provided to other senior officers of the Company. There are no equity awards under the agreement.

\* \* \*

The Company's agreement with Ms. Chan Sin Wong provides that she will serve as Chief Operating Officer of the Company and its subsidiaries …. ***Ms. Wong's base salary is $400,000 per year*** and she is eligible for bonus awards based upon criteria which may be set from time to time by the Compensation Committee of the Board of the Company.

\* \* \*

The Company's agreement with Mr. Jian Ming Ni provides that he will serve as Chief Financial Officer of the Company and its subsidiaries …. ***Mr. Ni's base salary is $70,000 per year*** and he is eligible for bonus awards based upon criteria which may be set from time to time by the Compensation Committee of the Board of the Company.

[Emphasis added.]

78.    Attached to the September 13, 2018 Form 8-K were the employment agreements with Zhou Min Ni, Chan Sin Wong, and Jian Ming Ni. The agreements each listed the Employee Benefits to which they are entitled during their employment and disclosed with respect to "Transportation" benefits, the following:

> During the Term, the Company shall provide Executive with ***an automobile and driver for transportation to and from the Company's offices and for other business purposes***. Such automobile shall be a least substantially equivalent in price to the private vehicle operated by Executive on and immediately preceding the effective date of this agreement.

[Emphasis added.]

79.    The statements referenced in the two preceding paragraphs—particularly the

35

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

emphasized portions disclosing the annual base salaries and compensation of Defendants Zhou Min Ni, Chan Sin Wong, and Jonathan Ni, and describing the transportation and other benefits the Company is to provide to each of those executives—were materially false and/or misleading because they misrepresented and failed to disclose or account for the fleet of luxury vehicles worth over $1.5 million that were owned by the Company, but that Zhou Min Ni, Chan Sin Wong, and their son, Raymond Ni, used for personal purposes. Accordingly, Defendants' statements understated the value of compensation and salary of Zhou Min Ni, Chan Sin Wong, and Jonathan Ni, and failed to disclose the benefits and compensation provided to Raymond Ni.

80. Defendants' description of the "Transportation" benefits was also materially false or misleading because it misrepresented or failed to disclose that, instead of receiving a single car (and driver) for transportation to and from the Company's offices and for other business purposes, as provided under Defendants' employment agreements, the Company owned a fleet of luxury cars worth over $1.5 million that were for personal use by Zhou Min Ni, Chan Sin Wong, and their son, Raymond Ni.

81. On November 14, 2018, HF Foods filed with the SEC its quarterly report for the period ended September 30, 2018 (the "3Q 2018 Report"), signed by Defendants Zhou Min Ni and Jonathan Ni. Attached to the 3Q 2018 Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Zhou Min Ni and Jonathan Ni attesting to the accuracy of financial reporting, the disclosure of any material

36

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

changes to the Company's internal control over financial reporting and the disclosure of all fraud. The 3Q 2018 Report also purported to disclose the value of the Company's assets, including vehicles. For example, it disclosed motor vehicles of $9,611,873 as of September 30, 2018.

82.    The Defendants' disclosures of and relating to the Company's assets in the 3Q 2018 Report were materially false or misleading because they misrepresented and failed to disclose that the Company owned a fleet of luxury cars worth over $1.5 million that were for personal use by Zhou Min Ni, Chan Sin Wong, and their son, Raymond Ni. Given that the 3Q 2018 Report failed to disclose those assets, the Defendants' SOX certifications were also materially false or misleading.

83.    On April 1, 2019, HF Foods filed with the SEC its 2018 Annual Report on Form 10-K, signed by Defendants Zhou Min Ni, Chan Sin Wong, and Jonathan Ni. Attached to the 2018 Annual Report were certifications pursuant to SOX signed by Defendants Zhou Min Ni and Jonathan Ni attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. The 2018 Annual Report purported to disclose the value of the Company's assets, including vehicles. For example, it disclosed motor vehicles of $10,267,095 as of December 31, 2019.

84.    The 2018 Annual Report also included the following disclosures pertaining to the Company's business and fleet of motor vehicles:

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

*Our business model features* an integrated structure with three distribution centers with 400,000 square feet of total storage space, *a fleet of 105 refrigerated vehicles for short-distance delivery, 12 tractors and 17 trailers for long-haul operations*….

\*      \*      \*

Fleet Management

*We currently own a fleet of 105 refrigerated vehicles.* Each vehicle is 24 feet long and has a 12,000 pound capacity. *All vehicles are identical in make and model…*.

*We also operate a fleet of 12 tractors and 17 trailers for long-haul operations*.

[Emphasis added.]

85.     The statements referenced in the two preceding paragraphs (¶¶ 83-84) describing the Company's fleet of vehicles were materially false and/or misleading. Specifically, Defendants' statements describing and touting the fleet of vehicles owned and operated by the Company—such as the claims about the fleet of refrigerated vehicles, tractors and trailers it currently owns and operates—failed to disclose that the Company, through its wholly owned subsidiary, owned an undisclosed fleet of luxury vehicles that Zhou Min Ni, Chan Sin Wong, and their Son, Raymond Ni, used for personal purposes, which was worth over $1.5 million. Given that the 2018 Annual Report failed to disclose that material information, Defendants' SOX certifications were also materially false or misleading.

86.     On April 30, 2019, HF Foods filed with the SEC its definitive Proxy Statement for its 2019 Annual Meeting of Stockholders ("2019 Proxy"). The 2019 Proxy opened with a letter signed by Defendant Zhou Min Ni and was furnished to the

38

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Company's stockholders in connection with the solicitation by its Board of Directors for proxies for its 2019 Annual Meeting. Among other things, it provided a summary of the compensation paid or owed to the Company's executives and directors, including Defendants Zhou Min Ni, Chan Sin Wong, and Jonathan Ni. Under a summary compensation table disclosing that Zhou Min Ni's total salary for 2018 was $400,000 and that Chan Sin Wong's salary for 2018 was $400,000, it provided the following accompanying narrative and discussion of employment agreements:

> ***Compensation for our executives is comprised of solely of base salary***.
>
> \*      \*      \*
>
> Each executive's ***base salary is supplemented by various benefit plans*** that provide health, life, accident, disability and severance benefits, most of which are the same as the benefits provided to all of our employees.
>
> \*      \*      \*
>
> On August 22, 2018, we entered into an employment agreement with Zhou Min Ni to serve as our Chief Executive Officer until August 31, 2023…. ***Under the agreement, Zhou Min Ni's initial annual base salary was $400,000,*** subject to adjustment by the Board. In addition to the base salary, an annual bonus may be awarded to Zhou Min Ni on the basis of the Company achieving certain corporate and strategic performance goals, as determined by the Board in its sole discretion.
>
> \*      \*      \*
>
> On August 22, 2018, we entered into an employment agreement with Chan Sin Wong to serve as our Chief Operating Officer until August 31, 2023…. ***Under the agreement, Chan Sin Wong's initial annual base salary was $400,000, subject to adjustment by the Board.*** In addition to the base salary, an annual bonus may be awarded to Chan Sin Wong on the basis of the Company achieving certain corporate and strategic performance goals, as determined by the Board in its sole discretion.
>
> [Emphasis added.]

87.    The Defendants' statements referenced in the preceding paragraph—particularly the emphasized portions disclosing the annual base salaries and compensation

39

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

of Defendants Zhou Min Ni, Chan Sin Wong, and Jonathan Ni, and describing the supplemental benefits the Company provides to each of those executives—were materially false and/or misleading because they misrepresented and failed to disclose or account for the fleet of luxury vehicles worth over $1.5 million that were owned by the Company, but that Zhou Min Ni, Chan Sin Wong, and their son, Raymond Ni, used for personal purposes. Accordingly, Defendants' statements understated the value of compensation and salary of Zhou Min Ni, Chan Sin Wong, and Jonathan Ni, and failed to disclose the benefits and compensation provided to Raymond Ni.

88.   On May 15, 2019, HF Foods filed with the SEC its quarterly report for the period ended March 31, 2019 (the "1Q 2019 Report"), signed by Defendants Zhou Min Ni and Xu. Attached to the 1Q 2019 Report were certifications pursuant to SOX signed by Defendants Zhou Min Ni and Xu attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. The 1Q 2019 Report also purported to disclose the value of the Company's assets, including vehicles. For example, it disclosed motor vehicles of $11,641,656 as of March 31, 2019.

89.   Defendants' disclosures of and relating to the Company's assets in the 1Q 2019 Report were materially false or misleading because they misrepresented and failed to disclose the Company owned a fleet of luxury cars worth over $1.5 million that were for personal use by Zhou Min Ni, Chan Sin Wong, and their son, Raymond Ni. Given that

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

the 1Q 2019 Report failed to disclose those assets, Defendants' SOX certifications were also materially false or misleading.

90.    On July 26, 2019, HF Foods filed with the SEC a Preliminary Proxy regarding a proposed combination with B&R ("HF/B&R Preliminary Proxy"). The HF/B&R Preliminary Proxy purported to disclose the value of Defendants' compensation and the Company's total assets and information about the Company's fleet of vehicles. For example, it disclosed "HF Group [] maintains a fleet of 105 refrigerated vehicles for short-distance delivery, 12 tractors and 17 trailers for long-haul operations…." It added:

> We currently own a fleet of 105 refrigerated vehicles. Each vehicle is 24 feet long and has a 12,000 pound capacity. All vehicles are identical in make and model…. We also operate a fleet of 12 tractors and 17 trailers for long-haul operations.

91.    The Company also disclosed in the HF/B&R Preliminary Proxy total assets of $87,681,108 for the three months ended 2019, and of $82,476,407 for the year ended December 31, 2018.

92.    Defendants' disclosures of and relating to the Company's assets and vehicle fleet in HF/B&R Preliminary Proxy in the preceding two paragraphs (¶¶ 90-91) were materially false or misleading because they misrepresented and failed to disclose the Company owned a fleet of luxury cars worth over $1.5 million that were for personal use by Zhou Min Ni, Chan Sin Wong, and their son, Raymond Ni. Given that the 1Q 2019 Report failed to disclose those assets, Defendants' SOX certifications were also materially false or misleading.

93.    With respect to the compensation of officers and Directors of HF Foods, the

41

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

HF/B&R Preliminary Proxy disclosures mirrored those in the 2019 Proxy, which are alleged above, in all material respects. For instance, the HF/B&R Preliminary Proxy disclosed the following compensation before noting that "[c]ompensation for our executives is comprised of solely base salary":

| Name | Year | Salary ($) | Total ($) |
|---|---|---|---|
| Zhou Min Ni | 2018 | 400,000 | 400,000 |
| Chairman and Chief Executive Officer | 2017 | 240,000 | 240,000 |
| Chan Sin Wong | 2018 | 400,000 | 400,000 |
| Director and Chief Operating Officer | 2017 | 240,000 | 240,000 |

94.    The statements referenced in the preceding paragraph disclosing the annual base salaries and compensation of Defendants Zhou Min Ni and Chan Sin Wong and describing the supplemental benefits the Company provides to each of those executives were materially false and/or misleading. More specifically, Defendants' misrepresented and failed to disclose or account for the fleet of luxury vehicles worth over $1.5 million that were owned by the Company, but that Zhou Min Ni, Chan Sin Wong, and their son, Raymond Ni, used for personal purposes.

95.    Further, Defendants' statements were also materially false and/or misleading because they understated the value of compensation and salary of Zhou Min Ni, Chan Sin Wong, and Jonathan Ni, and failed to disclose the benefits and compensation provided to Raymond Ni.

96.    On August 14, 2019, HF Foods filed with the SEC its quarterly report for the period ended June 30, 2019 (the "2Q 2019 Report"), signed by Defendants Zhou Min Ni

42

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

and Xu. Attached to the 2Q 2019 Report were certifications pursuant to SOX signed by Defendants Zhou Min Ni and Xu attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. The 2Q 2019 Report also purported to disclose the value of the Company's assets, including vehicles. For example, it disclosed motor vehicles of $11,607,077 as of June 30, 2019.

97.    Defendants' disclosures of and relating to the Company's assets in the 2Q 2019 Report were materially false or misleading because they misrepresented and failed to disclose the Company owned a fleet of luxury cars worth over $1.5 million that were for personal use by Zhou Min Ni, Chan Sin Wong, and their son, Raymond Ni. Given that the 2Q 2019 Report failed to disclose those assets, Defendants' SOX certifications were also materially false or misleading.

98.    On October 2, 2019, HF Foods filed with the SEC a definitive proxy regarding the proposed combination with B&R ("HF/B&R Definitive Proxy"). The HF/B&R Definitive Proxy opened with a letter signed by Defendant Zhou Min Ni and was furnished to the Company's stockholders in connection with the solicitation by its Board of Directors for proxies for its special meeting to approve the HF/B&R business combination. Among other things, the HF/B&R Definitive Proxy purported to disclose the value of Defendants' compensation and the Company's assets, including vehicles, and other details about the Company's fleet of vehicles and the terms of Defendants'

43

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

employment agreements, that were materially similar to those in the HF/B&R Definitive Proxy and 2019 Proxy, which are alleged above and are incorporated here by reference. The HF/B&R Definitive proxy incorporated by reference the Company's financial statements for the years ended December 31, 2018 and 2017, of which the former disclosed motor vehicles of $10,267,095 as of September 30, 2018.

99.     The statements referenced in ¶ 90 above were materially false and/or misleading for the reasons explained above in ¶¶ 85, 87, 89, 92, 94-95, and 97, in connection with the 2018 Annual Report, 2019 Proxy, HF/B&R Preliminary Proxy, and the 1Q and 2Q 2019 Reports. In particular, Defendants' disclosures of and relating to the Company's assets and vehicle fleet in HF/B&R Definitive Proxy referenced in the preceding paragraph and particularized further above were materially false or misleading because they misrepresented and failed to disclose the Company owned a fleet of luxury cars worth over $1.5 million that were for personal use by Zhou Min Ni, Chan Sin Wong, and their son, Raymond Ni. Further, the statements disclosing the annual base salaries and compensation of Defendants Zhou Min Ni and Chan Sin Wong and describing the supplemental benefits the Company provides to each of those executives were materially false and/or misleading because they misrepresented and failed to disclose these facts concerning the fleet of luxury vehicles.

100.   On November 14, 2019, HF Foods filed with the SEC its quarterly report for the period ended September 30, 2019 (the "3Q 2019 Report"), signed by Defendants Zhou

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Min Ni and Xu. Attached to the 3Q 2019 Report were certifications pursuant to SOX signed by Defendants Zhou Min Ni and Xu attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. The 3Q 2019 Report also purported to disclose the value of the Company's assets, including vehicles. For example, it disclosed motor vehicles of $11,454,793 as of September 30, 2019.

101. Defendants' disclosures of and relating to the Company's assets in the 3Q 2019 Report were materially false or misleading because they misrepresented and failed to disclose the Company owned a fleet of luxury cars worth over $1.5 million that were for personal use by Zhou Min Ni, Chan Sin Wong, and their son, Raymond Ni. Given that the 2Q 2019 Report failed to disclose those assets, Defendants' SOX certifications were also materially false or misleading.

102. On March 16, 2020, HF Foods filed with the SEC its annual report for the period ended December 31, 2019 (the "2019 Annual Report"), signed by Defendants Zhou Min Ni and Zhang, as well as the Company's directors. Attached to the 2019 Annual Report were certifications pursuant to SOX signed by Defendants Zhou Min Ni and Zhang attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. The 2019 Annual Report purported to disclose the value of the Company's assets, including

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

vehicles. For example, it disclosed motor vehicles of $26,903,528 as of December 31, 2019. With respect to the Company's vehicle fleet, it disclosed:

> The company now has … a fleet of over 340 refrigerated vehicles.
>
> *       *       *
>
> Our business model features an integrated structure with … a fleet of over 340 vehicles for short-distance delivery….
>
> We currently own a fleet of over 340 refrigerated vehicles. Vehicles range from vans, 26-foot semi-delivery trucks, to 53-foot long refrigerated trucks and trailer units.

103.   Defendants' statements describing and touting the fleet of vehicles owned and operated by the Company in the preceding paragraph—such as the claims about the fleet of refrigerated and other vehicles it currently owns and operates— were materially false and misleading because they failed to disclose that the Company, through its wholly owned subsidiary, owned an undisclosed fleet of luxury vehicles that Zhou Min Ni, Chan Sin Wong, and their Son, Raymond Ni, used for personal purposes, which was worth over $1.5 million. Given that the 2019 Annual Report failed to disclose that material information, Defendants' SOX certifications were also materially false or misleading. As a result, Defendants' public statements were materially false and/or misleading at all relevant times.

**B.      Misrepresentations and Omissions Concerning Related Party Transactions**

104.   The August 27, 2018 Form 8-K incorporated by reference the discussion of certain relationships and related transactions beginning at page 115 in the July 18 Definitive Proxy, including that: "HF group makes regular sales, to or purchases from,

46

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

various related parties during the normal course of business. The total sales made to related parties amounted to amounted to $4,704,861 and $4,696,206 for the three months ended March 31, 2018 and 2017, respectively, and $18,449,864 and $18,576,268 for the years ended December 31, 2017 and 2016, respectively."

105.   That discussion also addressed the Company's Related Party Policy, which provided:

> ***Our Code of Ethics, which we adopted upon consummation of our IPO, requires us to avoid, wherever possible, all related party transactions that could result in actual or potential conflicts of interests, except under guidelines approved by the board of directors (or the audit committee).*** Related-party transactions are defined as transactions in which (1) the aggregate amount involved will or may be expected to exceed $120,000 in any calendar year, (2) we or any of our subsidiaries is a participant, and (3) any (a) executive officer, director or nominee for election as a director, (b) greater than 5% beneficial owner of our common stock, or (c) immediate family member, of the persons referred to in clauses (a) and (b), has or will have a direct or indirect material interest (other than solely as a result of being a director or a less than 10% beneficial owner of another entity). ***A conflict of interest situation can arise when a person takes actions or has interests that may make it difficult to perform his or her work objectively and effectively. Conflicts of interest may also arise if a person, or a member of his or her family, receives improper personal benefits as a result of his or her position***.

> We also require each of our directors and executive officers to annually complete a directors' and officers' questionnaire that elicits information about related party transactions.

> Our audit committee, pursuant to its written charter, is responsible for reviewing and approving related-party transactions to the extent we enter into such transactions. ***All ongoing and future transactions between us and any of our officers and directors or their respective affiliates will be on terms believed by us to be no less favorable to us than are available from unaffiliated third parties***.

> ***Such transactions will require prior approval by our audit committee and a majority of our uninterested "independent" directors, or the members of our board who do not have an interest in the transaction, in either case who had access, at our expense, to our attorneys or independent legal counsel. We will not enter into any such transaction unless our audit committee and a majority of our disinterested "independent" directors determine that the terms of such transaction are no less favorable to us than those that would be available to us***

47

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF<br>THE FEDERAL SECURITIES LAWS

*with respect to such a transaction from unaffiliated third parties.* Additionally, we require each of our directors and executive officers to complete a directors' and officers' questionnaire that elicits information about related party transactions.

These procedures are intended to determine whether any such related party transaction impairs the independence of a director or presents a conflict of interest on the part of a director, employee or officer.

To further minimize potential conflicts of interest, we have agreed not to consummate a business combination with an entity which is affiliated with any of our initial shareholders unless we obtain an opinion from an independent investment banking firm that the business combination is fair to our unaffiliated shareholders from a financial point of view. Furthermore, in no event will any of our existing officers, directors, special advisors or initial shareholders, or any entity with which they are affiliated, be paid any finder's fee, consulting fee or other compensation prior to, or for any services they render in order to effectuate, the consummation of a business combination.

106. The Defendants' statements referenced in the preceding paragraphs—particularly the emphasized portions of the preceding paragraph and disclosure of the value of related party transactions—were materially false and/or misleading because they misrepresented and failed to disclose that HF Foods' insiders and related parties had been enriching themselves through related party transactions with entities, certain of which appear to have illusory operations. As detailed in the Hindenburg Report and confirmed by Plaintiffs' investigation, "$4 million of shareholder cash was used for purchases and advances to Revolution Industry, an entity based out of HF Foods' headquarters, owned 100% by the Chairman/CEO's Son, that was formed 1 month prior to the IPO Deal, with no visible signs of an actual business" and over "$1 million in shareholder cash has gone to UGO USA Inc., another related-party entity registered to HF Foods' Headquarters with few signs of operations." The Hindenburg Report also found that more than $11.6 million "of shareholder cash went to Eastern Fresh an entity HF Foods claims is a separate

48

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

business" but has signage indicating otherwise, while "$1.8 million in shareholder cash went to related party Fortune One Foods….[which] HF Foods' filings describe [] as a separate entity" but Fortune One "describes itself as being a part of HF Foods." Furthermore, although the Company claimed to have bought over $4 million in product from NC Noodle, NC Noodle was observed to have a largely vacant premises, according to the Hindenburg Report. Additionally, Plaintiffs' investigation of NC Noodle likewise did not observe the sprawling operation that would have been expected given the volume of product NC Noodle purportedly sold to HF Foods. The facts uncovered during Plaintiffs' investigation and detailed in the Hindenburg report thus strongly indicate that HF Foods' transactions with NC Noodle were not on terms as favorable to HF Foods as terms available from unaffiliated third parties, as required by the Company's policies, and were part of Defendants' scheme to funnel the Company's funds into their own personal pockets. Additionally, the Company provided nearly $500,000 in loans to Revolution Automotive, which owns its own fleet of luxury cars and is owned by Raymond Ni. Defendants' failure to timely disclose Zhou Min Ni's 37.34% ownership interest in NC Noodle, which he purportedly disposed of on January 1, 2020 according to the Company's 3Q 2020 Form 10-Q, violated SEC Regulations and GAAP, and company policy, and rendered their statements materially false and misleading.

107.   Defendants' statements set forth above in ¶ 105 regarding related party transactions were also false and/or misleading given that they misrepresented or failed to

49

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

disclose the Company's related party transactions were in violation of the letter and spirit of the Company's policies generally prohibiting related party transactions, and the Company's related party transaction disclosures violated applicable SEC regulations and GAAP. Although the Company's Code "requires us to avoid, wherever possible, all related party transactions that could result in actual or potential conflicts of interests, except under guidelines approved by the Board of Directors" the pervasive use of related party transactions demonstrates Defendants failed to "avoid, wherever possible, all related party transactions." Moreover, although the Company's Code assured that "[a]ll ongoing and future transactions between us and any of our officers and directors or their respective affiliates will be on terms believed by us to be no less favorable to us than are available from unaffiliated third parties", as the Hindenburg Report concluded, wholesale margins to related parties collapsed 33% after HF Foods began publicly trading on August 23, 2018 and cash seems to be slipping out the back door, evidencing that the terms of those transactions were not "no less favorable to us than are available from unaffiliated third parties."

108. Defendants' statements set forth above in ¶ 105 regarding related party transactions were also false and/or misleading given that they misrepresented or failed to disclose the Company's fleet of luxury vehicles that Zhou Min Ni, Chan Sin Wong, and their Son, Raymond Ni, used for personal purposes, as alleged above.

109. On November 14, 2018, HF Foods filed with the SEC its 3Q 2018 Report. In

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

addition to the representations referenced above, the 3Q 2018 Report also purported to provide all related party transactions and that they complied with the Company's policy pertaining to related party transactions. It disclosed:

> The Company records transactions with various related parties. These related party transactions as of September 30, 2018 and December 31, 2017 and for the nine and three months ended September 30, 2018 and, 2017 are identified as follows:

**Related party balances:**

**a. Accounts receivable - related parties, net**

Below is a summary of accounts receivable with related parties as of September 30, 2018 and December 31, 2017, respectively:

| Name of Related Party | As of September 30, 2018 | As of December 31, 2017 |
|---|---|---|
| (a) Allstate Trading Company Inc. | $ 8,908 | $ 176,660 |
| (b) Enson Seafood GA Inc. (formerly "GA-GW Seafood, Inc.") | 98,833 | 87,814 |
| (c) Eagle Food Service LLC | 344,188 | 656,799 |
| (d) Fortune One Foods Inc. | 144,831 | 154,904 |
| (e) Eastern Fresh LLC | 902,518 | 340,114 |
| (f) New Marco Food Inc. | — | 170,129 |
| (g) Enson Trading LLC | 72,872 | 340,114 |
| Total | $ 1,572,100 | $ 1,586,420 |

a.  Mr. Zhou Min Ni, the Chairman and Chief Executive Officer of the Company, owns 40% equity interest of this entity;

b.  Mr. Zhou Min Ni owns 45% equity interest of this entity;

c.  Tina Ni, one of Mr. Zhou Min Ni's family member owns 50% equity interest of this entity;

d.  Mr. Zhou Min Ni owns 17.5% equity interest of this entity;

e.  Mr. Zhou Min Ni owns 30% equity interest of this entity;

f.  Mr. Zhou Min Ni owns 30% equity interest of this entity.

g.  Mr. Zhou Min Ni owns 25% equity interest of Enson Trading LLC.

51

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

110.   The 3Q 2018 Report disclosed the following with respect to advances to related parties:

> The Company periodically provides purchase advances to various vendors, including the related party suppliers. These advances are made in the normal course of business and are considered fully realizable.
>
> Below is a summary of advances to related party suppliers as of September 30, 2018 and December 31, 2017, respectively:

| Name of Related Party | As of September 30, 2018 | As of December 31, 2017 |
|---|---|---|
| (1)  Enson Seafood GA Inc. (formerly "GA-GW Seafood, Inc.") | $          — | $   2,978,161 |
| (2)  Ocean Pacific Seafood Group | 247,724 | 145,888 |
| (3)  Han Feng Information Tech. Jinhua Inc. | — | 5,167 |
| (4)  NSG International Inc. ("NSG") | 65,092 | 119,093 |
| (5)  Revolution Industry LLC | 362,077 | — |
| Total | $   674,893 | $   3,248,309 |

(1)   Mr. Zhou Min Ni owns 45% equity interest of this entity. The large advances to Enson Seafood GA Inc. ("Enson Seafood") made in 2017 was a result of the Company's decision to take advantage of the large refrigerated facilities owned by Enson Seafood. The Company made these advances to Enson Seafood for the purchases of large quantities of frozen foods. Enson Seafood takes possession of these frozen goods until they are shipped based on the Company's sales orders. The Company did not include these advanced purchases in its inventory since the title and risk of these goods remained with Enson Seafood;

(2)   Mr. Zhou Min Ni owns 25% equity interest of this entity;

(3)   Mr. Zhou Min Ni owns 37% of its equity interest;

(4)   Mr. Zhou Min Ni owns 30% of its equity interest;

(5)   Mr. Zhou Min Ni owns a 51% equity interest in Revolution Industry LLC.

111.   The 3Q 2018 Report disclosed a number of related party loan transactions as well. Specifically, it disclosed:

52

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

The Company had previously made advances or loans to certain entities that are either owned by the controlling shareholders of the Company or family members of the controlling shareholders.

As of September 30, 2018 and December 31, 2017, the outstanding loans to various related parties consist of the following:

| Name of Related Party | As of September 30, 2018 | As of December 31, 2017 |
|---|---|---|
| Enson Seafood GA Inc. (formerly "GA-GW Seafood, Inc.") | $   1,848,524 | $   550,000 |
| NSG International Inc. ("NSG") | 6,218,310 | 5,993,552 |
| Eastern Fresh LLC ("Eastern") | — | 316,504 |
| Revolution Automotive LLC ("Revolution Automotive") | 465,532 | — |
| Total | $   8,532,366 | $   6,860,056 |
| Less: Current portion | $   38,049 | $   — |
| Total | $   8,494,317 | $   6,860,056 |

112.   Additionally, the 3Q 2018 Report disclosed with respect to related party sales and purchase transactions as follows:

The Company also makes regular sales to or purchases from various related parties during the normal course of business. The total sales made to related parties amounted to $13,364,070 and $14,107,311 for the nine months ended September 30, 2018 and 2017, and $4,427,639 and $3,230,646 for the three months ended September 30, 2018 and 2017 respectively. The total purchases made from related parties were $26,882,395 and $25,527,242 for the nine months ended September 30, 2018 and 2017, and $13,871,903 and $12,807,218 for the three months ended September 30, 2018 and 2017, respectively.

113.   The statements referenced above in ¶¶ 109-12 regarding related party transactions were materially false and/or misleading. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that HF Foods' insiders and related parties had been, and were then, enriching themselves through related party transactions

53

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

with entities, certain of which appear to have illusory operations, according to the Hindenburg Report and Plaintiffs' own investigation. For instance, according to the Report, "$4 million of shareholder cash was used for purchases and advances to Revolution Industry, an entity based out of HF Foods' headquarters, owned 100% by the Chairman/CEO's Son, that was formed 1 month prior to the IPO Deal, with no visible signs of an actual business" and over "$1 million in shareholder cash has gone to UGO USA Inc., another related-party entity registered to HF Foods' Headquarters with few signs of operations." The Hindenburg Report also found that more than $11.6 million "of shareholder cash went to Eastern Fresh an entity HF Foods claims is a separate business" but has signage indicating otherwise, while "$1.8 million in shareholder cash went to related party Fortune One Foods….[which] HF Foods' filings describe [] as a separate entity" but Fortune One "describes itself as being a part of HF Foods." Furthermore, NC Noodle, despite having made over $4 million in sales to HF Foods according to HF Foods' SEC filings, was observed to have a largely vacant premises, according to the Hindenburg Report. Additionally, Plaintiffs' own on the ground investigation of the NC Noodle likewise did not observe the sprawling operation that would have been expected given the volume of product NC Noodle sold to HF Foods. The facts uncovered during Plaintiffs' investigation and detailed in the Hindenburg report thus strongly indicate that HF Foods' transactions with NC Noodle were not on terms as favorable to HF Foods as terms available from unaffiliated third parties, as required by the Company's policies, and were

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

part of Defendants' scheme to funnel the Company's funds into their own personal pockets. Additionally, the Company provided nearly $500,000 in loans to Revolution Automotive, which owns its own fleet of luxury cars and is owned by Raymond Ni. Defendants' failure to timely disclose Zhou Min Ni's 37.34% ownership interest in NC Noodle, which he purportedly disposed of on January 1, 2020 according to the Company's 3Q 2020 Form 10-Q, also violated SEC Regulations and GAAP, and company policy, and rendered their statements materially false and misleading.

114. Defendants' statements set forth above in ¶¶ 109-12 regarding related party transactions were also false and/or misleading given that they misrepresented or failed to disclose the Company's related party transactions were in violation of the letter and spirit of the Company's policies generally prohibiting related party transactions, and the Company's related party transaction disclosures violated applicable SEC regulations and GAAP. Although the Company's Code "requires us to avoid, wherever possible, all related party transactions that could result in actual or potential conflicts of interests, except under guidelines approved by the Board of Directors" the pervasive use of related party transactions demonstrates Defendants failed to "avoid, wherever possible, all related party transactions." Moreover, although the Company's Code assured that "[a]ll ongoing and future transactions between us and any of our officers and directors or their respective affiliates will be on terms believed by us to be no less favorable to us than are available from unaffiliated third parties," as the Hindenburg Report concluded, wholesale margins

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

to related parties fell by 33% after HF Foods began publicly trading on August 23, 2018 and cash seems to be slipping out the back door, evidencing that the terms of those transactions were not "no less favorable to us than are available from unaffiliated third parties."

115.   Defendants' statements set forth above in ¶¶ 109-12 regarding related party transactions were also false and/or misleading given that they misrepresented or failed to disclose the Company's fleet of luxury vehicles that Zhou Min Ni, Chan Son Wong, and their Son, Raymond Ni, used for personal purposes, as alleged above.

116.   On April 1, 2019, HF Foods filed its 2018 Annual Report. The 2018 Annual Report purported to provide all related party transactions and that they complied with the Company's policy pertaining to related party transactions. In particular, it disclosed:

> The Company records transactions with various related parties. These related party transactions as of December 31, 2018 and 2017 and for the years ended December 31, 2018 and 2017 are identified as follows:

**a.   Accounts receivable - related parties, net**

Below is a summary of accounts receivable with related parties as of December 31, 2018 and 2017, respectively:

| Name of Related Party | As of December 31, 2018 | As of December 31, 2017 |
|---|---|---|
| (a) Allstate Trading Company Inc. | $       1,000 | $   176,660 |
| (b) Enson Seafood GA Inc. (formerly "GA-GW Seafood, Inc.") | 255,412 | 87,814 |
| (c) Eagle Food Service LLC | 817,275 | 656,799 |
| (d) Fortune One Foods Inc. | 130,314 | 154,904 |
| (e) Eastern Fresh LLC | 784,836 | 340,114 |
| (f) New Marco Food Inc. | — | 170,129 |
| (g) Enson Trading LLC | 170,633 | — |

56

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

| | | |
|---|---|---|
| (h) Enson Philadelphia Inc. | 49,027 | — |
| (i) Hengfeng Food Service Inc. | 83,654 | — |
| Total | $ 2,292,151 | $ 1,586,420 |

a.  Mr. Zhou Min Ni, the Chairman and Chief Executive Officer of the Company, owns 40% equity interest of this entity;
b.  Mr. Zhou Min Ni owns 50% equity interest of this entity;
c.  Tina Ni, one of Mr. Zhou Min Ni's family member owns 50% equity interest of this entity;
d.  Mr. Zhou Min Ni owns 17.5% equity interest of this entity;
e.  Mr. Zhou Min Ni owns 30% equity interest of this entity;
f.  Mr. Zhou Min Ni owns 30% equity interest of this entity.
g.  Mr. Zhou Min Ni owns 25% equity interest of Enson Trading LLC.
h.  Mr. Zhou Min Ni owns 25% equity interest of Enson Philadelphia Inc.
i.  Mr. Zhou Min Ni owns 45% equity interest of Hengfeng Food Service Inc.

117.   The 2018 Annual Report disclosed the following with respect to advances to related parties:

The Company periodically provides purchase advances to various vendors, including the related party suppliers. These advances are made in the normal course of business and are considered fully realizable.

Below is a summary of advances to related party suppliers as of December 31, 2018 and 2017, respectively:

| Name of Related Party | As of December 31, 2018 | As of December 31, 2017 |
|---|---|---|
| (1) Enson Seafood GA Inc. (formerly "GA-GW Seafood, Inc.") | $      — | $ 2,978,161 |
| (2) Ocean Pacific Seafood Group | 208,960 | 145,888 |
| (3) Han Feng Information Tech. Jinhua Inc. | — | 5,167 |
| (4) NSG International Inc. ("NSG") | - | 119,093 |
| (5) Revolution Industry LLC | 329,394 | — |
| (6) First Choice Seafood Inc. | 988,128 | — |
| Total | $ 1,526,482 | $ 3,248,309 |

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

(1) Mr. Zhou Min Ni owns 50% equity interest of this entity. The large advances to Enson Seafood GA Inc. ("Enson Seafood") made in 2017 was a result of the Company's decision to take advantage of the large refrigerated facilities owned by Enson Seafood. The Company made these advances to Enson Seafood for the purchases of large quantities of frozen foods. Enson Seafood takes possession of these frozen goods until they are shipped based on the Company's sales orders. The Company did not include these advanced purchases in its inventory since the title and risk of these goods remained with Enson Seafood;

(2) Mr. Zhou Min Ni owns 25% equity interest of this entity;

(3) Mr. Zhou Min Ni owns 37% of its equity interest;

(4) Mr. Zhou Min Ni owns 30% of its equity interest;

(5) The son of Mr. Zhou Min N, Raymond Ni owns 100% of Revolution Industry LLC;

(6) First Choice Seafood is owned by Enson Seafood GA Inc, as described in (1).

118. The 2018 Annual Report disclosed a number of related party loan transactions as well. Specifically, it disclosed:

The Company had previously made advances or loans to certain entities that are either owned by the controlling shareholders of the Company or family members of the controlling shareholders.

As of December 31, 2018 and 2017, the outstanding loans to various related parties consist of the following:

| Name of Related Party | As of December 31, 2018 | As of December 31, 2017 |
|---|---|---|
| Enson Seafood GA Inc. (formerly "GA-GW Seafood, Inc.") | $ 1,987,241 | $    550,000 |
| NSG International Inc. ("NSG") | 6,092,397 | 5,993,552 |
| Eastern Fresh LLC ("Eastern") | — | 316,504 |
| Revolution Automotive LLC ("Revolution Automotive")[(1)] | 461,311 | — |
| Total | $ 8,540,949 | $ 6,860,056 |
| Less: Current portion | $ 8,117,686 | $        — |
| Total | $    423,263 | $ 6,860,056 |

(1) The son of Mr. Zhou Min Ni, Raymond Ni owns 100% of Revolution Automotive LLC.

58

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

On January 1, 2018, the Company signed a promissory note agreement with Enson Seafood. Pursuant to the promissory note agreement, the outstanding balances of $550,000 due from Enson Seafood as of December 31, 2017 was converted into promissory notes bearing annual interest of 5%. The interest shall be accrued starting January 1, 2018. The principal plus interest shall be paid off no later than December 31, 2019. Interest is computed on the outstanding balance on the basis of the actual number of days elapsed in a year of 360 days.

On September 30, 2018, the Company signed a promissory note agreement with Enson Seafood for $2,000,000. Pursuant to the promissory note agreement, Enson Seafood will make monthly payment of $171,214.96 for 12 months, including interest. The loan bears interested of 5% per annum on the unpaid balance, compounded monthly. The principal plus interest shall be paid off no later than September 30, 2019, with an option to renew.

On January 1, 2018, the Company signed a promissory note agreement with NSG. Pursuant to the promissory note agreement, the outstanding balances of $5,993,552 due from NSG as of December 31, 2017 was converted into promissory notes bearing annual interest of 5%. The interest shall be accrued starting January 1, 2018. The principal plus interest shall be paid off no later than December 31, 2019. Interest is computed on the outstanding balance on the basis of the actual number of days elapsed in a year of 360 days.

The promissory note with Eastern in the original amount of $1,000,000 was signed on May 31, 2017 bearing annual interest rate of 5%. This note has been repaid in full.

On March 1, 2018, the Company signed promissory note agreement with Revolution Automotive for $483,628. Pursuant to the promissory note agreement, Revolution Automotive will make monthly payment of $5,000 for 60 months, including interest, with final payment of $284,453. The loan bears interest of 5% per annum. Interest is computed on the outstanding balance on the basis of the actual number of days elapsed in a year of 360 days. The principal plus interest shall be paid off no later than April 30, 2023.

On March 1, 2019, the Company and each of Enson Seafood and NSG agreed to extend the expiration date of their notes payable to February 29, 2024 and Mr. Zhou Min Ni agreed to personally guarantee these notes.

119.   Additionally, the 2018 Annual Report disclosed with respect to related party sales and purchase transactions as follows:

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

The Company also makes regular sales to or purchases from various related parties during the normal course of business. The total sales made to related parties amounted to $18,147,003 and $18,449,864 for the years ended December 31, 2018 and 2017, respectively. The total purchases made from related parties were $31,676,828 and $32,221,005 for the years ended December 31, 2018 and 2017, respectively.

120.   The 2018 Annual Report also stated the following regarding its gross margin decrease and related party transactions:

Gross margin for our wholesale segment decreased by $440,000, or 32.1%, and our wholesale revenue decreased by $1.2 million or 6.2%. The decrease in margins resulted from increased sales to related parties relative to total wholesale revenue in 2018 as compared to 2017. The wholesale price for related parties is generally lower than third party customers due to the larger quantities purchased by related parties resulting in lower margin than the sales made to third parties. For the year ended December 31, 2018, 96.3% of the wholesale revenue was generated by related parties, compared to 92% in 2017.

121.   The statements referenced above in ¶¶ 116-20 regarding related party transactions were materially false and/or misleading because they misrepresented and failed to disclose that HF Foods' insiders and related parties had been, and were then, enriching themselves through related party transactions with entities, certain of which appear to have illusory operations, according to the Hindenburg Report and Plaintiffs' own investigation. For instance, according to the Report, "$4 million of shareholder cash was used for purchases and advances to Revolution Industry, an entity based out of HF Foods' headquarters, owned 100% by the Chairman/CEO's Son, that was formed 1 month prior to the IPO Deal, with no visible signs of an actual business" and over "$1 million in shareholder cash has gone to UGO USA Inc., another related-party entity registered to HF Foods' Headquarters with few signs of operations." The Hindenburg Report also found

60

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

that more than $11.6 million "of shareholder cash went to Eastern Fresh an entity HF Foods claims is a separate business" but has signage indicating otherwise, while "$1.8 million in shareholder cash went to related party Fortune One Foods….[which] HF Foods' filings describe [] as a separate entity" but Fortune One "describes itself as being a part of HF Foods." Furthermore, NC Noodle, despite having made over $4 million in sales to HF Foods according to HF Foods' SEC filings, was observed to have a largely vacant premises, according to the Hindenburg Report. The Report accordingly concluded that "[w]e suspect this is little more than an insider-owned entity that sells product to nearby HF" and "[w]e have serious doubts about whether this 'middleman' provides value to anyone but HF insiders." Additionally, Plaintiffs' own on the ground investigation of the NC Noodle likewise did not observe the sprawling operation that would have been expected given the volume of product NC Noodle sold to HF Foods. The facts uncovered during Plaintiffs' investigation and detailed in the Hindenburg report thus strongly indicate that HF Foods' transactions with NC Noodle were not on terms as favorable to HF Foods as terms available from unaffiliated third parties, as required by the Company's policies, and were part of Defendants' scheme to funnel the Company's funds into their own personal pockets. Additionally, the Company provided nearly $500,000 in loans to Revolution Automotive, which owns its own fleet of luxury cars and is owned by Raymond Ni. Defendants' failure to timely disclose Zhou Min Ni's 37.34% ownership interest in NC Noodle, which he purportedly disposed of on January 1, 2020 according to

61

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

the Company's 3Q 2020 Form 10-Q, also violated SEC Regulations and GAAP, and company policy, and rendered their statements materially false and misleading.

122. Defendants' statements set forth above in ¶¶ 116-20 regarding related party transactions were also false and/or misleading given that they misrepresented or failed to disclose the Company's related party transactions were in violation of the letter and spirit of the Company's policies generally prohibiting related party transactions, and the Company's related party transaction disclosures violated applicable SEC regulations and GAAP. Although the Company's Code "requires us to avoid, wherever possible, all related party transactions that could result in actual or potential conflicts of interests, except under guidelines approved by the Board of Directors" the pervasive use of related party transactions demonstrates Defendants failed to "avoid, wherever possible, all related party transactions." Moreover, although the Company's Code assured that "[a]ll ongoing and future transactions between us and any of our officers and directors or their respective affiliates will be on terms believed by us to be no less favorable to us than are available from unaffiliated third parties", as the Hindenburg Report concluded, wholesale margins to related parties dropped 33% immediately after HF Foods began publicly trading on August 23, 2018 and cash seems to be slipping out the back door, evidencing that the terms of those transactions were not "no less favorable to us than are available from unaffiliated third parties."

123. Defendants' statements set forth above in ¶¶ 116-20 regarding related party

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

transactions were also false and/or misleading given that they misrepresented or failed to disclose the Company's fleet of luxury vehicles that Zhou Min Ni, Chan Sin Wong, and their Son, Raymond Ni, used for personal purposes, as alleged above.

124. On April 30, 2019, HF Foods filed its 2019 Proxy. With respect to "Certain Relationships and Transactions with Related Persons," which was incorporated by reference into the 2018 Annual Report, the 2019 Proxy disclosed, in part:

> *We have adopted a Code of Ethics that applies to our principal executive officer, principal financial officer, principal accounting officer or controller, or persons performing similar functions. Our Code of Ethics is designed to deter wrongdoing and promote: (i) honest and ethical conduct, including the ethical handling of actual or apparent conflicts of interest between personal and professional relationships; (ii) full, fair, accurate, timely and understandable disclosure in reports and documents that we file with, or submit to, the SEC and in our other public communications;* (iii) compliance with applicable governmental laws, rules, and regulations; (iv) the prompt internal reporting of violations of the code to an appropriate person or persons identified in the code; and (v) accountability for adherence to the code. We intend to disclose amendments or waivers of the Code of Ethics on our website within four business days.

> *      *      *

> Mr. Zhou Min Ni, the Chief Executive Officer, Chairman of the Board of Directors, and beneficial owner of 30.2% of the Company's outstanding shares of common stock, and certain of his immediate family members have ownership interests in various companies (the "Related Parties") involved in (i) the distribution of food and related products to restaurants and other retailers and (ii) the supply of fresh food, frozen food, and packaging supplies to distributers.

> The Company purchases products from and sells products to some of these Related Parties which at times also involve making advance payments to, or receiving advance payments from, these Related Parties. Prices paid for these goods are based on the prices published by the particular Related Party. *The Board of Directors has analyzed the prices paid to these Related Parties as well as the level of service, reliability, delivery terms, and historical performance of these Related Parties and has concluded that such prices and terms are substantially equivalent to, or more advantageous than, prices and terms the Company would receive in arm's length transactions from third parties that have no relationship with the Company and are capable of providing the same level of service.* Sales to Related Parties consist primarily of sales to distributers. These sales permit the Company to

63

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

purchase certain items from manufacturers in larger quantities which at times, results in better purchase prices for the Company. The Company also leases to a Related Party, on commercially reasonable terms, a warehouse and distribution facility near Savannah, Georgia, which promotes a relationship that helps the Company source a reliable supply of fresh and frozen seafood. In addition to these factors, the Board of Directors believes that Mr. Zhou Min Ni's extensive experience and contacts in the foodservice industry, including the numerous companies in which he has an ownership interest, provide valuable insight into industry trends and access to products, pricing and customers that the Company would not otherwise be exposed to.

125. The statements referenced in the preceding paragraph—particularly the emphasized portions—were materially false or misleading because they misrepresented and failed to disclose that HF Foods' insiders and related parties had been, and were then, enriching themselves through related party transactions with entities, certain of which appear to have illusory operations, according to the Hindenburg Report and Plaintiffs' own investigation. For instance, according to the Report, "$4 million of shareholder cash was used for purchases and advances to Revolution Industry, an entity based out of HF Foods' headquarters, owned 100% by the Chairman/CEO's Son, that was formed 1 month prior to the IPO Deal, with no visible signs of an actual business" and over "$1 million in shareholder cash has gone to UGO USA Inc., another related-party entity registered to HF Foods' Headquarters with few signs of operations." The Hindenburg Report also found that more than $11.6 million "of shareholder cash went to Eastern Fresh an entity HF Foods claims is a separate business" but has signage indicating otherwise, while "$1.8 million in shareholder cash went to related party Fortune One Foods….[which] HF Foods' filings describe [] as a separate entity" but Fortune One "describes itself as being a part of

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

HF Foods." Furthermore, NC Noodle, despite having made over $4 million in sales to HF Foods according to HF Foods' SEC filings, was observed to have a largely vacant premises, according to the Hindenburg Report. The Report accordingly concluded that "[w]e suspect this is little more than an insider-owned entity that sells product to nearby HF" and "[w]e have serious doubts about whether this 'middleman' provides value to anyone but HF insiders." Additionally, Plaintiffs' own on the ground investigation of the NC Noodle likewise did not observe the sprawling operation that would have been expected given the volume of product NC Noodle sold to HF Foods at all relevant times. The facts uncovered during Plaintiffs' investigation and detailed in the Hindenburg report thus strongly indicate that HF Foods' transactions with NC Noodle were not on terms as favorable to HF Foods as terms available from unaffiliated third parties, as required by the Company's policies, and were part of Defendants' scheme to funnel the Company's funds into their own personal pockets. Additionally, the Company provided nearly $500,000 in loans to Revolution Automotive, which owns its own fleet of luxury cars and is owned by Raymond Ni. Defendants' failure to timely disclose Zhou Min Ni's 37.34% ownership interest in NC Noodle, which he purportedly disposed of on January 1, 2020 according to the Company's 3Q 2020 Form 10-Q, also violated SEC Regulations and GAAP, and company policy, and rendered its 2019 Proxy materially false and misleading.

126.   Defendants' statements set forth above in ¶ 124 regarding related party transactions were also false or misleading given that they misrepresented or failed to

65

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

disclose the Company's related party transactions disclosed in the 2019 Proxy were in violation of the letter and spirit of the Company's policies generally prohibiting related party transactions, and the Company's related party transaction disclosures violated applicable SEC regulations and GAAP. Although the Company's Code "requires us to avoid, wherever possible, all related party transactions that could result in actual or potential conflicts of interests, except under guidelines approved by the Board of Directors" the pervasive use of related party transactions demonstrates Defendants failed to "avoid, wherever possible, all related party transactions." Moreover, although the Company's Code assured that "[a]ll ongoing and future transactions between us and any of our officers and directors or their respective affiliates will be on terms believed by us to be no less favorable to us than are available from unaffiliated third parties," as the Hindenburg Report concluded, wholesale margins to related parties collapsed by 33% immediately after HF Foods began publicly trading on August 23, 2018 and cash seems to be slipping out the back door, evidencing that the terms of those transactions were not "no less favorable to us than are available from unaffiliated third parties."

127.  Defendants' statements set forth above in ¶ 124 regarding related party transactions were also false and/or misleading given that they misrepresented or failed to disclose the Company's fleet of luxury vehicles that Zhou Min Ni, Chan Sin Wong, and their Son, Raymond Ni, used for personal purposes, as alleged above.

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

128. The 2019 Proxy further purported to disclose all related party sales transactions, including purchases, sales, advances and loans and that they complied with the Company's policy pertaining to related party transactions. For example, it disclosed related party sales transactions totaling approximately $18.1 million for the year ended December 2018, related party purchase transactions of approximately $31.7 million for the year ended December 2018—including $2,122,240 from Revolution Automotive, LLC, which is owned 100% by Raymond Ni, Zhou Min Ni's Son—and an outstanding loan of nearly $500,000 to Revolution Automotive.

129. More specifically, the 2019 Proxy disclosed the following with respect to related party sales and purchase transactions:

The Company makes sales to various Related Parties in the ordinary course of business. The total sales made to Related Parties were $18,147,003 and $18,449,864 for the years ended December 31, 2018 and 2017, respectively. Set forth below is a breakdown of sales to Related Parties and by footnote reference, a description of the relationship between each Related Party and Zhou Min Ni:

| # | Name of Related Party | For The Years Ended December 31, | |
| --- | --- | --- | --- |
| | | 2018 | 2017 |
| (1) | Eagle Food Service LLC | $ 6,315,926 | $ 7,146,894 |
| (2) | Eastern Fresh LLC | 5,025,528 | 4,819,421 |
| (3) | N&F Logistic Inc. | 2,948,031 | 2,253,248 |
| (4) | Heng Feng Food Service Inc. | 1,769,125 | 1,940,294 |
| (5) | Allstate Trading Company Inc. | 17,959 | 617,495 |
| (6) | Fortune One Foods Inc. | 895,031 | 574,805 |
| (7) | Enson Trading LLC | 568,971 | 570,235 |
| (8) | Enson Seafood GA Inc. | 514,554 | 527,471 |
| (9) | UGO USA Inc. | 39,186 | — |
| (10) | Enson Philadelphia Inc. | 49,027 | — |
| (11) | Others | 3,655 | — |
| | **TOTAL** | $18,147,003 | $18,449,864 |

67

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

(1) Tina Ni, the daughter of Mr. Zhou Min Ni, owns a 50% equity interest in Eagle Food Service LLC.

(2) Mr. Zhou Min Ni owns a 30% equity interest in Eastern Fresh LLC.

(3) Mr. Zhou Min Ni owns a 25% equity interest in N&F Logistic, Inc.

(4) Mr. Zhou Min Ni owns a 45% equity interest in Hengfeng Food Service Inc.

(5) Mr. Zhou Min Ni owns a 40% equity interest in Allstate Trading Company Inc.

(6) N&F Logistic, Inc., one of HF Group's related parties owns a 70% equity interest in Fortune One Foods Inc. See note 3 above.

(7) Mr. Zhou Min Ni owns a 25% equity interest in Enson Trading LLC.

(8) Mr. Zhou Min Ni owns a 50% equity interest in Enson Seafood GA Inc.

(9) Mr. Zhou Min Ni owns a 30% equity interest in UGO USA Inc.

(10) Mr. Zhou Min Ni owns a 25% equity interest in Enson Philadelphia Inc.

(11) Represents nominal sales to two additional Related Parties.

\* \* \*

The Company makes purchases from various Related Parties in the ordinary course of business. The total purchases made from Related Parties were $31,676,828 and $32,221,005 for the years ended December 31, 2018 and 2017, respectively. Set forth below is a breakdown of purchases from Related Parties and by footnote reference, a description of the relationship between each Related Party and Zhou Min Ni:

| | | For The Years Ended December 31, | |
| --- | --- | --- | --- |
| # | Name of Related Party | 2018 | 2017 |
| (1) | Golden Poultry, LLC | $ 5,641,599 | $ 7,065,901 |
| (2) | Eastern Fresh LLC | 7,140,754 | 6,486,180 |
| (3) | Fujian RongFeng Plastic Co., Ltd. | 5,350,755 | 4,644,437 |
| (4) | NC Good Taste Noodle Inc. | 3,881,433 | 4,060,177 |
| (5) | Fuzhou (Hanfeng) Information Tec. | 3,130,875 | 2,832,933 |
| (6) | Fortune One Foods Inc. | - | 1,318,459 |
| (7) | N&F Logistic, Inc. | 1,206,106 | 1,273,190 |
| (8) | Collegepoint Distribution, LLC | - | 1,100,100 |
| (9) | Enson Seafood GA Inc | 664,770 | 926,427 |
| (10) | New Day Top Trading Inc. | - | 761,020 |
| (11) | Enson Trading LLC | 415,462 | 616,639 |
| (12) | Ocean Pacific Seafood Group | 687,225 | 524,722 |
| (13) | Allstate Trading Company Inc. | 43,212 | 327,821 |

68

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

| | | | | |
|---|---|---|---:|---:|
| (14) | Eagle Food Service LLC | | 270,368 | 149,714 |
| (15) | Han Feng Global Inc. d/b/a NSG International | | 119,092 | 86,092 |
| (16) | Great Wall Seafood Florida Inc. | | - | 23,542 |
| (17) | UGO USA INC. | | 710,224 | 19,151 |
| (18) | iUnited Services | | - | 4,500 |
| (19) | Revolution Automotive, LLC | | 2,122,240 | — |
| (20) | First Choice Seafood Inc. | | 292,514 | — |
| | **TOTAL** | | $31,676,828 | $32,221,005 |

(1) Mr. Zhou Min Ni owns a 40% equity interest in Golden Poultry, LLC.

(2) Mr. Zhou Min Ni owns a 30% equity interest in Eastern Fresh LLC.

(3) Mr. Zhou Min Ni is the legal representative in Fujian RongFeng Plastic Co., Ltd.

(4) Mr. Jian Ming Ni owns a 66.6% equity interest in NC Good Taste Noodle Inc.

(5) Mr. Zhou Min Ni owns a 100% equity interest in Fuzhou (Hanfeng) Information Tec.

(6) N&F Logistic, Inc., one of HF Group's related parties, owns a 70% equity interest in Fortune one Foods Inc.

(7) Mr. Zhou Min Ni owns a 25% equity interest in N&F Logistic, Inc.

(8) Mr. Zhou Min Ni owns a 33.3% equity interest in Collegepoint Distribution, LLC.

(9) Mr. Zhou Min Ni owns a 50% equity interest in Enson Seafood GA, Inc.

(10) Amanda Ni, the daughter of Mr. Zhou Min Ni, owns a 19% equity interest in New Day Top Trading Inc.

(11) Mr. Zhou Min Ni owns a 25% equity interest in Enson Trading LLC.

(12) Mr. Zhou Min Ni owns a 25% equity interest in Ocean Pacific Seafood Group.

(13) Mr. Zhou Min Ni owns a 40% equity interest in Allstate Trading Company Inc.

(14) Tina Ni, the daughter of Mr. Zhou Min Ni, owns a 50% equity interest in Eagle Food Service LLC.

(15) Mr. Zhou Min Ni owns a 30% equity interest in Han Feng Global Inc. d/b/a NSG International.

(16) Mr. Zhou Min Ni owns a 30% equity interest in Great Wall Seafood Florida Inc.

(17) Mr. Zhou Min Ni owns a 30% equity interest in UGO USA Inc.

(18) Mr. Zhou Min Ni owns a 37% equity interest in iUnited Services.

(19) Raymond Ni, the son of Mr. Zhou Min Ni, owns 100% of Revolution Automotive, LLC.

(20) Mr. Zhou Min Ni owns a 25% equity interest in First Choice Seafood Inc.

69

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

130.   The 2019 Proxy disclosed the following regarding purchase advances to related parties:

> The Company periodically provides purchase advances to various suppliers, including suppliers that are the Related Parties. These advances are made in the ordinary course of business and are considered fully realizable. The balances for advances to suppliers that are Related Parties in connection with the purchase transactions described above amounted to $1,526,482 and $3,248,309 as of December 31, 2018 and 2017, respectively. Set forth below is a breakdown of advances to suppliers that are Related Parties:

| | Name of Related Party | As of December 31, 2018 | As of December 31, 2017 |
|---|---|---|---|
| (1) | Enson Seafood GA Inc. | $ — | $2,978,161 |
| (1) | Ocean Pacific Seafood Group | 208,960 | 145,888 |
| (2) | Han Feng Information Tech. Jinhua Inc. | — | 5,167 |
| (1) | Han Feng Global Inc. d/b/a NSG International | — | 119,093 |
| (3) | Revolution Industry LLC | 329,394 | — |
| (4) | First Choice Seafood Inc. | 988,128 | — |
| | **TOTAL** | $1,526,482 | $3,248,309 |

(1)  Please see footnotes in the table above for a description of the relationship between the Related Party and Mr. Zhou Min Ni.
(2)  Mr. Zhou Min Ni owns 37% of this entity.
(3)  Raymond Ni, the son of Mr. Zhou Min Ni, owns 100% of this entity.
(4)  First Choice Seafood Inc. is owned by Enson Seafood GA Inc

131.   The statements referenced in ¶¶ 128-30 above were materially false and/or misleading for the reasons explained above in ¶¶ 106-08, 113-15, 121-23, 125-27. Additionally, the statements above in ¶¶ 128-29 regarding related party purchase transactions with Revolution Automotive were materially false and misleading because subsequent SEC filings by the Company, including the July 26, 2019 HF/B&R Preliminary Proxy and October 2, 2019 HF/B&R Definitive Proxy, disclosed that the

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

$2,122,240 in purchases that the 2019 Proxy attributed to the related party Revolution Automotive, LLC, were attributable to a different related entity owned by Raymond Ni, Revolution Industry LLC, which is registered to the same address as HF Foods' then headquarters and does not appear to be an actual operating business.

132. In the 2019 Proxy, as reflected above, the Company also disclosed related party purchase transactions with NC Noodle for the year ended December 31, 2018 that totaled $3,881,433.

133. The statements referenced in the preceding paragraph disclosing transactions with NC Noodle were materially false and/or misleading for the reasons explained above, including in ¶¶ 106-07, 121-22. For instance, they misrepresented and failed to disclose that, as Defendants knew or recklessly disregarded, NC Noodle, despite having made over $4 million in sales to HF Foods according to HF Foods' SEC filings, was observed to have a largely vacant premises, according to the Hindenburg Report. The Report accordingly concluded that "[w]e suspect this is little more than an insider-owned entity that sells product to nearby HF" and "[w]e have serious doubts about whether this 'middleman' provides value to anyone but HF insiders." Additionally, Plaintiffs' own on the ground investigation of the NC Noodle likewise did not observe the sprawling operation that would have been expected given the volume of product NC Noodle sold to HF Foods at all relevant times. The facts uncovered during Plaintiffs' investigation and detailed in the Hindenburg report thus strongly indicate that HF Foods' transactions with NC Noodle

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

were not on terms as favorable to HF Foods as terms available from unaffiliated third parties, as required by the Company's policies, and were part of Defendants' scheme to siphon Company money into their own personal pockets.

134.  The statements in the 2019 Proxy alleged above purporting to describe the relationship between Zhou Min Ni and related parties, including with NC Noodle,[19] were also materially false and misleading because they misrepresented and failed to disclose that Zhou Min Ni owned a then-undisclosed equity interest NC Noodle. As the Company revealed in its 3Q 2020 Form 10-Q, Zhou Min Ni "previously owned 37.34% equity in this entity as of 12/31/2019" and "Mr. Ni's equity interest was disposed of on 1/1/2020." Defendants' failure to timely disclose Zhou Min Ni's ownership interest in NC Noodle violated SEC Regulations and GAAP, and company policy, and rendered its 2019 Proxy materially false and misleading.

135.  In the Company's 1Q 2019 Report, Defendants purported to provide all related party transactions and that they complied with the Company's policy pertaining to related party transactions.

136.  In particular it disclosed:

> The Company records transactions with various related parties. These related party transactions as of March 31, 2019 and December 31, 2018

---

[19] In particular, the 2019 Proxy's disclosure that: "Set forth below is a breakdown of purchases from Related Parties and by footnote reference, a description of the relationship between each Related Party and Zhou Min Ni." Additionally, the accompanying footnote reference to the related party NC Noodle disclosed that "Jian Ming Ni owns a 66.6% equity interest in NC Good Taste Noodle Inc."

72

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

and for the three months ended March 31, 2019 and, 2018 are identified as follows:

**Related party balances**:

a.      **Accounts receivable - related parties, net**

Below is a summary of accounts receivable with related parties as of March 31, 2019 and December 31, 2018, respectively:

| | As of | |
| --- | --- | --- |
| | March 31, 2019 | December 31, 2018 |
| Name of Related Party | | |
| (a)  Allstate Trading Company Inc. | $            — | $           1,000 |
| (b)  Enson Seafood GA Inc. (formerly "GA-GW Seafood, Inc.") | 304,412 | 255,412 |
| (c)  Eagle Food Service LLC | 957,640 | 817,275 |
| (d)  Fortune One Foods Inc. | 79,916 | 130,314 |
| (e)  Eastern Fresh LLC | 676,663 | 784,836 |
| (f)  Enson Trading LLC | — | 170,633 |
| (g) Hengfeng Food Service Inc. | 48,008 | 83,654 |
| (h) Enson Philadelphia Inc | 78,422 | 49,027 |
| **Total** | **$ 2,145,061** | **$     2,292,151** |

(a)      Mr. Zhou Min Ni, the Chairman and Chief Executive Officer of the Company, owns a 40% equity interest in this entity;

(b)      Mr. Zhou Min Ni owns a 50% equity interest in this entity;

(c)      Tina Ni, one of Mr. Zhou Min Ni's family member owns a 50% equity interest in this entity;

(d)      Mr. Zhou Min Ni owns a 17.5% equity interest in this entity;

(e)      Mr. Zhou Min Ni owns a 30% equity interest in this entity;

(f)      Mr. Zhou Min Ni owns a 25% equity interest in this entity.

(g)      Mr. Zhou Min Ni owns a 45% equity interest in this entity.

(h)      Mr. Zhou Min Ni owns a 25% equity interest in this entity.

137.   The 1Q 2019 Report disclosed the following with respect to advances to related parties:

73

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

The Company periodically provides purchase advances to various vendors, including the related party suppliers. These advances are made in the normal course of business and are considered fully realizable.

Below is a summary of advances to related party suppliers as of March 31, 2019 and December 31, 2018, respectively:

| | As of | |
| --- | --- | --- |
| | March 31, 2019 | December 31, 2018 |
| Name of Related Party | | |
| (1) Ocean Pacific Seafood Group | $   200,720 | $   208,960 |
| (2) Revolution Industry LLC | 217,197 | 329,394 |
| (3) First Choice Seafood Inc. | 743,673 | 988,128 |
| **Total** | **$ 1,161,590** | **$   1,526,482** |

(1) Mr. Zhou Min Ni owns a 25% equity interest in this entity;

(2) The son of Mr. Zhou Min N, Raymond Ni, owns 100% of Revolution Industry LLC;

(3) First Choice Seafood is owned by Enson Seafood GA Inc. of which Mr. Zhou Min Ni owns a 50% equity interest.

138.   The 1Q 2019 Report disclosed a number of related party loan transactions as well. Specifically, it disclosed:

The Company had previously made advances or loans to certain entities that are either owned by the controlling shareholders of the Company or family members of the controlling shareholders.

As of March 31, 2019, and December 31, 2018, the outstanding loans to various related parties consist of the following:

| | As of | |
| --- | --- | --- |
| | March 31, 2019 | December 31, 2018 |
| Name of Related Party | | |
| Enson Seafood GA Inc. (formerly "GA-GW Seafood, Inc.") | $2,056,691 | $   1,987,241 |
| NSG International Inc. ("NSG") (1) | 6,136,262 | 6,092,397 |
| Revolution Automotive LLC ("Revolution Automotive") (2) | 451,978 | 461,311 |
| **Total** | **$8,644,931** | **$   8,540,949** |
| Less: Current portion | $   952,592 | $   8,117,686 |

74

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

| Total | $7,692,339 | $ | 423,263 |
|---|---|---|---|

(1)  Mr. Zhou Min Ni, owns a 30% equity interest in this entity.
(2)  The son of Mr. Zhou Min Ni, Raymond Ni, owns 100% of Revolution Automotive LLC.

139.  Additionally, the 1Q 2019 Report disclosed with respect to related party sales and purchase transactions as follows:

> The Company also makes regular sales to or purchases from various related parties during the normal course of business. The total sales made to related parties amounted to $4,497,111 and $4,704,861 for the three months ended March 31, 2019 and 2018, respectively. The total purchases made from related parties were $8,932,217 and $7,134,760 for the three months ended March 31, 2019 and 2018, respectively.

140.  Defendants' statements referenced in ¶¶ 135-39 above were materially false and/or misleading for the reasons explained above, including in ¶¶ 106-08, 113-15, 121-23, 125-27, 131-34.

141.  On June 25, 2019, HF Foods filed with the SEC a Form 8-K describing its merger with B&R, signed by Zhou Min Ni, and attaching as exhibits the Merger Agreement dated as of June 21, 2019, a presentation dated June 2019, and a press release announcing the merger. Among other things, the June 25, 2019 8-K announced that "On June 21, 2019, HF Foods Group Inc. ("HF") entered into a merger agreement (the "Merger Agreement") with B&R Group Merger Sub Inc., a wholly-owned subsidiary of HF (the "Merger Sub"), and B&R Global Holdings, Inc. ("B&R"), a leading Chinese food wholesaler and distributor operated by Chinese American serving approximately 6,800 restaurant customers in more than ten western states." The accompanying press release,

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

entitled "HF Foods Group and B&R Global Holdings Enter Into Merger Agreement," added:

> HF Foods Group Inc. (NASDAQ:HFFG) and B&R Global Holdings, Inc. today announced that they have entered into a merger agreement pursuant to which they will combine their operations. Pursuant to the terms of the merger agreement, at the closing of the merger, B&R Global Holdings will merge into HF Foods's wholly owned subsidiary, resulting in B&R Global Holdings becoming a wholly owned subsidiary of HF Foods. HF Foods will issue approximately 30.7 million of its shares of common stock to the former shareholders of B&R Global Holdings as consideration for the transaction. The closing of the merger is subject to, among other things, the approval of HF Foods's stockholders.
>
> B&R Global Holdings, which began operations in 1999, is a food wholesaler and distributor for Asian restaurants in the United States. It serves approximately 6,800 restaurants in eleven western states.
>
> "With this merger, the combined company will be the largest distributor to Asian restaurants in the US," said Zhou Min Ni, chairman and chief executive officer of HF Foods. "With the combined resources of our two pioneering companies, we are well positioned to take advantage of the growing trend of food consumption away from home and of Asian cuisines in particular."

142. Defendants' statements in the 8-K and exhibits thereto referenced in the preceding paragraph were materially false and/or misleading because they misrepresented and failed to disclose that: (i) B&R was a related party; (ii) the ties between B&R and the Chinese based and connected investment funds that controlled it, including between Zhang and Yi Tuan Zhang, and between Yi Tuan Zhang and Rongcheng Trading LLC, a key operating subsidiary of B&R that is now a key operating subsidiary of HF Foods; and (iii) the merger appears to be a related party transaction rife with conflict of interest given those pre-existing connections. In fact, "HF and B&R were both under the umbrella of the same investment group" according to the Hindenburg Report, and as corroborated by Plaintiffs' investigation, as alleged further above.

76

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

143.  On July 26, 2019, HF Foods filed with the SEC the HF/B&R Preliminary Proxy. The HF/B&R Preliminary Proxy included disclosures regarding related party transactions of the HF Group and the policies pertaining to such transactions that mirrored those in the Company's 2019 Proxy. In particular, it disclosed under the heading "Certain Transactions of HF Group"

> ***Mr. Zhou Min Ni, the Chief Executive Officer, Chairman of the Board of Directors, and beneficial owner of 30.2% of HF Group's outstanding shares of common stock, and certain of his immediate family members have ownership interests in various companies (the "Related Parties") involved in (i) the distribution of food and related products to restaurants and other retailers and (ii) the supply of fresh food, frozen food, and packaging supplies to distributers.***

> The Company purchases products from and sells products to some of these Related Parties which at times also involve making advance payments to, or receiving advance payments from, these Related Parties. Prices paid for these goods are based on the prices published by the particular Related Party. ***The Board of Directors has analyzed the prices paid to these Related Parties as well as the level of service, reliability, delivery terms, and historical performance of these Related Parties and has concluded that such prices and terms are substantially equivalent to, or more advantageous than, prices and terms the Company would receive in arm's length transactions from third parties that have no relationship with the Company and are capable of providing the same level of service***. Sales to Related Parties consist primarily of sales to distributers. ***These sales permit the Company to purchase certain items from manufacturers in larger quantities which at times, results in better purchase prices for the Company.*** The Company also leases to a Related Party, on commercially reasonable terms, a warehouse and distribution facility near Savannah, Georgia, which promotes a relationship that helps the Company source a reliable supply of fresh and frozen seafood. In addition to these factors, the Board of Directors believes that Mr. Zhou Min Ni's extensive experience and contacts in the foodservice industry, including the numerous companies in which he has an ownership interest, provide valuable insight into industry trends and access to products, pricing and customers that the Company would not otherwise be exposed to.

> The Company has also made loans to certain Related Parties [including, Revolution Automotive LLC and Eastern Fresh].

> *       *       *

77

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

*Our Code of Ethics, which we adopted upon consummation of our IPO, requires us to avoid, wherever possible, all related party transactions that could result in actual or potential conflicts of interests, except under guidelines approved by the board of directors (or the audit committee).* Related-party transactions are defined as transactions in which (1) the aggregate amount involved will or may be expected to exceed $120,000 in any calendar year, (2) we or any of our subsidiaries is a participant, and (3) any (a) executive officer, director or nominee for election as a director, (b) greater than 5% beneficial owner of our common stock, or (c) immediate family member, of the persons referred to in clauses (a) and (b), has or will have a direct or indirect material interest (other than solely as a result of being a director or a less than 10% beneficial owner of another entity). *A conflict of interest situation can arise when a person takes actions or has interests that may make it difficult to perform his or her work objectively and effectively. Conflicts of interest may also arise if a person, or a member of his or her family, receives improper personal benefits as a result of his or her position.*

We also require each of our directors and executive officers to annually complete a directors' and officers' questionnaire that elicits information about related party transactions.

*Our audit committee, pursuant to its written charter, is responsible for reviewing and approving related-party transactions to the extent we enter into such transactions. All ongoing and future transactions between us and any of our officers and directors or their respective affiliates will be on terms believed by us to be no less favorable to us than are available from unaffiliated third parties.* Such transactions will require prior approval by our audit committee and a majority of our uninterested "independent" directors, or the members of our board who do not have an interest in the transaction, in either case who had access, at our expense, to our attorneys or independent legal counsel. *We will not enter into any such transaction unless our audit committee and a majority of our disinterested "independent" directors determine that the terms of such transaction are no less favorable to us than those that would be available to us with respect to such a transaction from unaffiliated third parties.* Additionally, we require each of our directors and executive officers to complete a directors' and officers' questionnaire that elicits information about related party transactions.

These procedures are intended to determine whether any such related party transaction impairs the independence of a director or presents a conflict of interest on the part of a director, employee or officer.

To further minimize potential conflicts of interest, we have agreed not to consummate a business combination with an entity which is affiliated with any of our initial shareholders unless we obtain an opinion from an independent investment banking firm that the business combination is fair to our unaffiliated shareholders from a financial point of view. Furthermore, in no event will any of our existing officers, directors, special advisors or initial shareholders, or any entity with which they are affiliated, be paid any finder's fee, consulting fee or other compensation

78

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

prior to, or for any services they render in order to effectuate, the consummation of a business combination.

144.    With respect to the related party sales and purchase transactions, the HF/B&R Preliminary Proxy disclosed in pertinent part:

The Company makes sales to various Related Parties in the ordinary course of business. The total sales made to Related Parties were $18,147,003 and $18,449,864 for the years ended December 31, 2018 and 2017, respectively. Set forth below is a breakdown of sales to Related Parties and by footnote reference, a description of the relationship between each Related Party and Zhou Min Ni:

| | | For the years ended | |
| --- | --- | --- | --- |
| # | Name of Related Party | December 31, 2018 | December 31, 2017 |
| (1) | Eagle Food Service LLC | $6,315,926 | $ 7,146,894 |
| (2) | Eastern Fresh LLC | 5,025,528 | 4,819,421 |
| (3) | N&F Logistic Inc. | 2,948,031 | 2,253,248 |
| (4) | Heng Feng Food Service Inc. | 1,769,125 | 1,940,294 |
| (5) | Allstate Trading Company Inc. | 17,959 | 617,495 |
| (6) | Fortune One Foods Inc. | 895,031 | 574,805 |
| (7) | Enson Trading LLC | 568,971 | 570,235 |
| (8) | Enson Seafood GA Inc. | 514,554 | 527,471 |
| (9) | UGO USA Inc. | 39,186 | — |
| (10) | Enson Philadelphia Inc. | 49,027 | — |
| (11) | Others | 3,655 | — |
| | TOTAL | $18,147,003 | $18,449,864 |

(1) Tina Ni, the daughter of Mr. Zhou Min Ni, owns a 50% equity interest in Eagle Food Service LLC.
(2) Mr. Zhou Min Ni owns a 30% equity interest in Eastern Fresh LLC.
(3) Mr. Zhou Min Ni owns a 25% equity interest in N&F Logistic, Inc.
(4) Mr. Zhou Min Ni owns a 45% equity interest in Hengfeng Food Service Inc.
(5) Mr. Zhou Min Ni owns a 40% equity interest in Allstate Trading Company Inc.
(6) N&F Logistic, Inc., one of HF Group's related parties owns a 70% equity interest in Fortune One Foods Inc. See note 3 above.

79

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

(7) Mr. Zhou Min Ni owns a 25% equity interest in Enson Trading LLC.

(8) Mr. Zhou Min Ni owns a 50% equity interest in Enson Seafood GA Inc.

(9) Mr. Zhou Min Ni owns a 30% equity interest in UGO USA Inc.

(10) Mr. Zhou Min Ni owns a 25% equity interest in Enson Philadelphia Inc.

(11) Represents nominal sales to two additional Related Parties

\* \* \*

The Company makes purchases from various Related Parties in the ordinary course of business. The total purchases made from Related Parties were $31,676,828 and $32,221,005 for the years ended December 31, 2018 and 2017, respectively. Set forth below is a breakdown of purchases from Related Parties and by footnote reference, a description of the relationship between each Related Party and Zhou Min Ni:

| # | Name of Related Party | For the years ended December 31, | |
| --- | --- | --- | --- |
| | | 2018 | 2017 |
| (2) | Golden Poultry, LLC | $ 5,641,599 | $ 7,065,901 |
| (1) | Eastern Fresh LLC | 7,140,754 | 6,486,180 |
| (3) | Fujian RongFeng Plastic Co., Ltd. | 5,350,755 | 4,644,437 |
| (4) | NC Good Taste Noodle Inc. | 3,881,433 | 4,060,177 |
| (5) | Fuzhou (Hanfeng) Information Tec. | 3,130,875 | 2,832,933 |
| (1) | Fortune One Foods Inc. | - | 1,318,459 |
| (1) | N&F Logistic, Inc. | 1,206,106 | 1,273,190 |
| (6) | Collegepoint Distribution, LLC | - | 1,100,100 |
| (1) | Enson Trading LLC | 664,770 | 926,427 |
| (7) | New Day Top Trading Inc. | - | 761,020 |
| (8) | Eternal Food Service Inc. | 415,462 | 616,639 |
| (9) | Ocean Pacific Seafood Group | 687,225 | 524,722 |
| (1) | Allstate Trading Company Inc. | 43,212 | 327,821 |
| (1) | Eagle Food Service LLC | 270,368 | 149,714 |
| (10) | Han Feng Global Inc. d/b/a NSG International | 119,092 | 86,092 |
| (11) | Great Wall Seafood Florida Inc. | - | 23,542 |
| (1) | UGO USA INC. | 710,224 | 19,151 |
| (12) | iUnited Services | - | 4,500 |
| (13) | Revolution Industry, LLC | 2,122,240 | — |
| (14) | First Choice Seafood Inc. | 292,514 | — |
| | **TOTAL** | $31,676,828 | $32,221,005 |

(1) Please see footnotes in the table above for a description of the relationship between the Related Party and Mr. Zhou Min Ni.

(2) Mr. Zhou Min Ni owns a 40% equity interest in Golden Poultry, LLC.

80

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

(3) Mr. Zhou Min Ni is the legal representative in Fujian RongFeng Plastic Co., Ltd.

(4) Mr. Jian Ming Ni owns a 66.6% equity interest in NC Good Taste Noodle Inc.

(5) Mr. Zhou Min Ni owns a 100% equity interest in Fuzhou (Hanfeng) Information Tec.

(6) Mr. Zhou Min Ni owns a 33.3% equity interest in Collegepoint Distribution, LLC.

(7) Amanda Ni, the daughter of Mr. Zhou Min Ni, owns a 19% equity interest in New Day Top Trading Inc.

(8) Enson Trading LLC., one of HF Group's related parties owns a 100% equity interest in Eternal Food Service Inc. See note 9 above.

(9) Mr. Zhou Min Ni owns a 25% equity interest in Ocean Pacific Seafood Group.

(10) Mr. Zhou Min Ni owns a 30% equity interest in Han Feng Global Inc. d/b/a NSG International.

(11) Mr. Zhou Min Ni owns a 30% equity interest in Great Wall Seafood Florida Inc.

(12) Mr. Zhou Min Ni owns a 37% equity interest in iUnited Services.

(13) Raymond Ni, the son of Mr. Zhou Min Ni, owns 100% of Revolution Industry, LLC.

(14) First Choice Seafood Inc. is owned by Enson Seafood GA Inc., a related party of the Company

The Company periodically provides purchase advances to various suppliers, including suppliers that are the Related Parties. These advances are made in the ordinary course of business and are considered fully realizable. The balances for advances to suppliers that are Related Parties in connection with the purchase transactions described above amounted to $1,526,482 and $3,248,309 as of December 31, 2018 and 2017, respectively. Set forth below is a breakdown of advances to suppliers that are Related Parties:

| | Name of Related Party | December 31, 2018 | December 31, 2017 |
|---|---|---|---|
| (1) | Enson Seafood GA Inc. | $   — | $ 2,978,161 |
| (1) | Ocean Pacific Seafood Group | 208,960 | 145,888 |
| (2) | Han Feng Information Tech. Jinhua Inc. | — | 5,167 |
| (1) | Han Feng Global Inc. d/b/a NSG International | — | 119,093 |
| (1) | Revolution Industry LLC | 329,394 | — |
| (1) | First Choice Seafood Inc. | 988,128 | — |
| | **TOTAL** | $ 1,526,482 | $ 3,248,309 |

(1) Please see footnotes in the table above for a description of the relationship between the Related Party and Mr. Zhou Min Ni.

81

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

(2)   Mr. Zhou Min Ni owns 37% of this entity.

145.   The statements referenced in ¶¶ 143-44 above regarding HF Foods' related party transactions and its Code of Ethics were materially false and/or misleading for the reasons explained above, including in ¶¶ 106-08, 113-15, 121-23, 125-27, 131-34.

146.   Defendants' statements in the HF/B&R Preliminary Proxy regarding related party transactions of the HF Group and B&R, and the relationships between related parties, were also materially false and/or misleading because they misrepresented and failed to disclose that: (i) B&R was a related party; (ii) the ties between B&R and the Chinese based and connected investment funds that controlled it, including between Zhang and Yi Tuan Zhang, and between Yi Tuan Zhang and Rongcheng Trading LLC, a key operating subsidiary of B&R that is now a key operating subsidiary of HF Foods; and (iii) the merger appears to be a related party transaction rife with conflict of interest given those pre-existing connections. In fact, "HF and B&R were both under the umbrella of the same investment group" according to the Hindenburg Report, and as corroborated by Plaintiffs' investigation, as alleged further herein.

147.   On August 14, 2019, HF Foods filed its 2Q 2019 Report purporting to provide all related party transactions and that they complied with the Company's policy pertaining to related party transactions.

148.   In particular, it disclosed:

> The Company records transactions with various related parties. These related party transactions as of June 30, 2019 and December 31, 2018

82

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF<br>THE FEDERAL SECURITIES LAWS

and for the three and six months ended June 30, 2019 and, 2018 are identified as follows:

**Related party balances:**

**a. Accounts receivable - related parties, net**

Below is a summary of accounts receivable with related parties as of June 30, 2019 and December 31, 2018, respectively:

| Name of Related Party | As of June 30 2019 | As of December 31, 2018 |
|---|---|---|
| (a) Allstate Trading Company Inc. | $ 14,838 | $ 1,000 |
| (b) Enson Seafood GA Inc. (formerly "GA-GW Seafood, Inc.") | 257,787 | 255,412 |
| (c) Eagle Food Service LLC | 939,204 | 817,275 |
| (d) Fortune One Foods Inc. | 162,234 | 130,314 |
| (e) Eastern Fresh LLC | 636,013 | 784,836 |
| (f) Enson Trading LLC | 160,839 | 170,633 |
| (g) Hengfeng Food Service Inc. | 423,348 | 83,654 |
| (h) Enson Philadelphia Inc. | - | 49,027 |
| (i) N&F | 95,847 | - |
| Total | $ 2,690,110 | $ 2,292,151 |

(a)    *Mr. Zhou Min Ni, the Chairman and Chief Executive Officer of the Company, owns a 40% equity interest in this entity;*
(b)    *Mr. Zhou Min Ni owns a 50% equity interest in this entity.*
(c)    *Tina Ni, one of Mr. Zhou Min Ni's family members, owns a 50% equity interest in this entity.*
(d)    *Mr. Zhou Min Ni owns a 17.5% equity interest in this entity.*
(e)    *Mr. Zhou Min Ni owns a 30% equity interest in this entity.*
(f)    *Mr. Zhou Min Ni owns a 25% equity interest in this entity.*
(g)    *Mr. Zhou Min Ni owns a 45% equity interest in this entity.*
(f)    *Mr. Zhou Min Ni owns a 25% equity interest in this entity.*

149.   With respect to advances to suppliers, it disclosed:

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

The Company periodically provides purchase advances to various vendors, including the related party suppliers. These advances are made in the normal course of business and are considered fully realizable.

Below is a summary of advances to related party suppliers as of June 30, 2019 and December 31, 2018, respectively:

| Name of Related Party | As of June 30, 2019 | As of December 31, 2018 |
|---|---|---|
| (1) Ocean Pacific Seafood Group | $    196,802 | $    208,960 |
| (2) Revolution Industry LLC | 683,203 | 329,394 |
| (3) First Choice Seafood Inc. | 349,654 | 988,128 |
| **Total** | **$  1,229,659** | **$  1,526,482** |

*(1)  Mr. Zhou Min Ni owns a 25% equity interest in this entity.*
*(2)  The son of Mr. Zhou Min N, Raymond Ni, owns 100% of Revolution Industry LLC.*
*(3)  First Choice Seafood is owned by Enson Seafood GA Inc. of which Mr. Zhou Min Ni owns a 50% equity interest.*

150.   The 2Q 2019 Report also disclosed related party loans, including outstanding loans of over $8 million, $437,525 of which was attributable to Revolution Automotive.

151.   The 2Q 2019 Report also disclosed as follows with respect to related party purchase transactions:

The Company purchases from various related parties during the normal course of business. The total purchases made from related parties were $17,486,091 and $13,010,492 for the six months ended June 30, 2019 and 2018, respectively, and $8,553,875 and $5,875,732 for the three months ended June 30, 2019 and 2018, respectively.

152.   The statements referenced in ¶¶ 147-50 above were materially false and/or misleading for the reasons explained above in ¶¶ 106-08, 113-15, 121-23, 125-27, 131-34, 146.

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

153.   On October 1, 2019, HF Foods filed with the SEC the HF/B&R Definitive Proxy. Among other things, that Proxy included disclosures regarding related party transactions of the HF Group, conflicts of interest and the policies purportedly applicable thereto, that mirrored those in the Company's 2019 Proxy and the HF/B&R Preliminary Proxy. It also purported to disclose related party sales and purchase transactions, and "by footnote reference, a description of the relationship between each Related Party and Zhou Min Ni," for the six months ended June 30, 2019.

154.   With respect to HF Foods' related party sales transactions, the HF/B&R Definitive Proxy disclosed a total of $8,567,084 in related party sales transactions for the six months ended June 30, 2019, and provided the following breakdown:

| | | For the six months ended | For the years ended | |
| --- | --- | --- | --- | --- |
| | | June 30, 2019 | December 31, 2018 | December 31, 2017 |
| # | Name of Related Party | | | |
| (1) | Eagle Food Service LLC | $3,478,676 | $ 6,315,926 | $ 7,146,894 |
| (2) | Eastern Fresh LLC | 1,829,375 | 5,025,528 | 4,819,421 |
| (3) | N&F Logistic Inc. | 1,245,407 | 2,948,031 | 2,253,248 |
| (4) | Heng Feng Food Service Inc. | 847,353 | 1,769,125 | 1,940,294 |
| (5) | Allstate Trading Company Inc. | 16,167 | 17,959 | 617,495 |
| (6) | Fortune One Foods Inc. | 399,864 | 895,031 | 574,805 |
| (7) | Enson Trading LLC | 322,144 | 568,971 | 570,235 |
| (8) | Enson Seafood GA Inc. | 250,483 | 514,554 | 527,471 |
| (9) | UGO USA Inc. | 37,742 | 39,186 | |
| (10) | Enson Philadelphia Inc. | 117,595 | 49,027 | |
| (11) | Others | 22,277 | 3,665 | |
| | **TOTAL** | 8,567,084 | $18,147,003 | $18,449,864 |
| | | | 0 | -1 |

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

(1)   Tina Ni, the daughter of Mr. Zhou Min Ni, owns a 50% equity interest in Eagle Food Service LLC.
(2)   Mr. Zhou Min Ni owns a 30% equity interest in Eastern Fresh LLC.
(3)   Mr. Zhou Min Ni owns a 25% equity interest in N&F Logistic, Inc.
(4)   Mr. Zhou Min Ni owns a 45% equity interest in Hengfeng Food Service Inc.
(5)   Mr. Zhou Min Ni owns a 40% equity interest in Allstate Trading Company Inc.
(6)   N&F Logistic, Inc., one of HF Group's related parties owns a 70% equity interest in Fortune One Foods Inc. See note 3 above.
(7)   Mr. Zhou Min Ni owns a 25% equity interest in Enson Trading LLC.
(8)   Mr. Zhou Min Ni owns a 45% equity interest in Enson Seafood GA Inc.
(9)   Mr. Zhou Min Ni owns a 30% equity interest in UGO USA Inc.
(10)  Mr. Zhou Min Ni owns a 25% equity interest in Enson Philadelphia Inc.
(11)  Represents nominal sales to two additional Related Parties.

155.   With respect to HF Foods' related party purchase transactions, the HF/B&R Definitive Proxy disclosed over $18 million worth of such transactions for the six months ended June 30, 2019, and provided the following breakdown:

| # | Name of Related Party | For the six months ended June 30, 2019 | For the years ended December 31, 2018 | 2017 |
|---|---|---|---|---|
| (1) | Golden Poultry, LLC | $ 3,548,693 | $ 5,641,599 | $ 7,065,901 |
| (2) | Eastern Fresh LLC | 3,442,730 | 7,140,754 | 6,486,180 |
| (3) | Fujian RongFeng Plastic Co., Ltd. | 3,066,655 | 5,350,755 | 4,644,437 |
| (4) | NC Good Taste Noodle Inc. | 2,261,864 | 3,881,433 | 4,060,177 |
| (5) | Fuzhou (Hanfeng) Information Tec. | 1,651,944 | 3,130,875 | 2,832,933 |
| (6) | Fortune One Foods Inc. | 0 | - | 1,318,459 |
| (7) | N&F Logistic, Inc. | 785,968 | 1,206,106 | 1,273,190 |
| (8) | Collegepoint Distribution, LLC | 0 | - | 1,100,100 |
| (9) | Enson Seafood GA Inc | 102,895 | 664,770 | 926,427 |
| (10) | New Day Top Trading Inc. | 0 | - | 761,020 |
| (11) | Enson Trading LLC (Eternal Food Service Inc.) | 166,056 | 415,662 | 616,639 |

86

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

| | | | | |
|---|---|---|---|---|
| (12) | Ocean Pacific Seafood Group | 372,805 | 687,225 | 524,722 |
| (13) | Allstate Trading Company Inc. | 111,213 | 43,212 | 327,821 |
| (14 | Eagle Food Service LLC | 171,965 | 270,368 | 149,714 |
| (15) | Han Feng Global Inc. d/b/a NSG International | 0 | 119,092 | 86,092 |
| (16) | Great Wall Seafood Florida Inc. | 0 | - | 23,542 |
| (17) | UGO USA INC. | 348,523 | 710,224 | 19,151 |
| (18) | iUnited Services | 0 | - | 4,500 |
| (19) | Revolution Industry, LLC | 1,266,191 | 2,122,240 | — |
| (20) | First Choice Seafood Inc. | 951,454 | 292,514 | — |
| (21) | **TOTAL** | 18,248,957 | $31,676,828 | $32,221,005 |

(1)   Mr. Zhou Min Ni owns a 40% equity interest in Golden Poultry, LLC.

(2)   Mr. Zhou Min Ni owns a 30% equity interest in Eastern Fresh LLC.

(3)   Mr. Zhou Min Ni is the legal representative in Fujian RongFeng Plastic Co., Ltd.

(4)   Mr. Jian Ming Ni owns a 66.6% equity interest in NC Good Taste Noodle Inc.

(5)   Mr. Zhou Min Ni owns a 100% equity interest in Fuzhou (Hanfeng) Information Tec.

(6)   N&F Logistic, Inc., one of HF Group's related parties, owns a 70% equity interest in Fortune one Foods Inc.

(7)   Mr. Zhou Min Ni owns a 25% equity interest in N&F Logistic, Inc.

(8)   Mr. Zhou Min Ni owns a 33.3% equity interest in Collegepoint Distribution, LLC.

(9)   Mr. Zhou Min Ni owns a 45% equity interest in Enson Seafood GA, Inc.

(10)   Amanda Ni, the daughter of Mr. Zhou Min Ni, owns a 19% equity interest in New Day Top Trading Inc.

(11)   Mr. Zhou Min Ni owns a 25% equity interest in Enson Trading LLC.

(12)   Mr. Zhou Min Ni owns a 25% equity interest in Ocean Pacific Seafood Group.

(13)   Mr. Zhou Min Ni owns a 40% equity interest in Allstate Trading Company Inc.

(14)   Tina Ni, the daughter of Mr. Zhou Min Ni, owns a 50% equity interest in Eagle Food Service LLC.

(15)   Mr. Zhou Min Ni owns a 30% equity interest in Han Feng Global Inc. d/b/a NSG International.

(16)   Mr. Zhou Min Ni owns a 30% equity interest in Great Wall Seafood Florida Inc.

(17)   Mr. Zhou Min Ni owns a 30% equity interest in UGO USA Inc.

(18)   Mr. Zhou Min Ni owns a 37% equity interest in iUnited Services.

87

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

(19)  Raymond Ni, the son of Mr. Zhou Min Ni, owns 100% of Revolution Automotive, LLC.

(20)  Mr. Zhou Min Ni owns a 25% equity interest in First Choice Seafood Inc.

156.  The Company also disclosed over $1 million in purchase advances to related parties for the six months ended June 30, 2019, including $683,203 in advances to Revolution Industry, as well as over $8 million in outstanding loans to related parties as of June 30, 2019, including a loan of $437,525 to Revolution Automotive.

157.  Defendants' statements referenced in ¶¶ 153-56 above were materially false and/or misleading for the reasons explained above in ¶¶ 106-08, 113-15, 121-23, 125-27, 131-34, 142, 146.

158.  The HF/B&R Definitive Proxy also included disclosures regarding related party transactions of the HF Group and B&R, but it did not state that B&R was a related party or disclose the ties between B&R and its controlling Chinese investment group.

159.  Defendants' statements in the HF/B&R Preliminary Proxy regarding related party transactions and the relationships between related parties referenced in ¶¶ 153-56 above were materially false and/or misleading because they misrepresented and failed to disclose that: (i) B&R was a related party; (ii) the ties between B&R and the Chinese based and connected investment funds that controlled it, including between Zhang and Yi Tuan Zhang, and between Yi Tuan Zhang and Rongcheng Trading LLC, a key operating subsidiary of B&R that is now a key operating subsidiary of HF Foods; and (iii) the merger appears to be a related party transaction rife with conflict of interest given those pre-

88

existing connections. In fact, "HF and B&R were both under the umbrella of the same investment group" according to the Hindenburg Report, and as corroborated by Plaintiffs' investigation, as alleged further above.

160. On November 14, 2019, HF Foods filed with the SEC its 3Q 2019 Report, signed by Defendants Zhou Min Ni and Xu. Attached to the 3Q 2019 Report were certifications pursuant to SOX signed by Defendants Zhou Min Ni and Xu attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. The 3Q 2019 Report also purported to provide all related party transactions and that they complied with the Company's policy pertaining to related party transactions.

161. Among other things, it disclosed:

> The Company records transactions with various related parties. These related party transactions as of September 30, 2019 and December 31, 2018 and for the three and nine months ended September 30, 2019 and, 2018 are identified as follows:
>
> \*      \*      \*
>
> Below is a summary of accounts receivable with related parties as of September 30, 2019 and December 31, 2018, respectively:

| Name of Related Party | As of September 30 2019 | As of December 31, 2018 |
|---|---|---|
| (a) Allstate Trading Company Inc. | $       7,816 | $       1,000 |
| (b) Enson Seafood GA Inc. (formerly "GA-GW Seafood, Inc.") | 124,159 | 255,412 |
| (c) Eagle Food Service LLC | 1,227,643 | 817,275 |
| (d) Fortune One Foods Inc. | 155,173 | 130,314 |
| (e) Eastern Fresh LLC | 801,254 | 784,836 |

89

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

| | | |
|---|---:|---:|
| (f) Enson Trading LLC | 194,504 | 170,633 |
| (g) Hengfeng Food Service Inc. | 75,347 | 83,654 |
| (h) Enson Philadelphia Inc. | - | 49,027 |
| (i) N&F Logistic, Inc. | 91,757 | - |
| (j) Golden Poultry. | (150) | - |
| Total | $ 2,677,503 | $ 2,292,151 |

(a)   Mr. Zhou Min Ni, the Chairman and Chief Executive Officer of the Company, owns a 40% equity interest in this entity;

(b)   Mr. Zhou Min Ni owns a 50% equity interest in this entity.

(c)   Tina Ni, one of Mr. Zhou Min Ni's family members, owns a 50% equity interest in this entity.

(d)   Mr. Zhou Min Ni owns a 17.5% equity interest in this entity.

(e)   Mr. Zhou Min Ni owns a 30% equity interest in this entity.

(f)   Mr. Zhou Min Ni owns a 25% equity interest in this entity.

(g)   Mr. Zhou Min Ni owns a 45% equity interest in this entity.

(h)   Mr. Zhou Min Ni owns a 25% equity interest in this entity.

(i)   Mr. Zhou Min Ni owns a 25% equity interest in this entity.

(j)   Mr. Zhou Min Ni owns a 40% equity interest in this entity.

*   *   *

The Company periodically provides purchase advances to various vendors, including the related party suppliers. These advances are made in the normal course of business and are considered fully realizable.

Below is a summary of advances to related party suppliers as of September 30, 2019 and December 31, 2018, respectively:

| Name of Related Party | As of September 30, 2019 | As of December 31, 2018 |
|---|---:|---:|
| (1) Ocean Pacific Seafood Group | $ 224,979 | $ 208,960 |
| (2) Revolution Industry LLC | 765,160 | 329,394 |
| (3) First Choice Seafood Inc. | - | 988,128 |
| Total | $ 990,139 | $ 1,526,482 |

(1)   Mr. Zhou Min Ni owns a 25% equity interest in this entity.

(2)   The son of Mr. Zhou Min N, Raymond Ni, owns 100% of Revolution Industry LLC.

90

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

(3)   First Choice Seafood is owned by Enson Seafood GA Inc. of which Mr. Zhou Min Ni owns a 50% equity interest

162.   The 3Q 20129 Report also disclosed the following with respect to related party purchase transactions:

> The Company purchases from various related parties during the normal course of business. The total purchases made from related parties were $25,998,461 and $26,882,395 for the nine months ended September 30, 2019 and 2018, respectively, and $8,512,370 and $13,871,903 for the three months ended September 30, 2019 and 2018, respectively.

163.   The statements referenced in ¶¶ 160-62 above were materially false and/or misleading for the reasons explained above, including in ¶¶ 106-08, 113-15, 121-23, 125-27, 131-34, 146, 158-59.

164.   On March 16, 2020, HF Foods filed with the SEC its annual report for the period ended December 31, 2019 (the "2019 Annual Report"), signed by Defendants Zhou Min Ni and Zhang. Attached to the 2019 Annual Report were certifications pursuant to SOX signed by Defendants Zhou Min Ni and Zhang attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. The 2019 Annual Report purported to provide all related party transactions and that they complied with the Company's policy pertaining to related party transactions.

165.   For example, the 2019 Annual Report disclosed that "The Company records transactions with various related parties" before purporting to identify "[t]he related party transactions as of December 31, 2019 and 2018 and for the years ended December 31,

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

2019 and 2018….", including advances of over $500,000 to Revolution Industry, which is owned by Raymond Ni, the son of Defendants Chan Sin Wong and Zhou Min Ni. The 2019 Annual Report also provided the following breakdown of related party accounts receivables as of December 31, 2019:

| Name of Related Party | | As of December 31 2019 | As of December 31, 2018 |
|---|---|---|---|
| (a) | Allstate Trading Company Inc. | $    11,322 | $    1,000 |
| (b) | Enson Seafood GA Inc. (formerly "GA-GW Seafood, Inc.") | 348,833 | 255,412 |
| (c) | Eagle Food Service LLC | 979,591 | 817,275 |
| (d) | Fortune One Foods Inc. | 53,862 | 130,314 |
| (e) | Eastern Fresh LLC | 1,511,075 | 784,836 |
| (f) | Enson Trading LLC | 341,200 | 170,633 |
| (g) | Hengfeng Food Service Inc. | 477,541 | 83,654 |
| (h) | N&F Logistic, Inc. | 119,241 | - |
| (i) | ABC Trading, LLC | 238,513 | - |
| | Others | 121,692 | 49,027 |
| | Total | $4,202,870 | $2,292,151 |

(a)  Mr. Zhou Min Ni, the Chairman and Co-Chief Executive Officer of the Company, owns a 40% equity interest in this entity;

(b)  Mr. Zhou Min Ni owns a 50% equity interest in this entity.

(c)  Tina Ni, one of Mr. Zhou Min Ni's family members, owns a 50% equity interest in this entity.

(d)  Mr. Zhou Min Ni owns a 17.5% equity interest in this entity.

(e)  Mr. Zhou Min Ni owns a 30% equity interest in this entity.

(f)  Mr. Zhou Min Ni owns a 25% equity interest in this entity.

(g)  Mr. Zhou Min Ni owns a 45% equity interest in this entity.

(h)  Mr. Zhou Min Ni owns a 25% equity interest in this entity.

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

(i)  Mr. Peter Zhang, Co-Chief Executive Officer and Chief Financial Officer of the Company, owns 10.38% equity interest in this entity.

166.  The Company also disclosed with respect to related party sales and purchase transactions:

> The Company makes regular sales to and purchases from various related parties during the normal course of business. The total sales to related parties were $19,352,408 and $18,147,003 for the years ended 2019 and 2018, respectively. The total purchases made from related parties were $40,388,000 and $31,676,828 for the year ended December 31, 2019 and 2018, respectively.

167.  The statements referenced in ¶¶ 164-66 above were materially false and/or misleading for the reasons explained above, including in ¶¶ 106-08, 113-15, 121-23, 125-27, 131-34, 146, 158-59. More specifically, Defendants' statements were false or misleading because they misrepresented or failed to disclose that: (i) HF Foods engaged in undisclosed related party transactions; (ii) HF Foods insiders and related parties were enriching themselves by misusing shareholder funds; and (iii) HF Foods owned an undisclosed fleet of luxury cars worth over $1.5 million for the personal use of Zhou Min Ni, Chan Sin Wong, and their son, Raymond. As a result, Defendants' public statements were materially false and/or misleading at all relevant times.

168.  Defendants' statements in the 2019 Annual Report disclosing and describing the total sales and purchases to related parties was also materially false and misleading because it misrepresented or failed to disclose that, as the Company later confirmed in its 2020 Proxy dated April 29, 2020, that related party purchase transactions included (i) $4,607,652 attributable to NC Noodle, (ii) $2,822,561 attributable to Revolution Industry,

93

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

LLC, (iii) over $6 million attributable to Eastern Fresh LLC, and (iv) over $700,000 attributable to UGO USA Inc. The 2020 Annual Report's discussion of related party transactions was also materially false and misleading because it failed to disclose Zhou Min Ni's ownership interest in NC Noodle, which he purportedly disposed of on January 1, 2020, in violation of SEC Regulations, GAAP, and Company policy, as alleged further herein.

## C.   "Gaming" of the Russell Index

169.   The August 27, 2018 Form 8-K disclosed:

> At closing on August 22, 2018, Atlantic issued the HF Group stockholders an aggregate of 19,969,831 shares of its common stock, equal to approximately 88.5% of the aggregate issued and outstanding shares of Atlantic's common stock. The pre-Transaction stockholders of Atlantic own the remaining 11.5% of the issued and outstanding shares of common stock of the combined entities.
>
> *     *     *
>
> After giving effect to the Transactions, there are currently 22,558,492 shares of Atlantic's common stock issued and outstanding (without giving effect to the post closing cancellation of 390,000 shares held by an unaffiliated stockholder as described on page 4 of this Report on Form 8-K). Upon the Closing, Atlantic's rights and units ceased trading and Atlantic's common stock commenced trading on Thursday, August 23, 2018 on the Nasdaq Capital Market under the symbol "HFFG".

170.   The June 25, 2019 8-K stated the following regarding shares in connection with the B&R merger:

> Upon the closing of the transactions contemplated in the Merger Agreement, Merger Sub will merge with and into B&R, resulting in B&R becoming a wholly owned subsidiary of HF. The former shareholders of B&R will receive 30,700,000 shares of HF common stock as consideration for the merger.

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

171. The 2019 Annual Report reiterated the previously released information regarding the merger with B&R and noted the following regarding its shares: "As of March 13, 2020, the registrant had 52,145,096 shares of common stock issued and outstanding."

172. The statements referenced above in ¶¶ 169-171 were materially false and/or misleading because HF Foods was engaging in foul play to meet FTSE/Russell Index criteria, as the Hindenburg Report identified. In particular, the Report pointed out the error in HF Foods' free floating shares reflected on the FTSE/Russel indices, and maintained that the Company was likely manipulating the index rebalancing process through shares held by family or affiliates which serve to constrain the true free-float—exposing those shares to forced selling.

## VII. THE TRUTH BEGINS TO EMERGE BUT DEFENDANTS CONTINUE TO MISLEAD INVESTORS

### A. The Hindenburg Research Report Shocks the Market by Beginning to Reveal the Truth

173. On March 23, 2020, Hindenburg Research published a report explaining that HF Foods had, among other issues, failed to disclose: (i) transactions with related-parties; (ii) its flagrant misuse of shareholder funds; and (iii) its gaming of the FTSE/Russell Index criteria.

174. The Report uncovered that "[t]he company's trucking subsidiary, ostensibly set up to transport food products" owned an undisclosed fleet of exotic luxury cars that were not for business purposes, but were for personal use, including by Raymond Ni, son of Defendants Chan Sin Wong and Zhou Min Ni:

95

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

We discovered that the company's trucking subsidiary, ostensibly set up to transport food products, *appears to have also used shareholder cash to purchase an undisclosed fleet of exotic supercars including Ferraris, Porsches, and a Bentley. We found photos of the Chairman's teenage son bragging on Instagram about them being his vehicles.*

\*     \*     \*

**Undisclosed Insider Enrichment: An HF Subsidiary Owns a Fleet of Ferraris and Exotic Luxury Supercars, Paid for By Shareholders.**

**The CEO's Son Bragged About Them Being His Cars on Instagram**

In another series of highly irregular transactions, we examined the assets of Truse Trucking, a company subsidiary[.] [Image omitted.]

\*     \*     \*

In addition to the fleet of trucks, however, our background check showed that Truse owns an undisclosed fleet of exotic luxury supercars, including Ferraris, a Bentley, a Porsche, and other high-end vehicles . . .

These, we presume, are not used to deliver raw and refrigerated food products to the company's customers.

For example, a 2013 Bentley Continental, with an MSRP of $193,000, the license plate "99Pr0BZ" and previous license plate "BENTOVER", is titled and registered to Truse.

We could think of no business justification for just about any public company purchasing Ferraris or Bentleys with shareholder money. *The HF Chairman/CEO's son puts these vehicles to apparent personal use, bragging openly about his "stable" of cars on his public Instagram [] account* (we expect he'll soon discover privacy settings). [Image omitted.]
A **Ferrari, with an MSRP of $319,995** and the license plate "WANTMY" is also registered to Truse Trucking, according to our background check. [Image omitted.]

We matched this Ferrari and the "WANTMY" license plate to the Chairman/CEO's son's Instagram account[.] [Image omitted.]

96

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

*In total, we found 8 luxury supercars valued at a ~$1.5 million MSRP registered to and owned by Truse Trucking[.]* [Image omitted.]

*Nowhere do we see any of these cars disclosed as compensation. The Chairman/CEO's executive salary supposedly consisted of $400,000 in cash[.]*

175. The Report noted the following, in pertinent part, regarding HF Foods' undisclosed related party transactions, particularly its merger with B&R:

*HF's massive $509 million merger with food distributor B&R appears to be a blatant undisclosed related-party transaction.* The company claimed that the deal was negotiated at "arm's length", but we found multiple documents showing that both HF and B&R were part of the same Chinese investment group for years prior to the acquisition.

\*        \*        \*

We found that the massive $509 million merger with B&R appears to be an undisclosed related-party transaction.

\*        \*        \*

**HF Foods' Massive $509 Million Merger with B&R Appears To Be Just One of Dozens of Suspicious Related-Party Transactions**

Our review of HF Foods uncovered a staggering number of related-party transactions, both disclosed and undisclosed, that we believe are suspicious.

\*        \*        \*

*We believe insiders are using these dozens of related-party transactions to suck cash out of the business, eventually leaving shareholders with a hollow, debt-laden company.*

**Undisclosed Related-Party Transactions: HF Group Had Clear Ties to B&R Before Consummating its $509 Million "Arm's-Length" Deal, Yet None of It Was Disclosed to Shareholders**

97

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

In June 2019, HF Foods announced [] it would be merging with B&R Global Holdings, a West Coast food distribution company. The merger [] was a 2-part transaction valued at a massive $509 million.

It included HF Foods issuing 30.7 million shares to former B&R shareholders, more than doubling the company's outstanding share count and adding [] ~$101 million in debt to the balance sheet.

According to deal documents, the acquisition process started when HF's CEO phoned B&R's CEO in October 2018. [] T*he deal documents describe the transaction as being negotiated "at arm's-length".* []

Contrary to those representations, we found longstanding formal ties between HF Foods and B&R:

•      *HF and B&R were both under the umbrella of the same investment group, the American International Rongjin Investment Group,[] according to an announcement [] by the Chinese Ministry of Commerce in 2012.*[]

•      In 2012, an affiliate of the above-named entity also affirmed [] that HF and B&R are part of the same investment holding group.

•      *A May 2018 interview [] with the President of Fujian Rongjin Group [], Zhang Yi Tuan (张贻团) also affirmed the relationship.* According to the interview, the American International Rongjin Investment Group's distribution business operates in the U.S. and includes both HF and B&R. According to the interview, the group uses B&R as its official American headquarters and works with HF Foods and others to jointly distribute food in the U.S.

Instead of being "at arm's length", these entities look to have been closely affiliated through the same investment group for at least 8 years, which we believe clearly makes them related-parties.

*These intricate pre-existing connections represent a major conflict of interest, yet none of this was disclosed to investors prior to, or after, the merger.*

[Emphases added.]

98

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

176.  The Report also revealed the following, in pertinent part, regarding HF Foods' misconduct tied to disclosed related party transactions and misuse of shareholder funds, which caused a collapse in the Company's wholesale margins after it began trading on August 23, 2018:

> HF has transacted with at least 43 separate related-party entities in 2019 alone. ***Several are based out of the company's own headquarters and appear to have no operations.*** We visited others across the country and found red flags suggesting that these related parties are being used by insiders to extract cash from the business.
>
> *      *      *
>
> ***HF also directed over $2 million of shareholder cash to business entities owned by the Chairman's teenage son, including one that bought another fleet of 7 Ferraris*** . . .
>
> *      *      *
>
> In addition to undisclosed related-party transactions, the company has also ***conducted dozens of irregular disclosed related-party transactions***.
> In total, the company transacted with 43 related-party entities in 2019 alone. [] In 2019, HF Foods reported over $40 million in purchases and $19.3 million in sales to related-party entities. []
>
> ***Our investigation uncovers related entities with (a) minimal or no online presence, (b) no signage or apparent operations at their respective registered addresses and (c) entities held out as separate companies to investors that appear to actually be operating as part of HF.***
>
> ***We believe insiders are using these dozens of related-party transactions to suck cash out of the business***, eventually leaving shareholders with a hollow, debt-laden company.
>
> *      *      *

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

**HF's Disclosed Related-Party Transactions: Wholesale Margins to These Entities Collapsed Immediately After the IPO. Cash Seems to Be Slipping Out the Back Door**

*HF reported a ~33% collapse in its wholesale gross margins in the quarter after it went public*, by related-parties that presumably benefitted from the margin compression. [Image omitted.]

*The company acknowledges that the margin decline was due to related-party sales*, but tried to explain it away by citing volume discounts[.] [Internal quotation omitted.]

This explanation is puzzling. Sales only grew ~3% year over year for the comparable 2019/2018 9-month period, so there was no surge in volume. *Furthermore, the company disclosed that related parties constituted 92% of wholesale segment sales in 2017[], making it impossible for related business to have meaningfully increased. []*

Our investigation of these related-party entities uncovers a different explanation for why the company's sudden wholesale margins have collapsed: **insiders appear to be looting the place**.

177.  In connection with addressing related party misconduct tied to disclosed related party transactions and misuse of shareholder funds, which caused a collapse in the Company's wholesale margins after it began trading on August 23, 2018, the report focused on transactions attributable to Revolution Industry, explaining in pertinent part:

**$4 Million Of Shareholder Cash Was Used for Purchases and Advances to Revolution Industry, An Entity Based Out of HF Foods' Headquarters, Owned 100% By The Chairman/CEO's Son, That Was Formed 1 Month Prior to the IPO Deal, With No Visible Signs of an Actual Business**

HF Foods discloses transacting ~$3.3 million in purchases from, and directing over $700 thousand in advances to Revolution Industry. [] Revolution Industry is 100% owned by the Chairman/CEO's son and claims to do business in "food processing" and "distribution" according to its North Carolina corporate [] filings.

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

*We find it suspicious that HF Foods directed ~$4 million in business to the Chairman's son, who was likely a senior in high school at the time*, according to social media posts.

\*   \*   \*

**We found no signs that Revolution Industry is an actual business—no website, no social media profile, and no evidence of it having customers.**

Even more suspicious, North Carolina corporate records [] show that **the entity is registered to the same address as** [] **HF Foods' headquarters**: 6001 West Market Street, Greensboro North Carolina[.]

\*   \*   \*

What kind of food could HF be distributing to an entity based out of its own address? We think the only thing being distributed is money to insiders.

178.   In connection with addressing related party misconduct tied to disclosed related party transactions and misuse of shareholder funds, the report also focused on sizable loans to Revolution Automotive, explaining in pertinent part:

**$483,000 in Loans to Revolution Automotive, Another Related-Party Entity Owned 100% by the Chairman/CEO's Son to Buy Yet More Ferraris**

HF Foods also extended $483,000 in loans to the similarly named "Revolution Automotive" (not to be confused with the above-mentioned "Revolution Industries"). These loans were distributed around the time of the March 2018 take-public deal announcement. []

***Revolution Automotive is also 100% owned by the Chairman/CEO's son, according to HF Foods' filings [], and is also registered to the address of HF Foods' headquarters, according to the North Carolina Secretary of State []. Once again, we couldn't find any business operations by "Revolution Automotive".*** [Image omitted.]

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

The only discernible assets held by Revolution Automotive are titles to 9 Ferraris, according to our background check[.]

\*       \*       \*

As to the loan balance owed to shareholders, the Chairman/CEO recently paid it off personally with shares of illiquid HF stock. [] This, in our view, allowed him to draw cash out of the business in exchange for nearly worthless paper.

179.   The Report also investigated transactions attributable to UGO USA Inc., Eastern Fresh, and Fortune One, explaining in pertinent part:

**Over $1 Million Of Shareholder Cash Has Gone to UGO USA Inc., Another Related-Party Entity Registered to HF Foods' Headquarters with Few Signs of Operations**

HF Foods has made almost $1 million of purchases over the past 2 years from UGO USA, Inc, another related-party entity based out of HF's headquarters. According to company filings, HF's Chairman/CEO owns a 30% equity interest in UGO.

We found little evidence that UGO is an actual operating business, though it appears it had taken steps to become one in the past. In 2016, the entity filed a trademark application [] for "on-line retail store services featuring Asian snacks, Asian beauty products, Asian health supplements, Asian home appliances, and Asian restaurant supplies." We were unable to locate any online store or online presence.

**$11.6+ Million of Shareholder Cash Went to Eastern Fresh, An Entity HF Foods Claims is a Separate Business. Signage at the Facility Has HF's Logo, Indicating Otherwise**

Since 2017, HF has directed $11.6 million into Eastern Fresh LLC, a company that HF's Chairman/CEO owns a 30% equity interest in. [] Eastern Fresh appears to be registered as "Eastern Fresh NJ LLC []", a distributor based in New Jersey.

102

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Despite HF filings claiming that Eastern Fresh is not a subsidiary (but rather a separate related-party), its signage appears to bear the logo of HF's customer-facing subsidiary [], Han Feng, Inc.

\*    \*    \*

Again, HF appears to be presenting a unified face to customers, while separating these entities from investors. This is consistent with what we would expect if these entities are being used to funnel out shareholder cash.

**$1.8 Million in Shareholder Cash Went to Related-Party Fortune One Foods. Once Again, HF Foods' Filings Describe it as a Separate Entity. But Fortune One Describes Itself as Being a Part of HF Foods**

HF's Chairman/CEO indirectly owns a 17.5% equity interest in Fortune One Foods Inc. [] HF has made about $1.8 million in purchases from the entity, according to company filings. [] Although filings claim that Fortune One is not an HF subsidiary, but instead a separate related-party entity, Fortune One appears to brand itself as if it were part of HF.

\*    \*    \*

We also called the number listed on its Facebook page [] and asked a representative point blank if it was an independent business or if it was part of Han Feng. His reply (which we have recorded) was: "Yeah we are a part of Han Feng." . . .

All told, we find it alarming that Fortune One describes itself as being a part of HF Foods, whereas HF Foods does not include it as a subsidiary []. Instead, it reports it as a separate related-party entity, allowing insiders to personally profit from transactions with it.

180. The Report also investigated transactions attributable to NC Noodle, explaining in pertinent part:

**NC Noodle, A Related-Party Owned By HF's Previous CFO, Made ~$4.2 Million In Sales To HF, But Our On-The-Ground Research Showed Its Premises To Be Largely Vacant**

103

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF<br>THE FEDERAL SECURITIES LAWS

HF states that the company's recently departed CFO owns a 66% equity interest in NC Noodle. [] Based on HF's disclosures, we estimate that NC Noodle sold ~$4.2 million to HF in 2019 alone, yet we found no customer-facing business presence online.

We paid a visit to the company's principal business address … during normal working hours to try and speak with management and get an understanding of the business. Given the volume of product sold to HF during the year, we expected a sprawling operation.

Instead, we discovered what our investigator described as a "completely vacant" building except for 3 employees handling a pallet of product in an otherwise empty-looking back warehouse (see below):



(Source: Hindenburg Research onsite visit)



(Source: Hindenburg Research onsite visit)

*      *      *

104

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

We suspect this is little more than an insider-owned entity that sells product to nearby HF. We have serious doubts about whether this "middle man" provides value to anyone but HF insiders.

181. The Report also addressed a suspicious and seemingly self-serving transaction in which Defendant Zhou Min Ni unloaded a substantial portion of his HF Shares by purchasing millions of dollars' worth of loans made by HF to related parties and paying them off with his own illiquid stock, at an inflated value. It explained:

**HF's Chairman Has Effectively Sold Almost 10% Of His Shares by Purchasing ~$12 Million in Loans Made by HF And Paying Them Back With His Own Illiquid Stock**

In another series of incestuous and alarming related-party transactions, HF's Chairman/CEO bought cash loans issued by HF to related and nonrelated parties and **paid these loans back using shares of his illiquid HF stock**.

The Chairman/CEO's transactions include purchasing loans originated by HF Foods to his son's "business", Revolution Automotive, along with other related parties.

[Emphases added.]

182. The Report noted the following, in pertinent part, regarding HF Foods' gaming of the FTSE/Russell Index criteria:

The B&R merger more than doubled HF's share count. However, FTSE/Russell mistakenly included almost all of these shares as part of the company's free float, which sent HFFG's price and volume soaring on Friday's index rebalancing. We think this mistake may be reversed.

*We believe HF and its insiders are masking the true number of shares held by its affiliates.* Once made clear to FTSE/Russell, we expect the recent forced index buying in HF will reverse and become forced selling.

105

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

*     *     *

FTSE/Russell had calculated HFFG's free float to be 21.8 million shares (per its subscription-only service). **This calculation was just flat out wrong**. The freely tradable shares were **6.2 million** per HF's own recent March filing. []

The source of the mistake appears to have been the accidental addition of shares from the B&R transaction, which closed in November []. As with every such merger, shares issued to the acquirees are restricted for at least 6 months, according to SEC Rule 144 []. FTSE/Russell apparently missed this and added the shares to its free float calculation anyway. We think FTSE/Russell should reverse this decision, which would lead to a forced selling of the shares purchased.

Beyond the above, which appears to largely be a FTSE/Russell error, sometimes ***companies are able to juke the index rebalancing process to ensure that the actual free float [] is tighter than it appears. We think this may also be taking place.***

For example, as shown earlier, ***to the extent that shares are held by family members or affiliates (potentially through dozens of related-party entities), this can serve to constrain the true free float. Given the sheer consistency of the index rebalancing irregularities around HF (and Wins, backed by the same sponsor), we believe this to be likely.*** To the extent Russell takes action, forced sales by passive investors could add severe selling pressure to HF's shares.

[Emphases added.]

183.   On this news, HF Foods' stock price fell $2.52 per share, or over 20%, to close at $9.80 per share on March 23, 2020, damaging investors.

**B.     Defendants Issue False and Misleading Statements in the Wake of the Hindenburg Report**

184.   Days after the Report was issued and the Company suffered a precipitous decline in its share price as a result, the Company, and Defendants Zhou Min Ni and Zhang

106

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

issued a statement downplaying and dismissing the Report. On March 25, under the headline "A Statement from Our Co-Chief Executive Officers," Defendants disclosed:

> The Company is aware of derogatory assertions made by a self-described short seller of our stock. ***Those comments should not be relied upon by anyone interested in our Company. Our published financial statements and other public disclosures fairly present, in all material respects, the financial condition and results of operations of the Company, as well as our Company subsidiaries, our dealings with related parties, and the compensation of the Company's executive officers.***
>
> [Emphasis added.]

185.   On that same day, HF Foods filed with the SEC a Form 8-K signed by Zhou Min Ni and Zhang containing the same statement.

186.   The statements in the Company's March 25 press release and Form 8-K identified in the preceding two paragraphs were materially false and misleading for the reasons explained above in Section VI, including in ¶¶ 71, 74, 76,79-80, 82, 106-08, 113-15, 121-23, 125-27, 131-34, 146, 158-59.

187.   Further, they were materially false and misleading because the created the misimpression that the "derogatory assertions" made in the Report had been investigated and debunked by the Company. However, the Company's subsequent disclosure on November 9, 2020 confirmed that was not the case, as it disclosed for the first time that the Company has launched an investigation that remains ongoing and has not resulted in any findings to that point. This confirms that Defendants' March 25, 2020 statements were made without a reasonable basis and without having even embarked on an independent investigation into the claims in the Report.

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

188. Additionally, the statement instructing the public to not rely upon the statements in the Hindenburg report was materially false and misleading because it created the misimpression that such claims were completely false and unreliable, and manufactured by a short seller for its own profit, when many key aspects have been corroborated and the claims were sufficiently reliable to prompt the SEC to launch an investigation into the Company that it subsequently disclosed in November 2020, as alleged herein.

189. On April 29, 2020, Foods filed with the SEC its definitive Proxy Statement for its 2020 Annual Meeting of Stockholders ("2020 Proxy"). The 2020 Proxy opened with a letter signed by Defendant Zhou Min Ni and was furnished to the Company's stockholders in connection with the solicitation by its Board of Directors for proxies for its 2020 Annual Meeting. It contained disclosures regarding related party transactions and relationships, executive compensation, and company assets materially similar to those in the 2019 Proxy that are set forth above and are materially false and misleading for the reasons alleged above.

190. For instance, the Company disclosed that the total purchases made from related parties was $40,388,000 for the year ended December 31, 2019, including nearly $3 million in purchases from Revolution Industry. It further disclosed:

> Set forth below is a breakdown of purchases from Related Parties and by footnote reference, a description of the relationship between each Related Party and Zhou Min Ni:

108

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

|  # | Name of Related Party | For The Years Ended December 31, 2019 | 2018 |
|---|---|---|---|
| (1) | Golden Poultry, LLC | $ 9,003,455 | $ 5,641,599 |
| (2) | Eastern Fresh LLC | 6,678,704 | 7,140,754 |
| (3) | Fujian RongFeng Plastic Co., Ltd. | 6,207,379 | 5,350,755 |
| (4) | NC Good Taste Noodle Inc. | 4,607,652 | 3,881,433 |
| (5) | Fuzhou (Hanfeng ) Information Tec. | 3,032,984 | 3,130,875 |
| (6) | Revolution Industry, LLC | 2,822,561 | 2,122,240 |
| (7) | Best Food Service LLC | 2,136,389 | - |
| (8) | First Choice Seafood Inc | 2,092,599 | 292,514 |
| (9) | N&F Logistic, Inc. | 1,428,294 | 1,206,105 |
| (10) | UGO USA INC. | 724,486 | 710,224 |
| (11) | Ocean Pacific Seafood Group | 598,286 | 687,225 |
| (12) | PT. Tamron Akuatik Produk Industri | 344,177 | - |
| (13) | Eagle Food Service LLC | 232,566 | 270,368 |
| (14) | Enson Seafood GA Inc. (formerly "GA-GW Seafood, Inc.") | 181,984 | 664,770 |
| (15) | Enson Trading LLC | 174,711 | 415,662 |
| (16) | Allstate Trading Company Inc. | 111,213 | 43,212 |
| (17) | Asahi Food, Inc. | 10,560 | - |
| (18) | NSG International Inc. | - | 119,092 |
|  | **TOTAL** | $40,388,000 | $31,676,828 |

(1)   Mr. Zhou Min Ni owns a 40% equity interest in Golden Poultry, LLC. In late 2019, Golden Poultry, LLC transferred its business to Union Food, LLC, which is 30% owned by Tina Ni, the daughter of Mr. Zhou Min Ni and 10% owned by Anthony Zhang, the son of Peter Zhang.

(2)   Mr. Zhou Min Ni owns a 30% equity interest in Eastern Fresh LLC.

(3)   Mr. Zhou Min Ni owns a 40% equity interest in Fujian RongFeng Plastic Co., Ltd.

(4)   Mr. Jian Ming Ni owns a 66.6% equity interest in NC Good Taste Noodle Inc.

(5)   Mr. Zhou Min Ni owns a 100% equity interest in Fuzhou (Hanfeng) Information Tec.

(6)   Raymond Ni, the son of Mr. Zhou Min Ni, owns 100% of Revolution Industry, LLC.

(7)   Mr. Peter Zhang owns 10.38% equity interest in this entity.

(8)   Mr. Zhou Min Ni owns a 25% equity interest in First Choice Seafood Inc.

(9)   Mr. Zhou Min Ni owns a 25% equity interest in N&F Logistic, Inc.

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

*(10)* Mr. Zhou Min Ni owns a 30% equity interest in UGO USA Inc.

*(11)* Mr. Zhou Min Ni owns a 25% equity interest in Ocean Pacific Seafood Group.

*(12)* The Company has 12% investment in this entity.

*(13)* Tina Ni, the daughter of Mr. Zhou Min Ni, owns a 50% equity interest in Eagle Food Service LLC.

*(14)* Mr. Zhou Min Ni owns a 50% equity interest in Enson Seafood GA, Inc.

*(15)* Mr. Zhou Min Ni owns a 25% equity interest in Enson Trading LLC.

*(16)* Mr. Zhou Min Ni owns a 40% equity interest in Allstate Trading Company Inc.

*(17)* The Company has 49% investment in this entity.

*(18)* Mr. Zhou Min Ni owns a 30% equity interest in Han Feng Global Inc. d/b/a NSG International.

The Company periodically provides purchase advances to various suppliers, including suppliers that are the Related Parties. These advances are made in the ordinary course of business and are considered fully realizable. The balances for advances to suppliers that are Related Parties in connection with the purchase transactions described above amounted to $745,135 and $1,526,482 as of December 31, 2019 and 2018, respectively. Set forth below is a breakdown of advances to suppliers that are Related Parties:

| Name of Related Party | As of December 31, 2019 | As of December 31, 2018 |
|---|---|---|
| (1)  Ocean Pacific Seafood Group | $    223,303 | $    208,960 |
| (2)  Revolution Industry, LLC | 521,832 | 329,394 |
| (3)  First Choice Seafood Inc. | - | 988,128 |
| **TOTAL** | $    745,135 | $  1,526,482 |

(1) Mr. Zhou Min Ni owns a 25% equity interest in this entity.

(2) The son of Mr. Zhou Min N, Raymond Ni, owns 100% of Revolution Industry, LLC.

(3) First Choice Seafood is owned by Enson Seafood GA Inc., of which Mr. Zhou Min Ni owns a 50% equity interest.

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

191. It also disclosed that Zhou Min Ni received a total of $400,000 in compensation for the fiscal year ended December 2019, and Chan Sin Wong received a total of $400,000 in compensation for that fiscal year. It also provided a narrative disclosure addressing executive compensation and Zhou Min Ni's employment agreement that mirrored the prior narrative discussions in the Company's prior SEC filings, including in the 2019 Proxy and HF/B&R Definitive Proxy. For example, the narrative disclosed again that "[c]ompensation for our executives is comprised of solely of base salary."

192. The statements in the Company's 2020 Proxy regarding related party transactions and relationships, executive compensation, and company assets referenced in ¶¶ 189-90 above were materially false and misleading for the reasons explained above in Section VI (including in ¶¶ 71, 74, 76,79-80, 82, 106-08, 113-15, 121-23, 125-27, 131-34, 146, 158-59), particularly in connection with the 2019 Proxy, HF/B&R Definitive Proxy, and 2019 Annual Report. For instance, the statements in the 2020 Proxy purporting to describe the relationship between Zhou Min Ni and related parties, including with NC Noodle, and the related party purchases from NC Noodle,[20] were materially false and misleading for the reasons alleged above, including because they misrepresented and

---

[20] Such statements include the following disclosure pertaining to related party purchase transactions: (i) "Set forth below is a breakdown of purchases from Related Parties and by footnote reference, a description of the relationship between each Related Party and Zhou Min Ni"; and (ii) with respect to the related party NC Noodle, the Company disclosed related party purchase transactions of $ 4,607,652 for the year ended December 31, 2019, and the accompanying footnote reference disclosed that "Jian Ming Ni owns a 66.6% equity interest in NC Good Taste Noodle Inc."

111

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

failed to disclose that Zhou Min Ni owned a then-undisclosed equity interest NC Noodle. As alleged above, SEC Regulations and GAAP mandated disclosure of that relationship in the 2020 Proxy and the Company's other Class Period SEC filings. As the Company belatedly revealed in its 3Q 2020 Form 10-Q, Zhou Min Ni "previously owned 37.34% equity in this entity as of 12/31/2019" and "Mr. Ni's equity interest was disposed of on 1/1/2020."

193. The Defendants' statements in the 2020 Proxy set forth above were also materially false and misleading because they failed to disclose, in violation of SEC Regulations and GAAP that: (i) B&R was a related party; (ii) the ties between B&R and the Chinese based and connected investment funds that controlled it, including between Zhang and Yi Tuan Zhang, and between Yi Tuan Zhang and Rongcheng Trading LLC, a key operating subsidiary of B&R; and (iii) the merger appears to be a related party transaction rife with conflict of interest given those pre-existing connections. In fact, "HF and B&R were both under the umbrella of the same investment group" according to the Hindenburg Report, and as corroborated by Plaintiffs' investigation, as alleged further above.

## VIII. THE TRUTH CONTINUES TO EMERGE

194. On November 9, 2020, after the market closed, the Company filed with the SEC its quarterly report for the third quarter ended September 30, 2020 on Form 10-Q (the "3Q20 10-Q"). The 3Q20 10-Q disclosed for the first time that the Company was under

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

SEC investigation relating to the claims in the Hindenburg Report, as well as in this and other related lawsuits. It also disclosed that the Company had launched an internal investigation into those matters. More specifically, it disclosed:

> The United States Securities and Exchange Commission ("SEC") has initiated a formal, non-public investigation of the Company, and the SEC issued a request for a variety of documents and other information. The document request relates to a range of matters including, but not limited to, the matters identified in the Ponce-Sanchez Lawsuit and the Mendoza Derivative Lawsuit. We are cooperating with the SEC in its investigation. Prior to receiving the document request from the SEC, the Company's board of directors appointed a special committee of independent directors to investigate the matters identified in the Ponce-Sanchez Lawsuit and the Mendoza Derivative Lawsuit.
>
> ***The SEC and independent committee investigations are in process and no conclusions have been reached***.

195.   The Company also disclosed for what appears to be the first time that Zhou Min Ni had an ownership interest in a related party with which HF Foods had transacted millions of dollars in business with, NC Noodle, until disposing of that interest effective January 1, 2020.

196.   In response to this news, the Company's stock price declined by about $0.77 per share, closing at about $7.19 per share on November 10, on heavy trading volume. The Company's stock price also continued to decline the following day, falling an additional $0.8 to close at $7.1 per share on November 11, 2020.

## IX.   ADDITIONAL SCIENTER ALLEGATIONS

197.   Defendants' scienter is evidenced by the facts alleged above.

198.   The existence of the SEC's investigation in the wake of the Hindenburg Report, which the Company disclosed on November 9, 2020, provides evidence of

113

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

scienter.

199.  In addition to the many scienter facts alleged above, the fraud alleged herein relates to the Company's CEO and co-founder and the core business of the Company, so knowledge of the fraud may be imputed to each of the Individual Defendants. Given the Individual Defendants' knowledge or conscious disregard of related party transaction misconduct, of luxury vehicles owned by the Company being used for personal purposes, and the ties between HF, B&R and their controlling Chinese investment group, the positive statements detailed above, made contemporaneously with that knowledge, were materially false and/or misleading.

200.  Given the Defendants ties to the undisclosed fleet of luxury vehicles and related parties, and that they were the beneficiaries of the related party transactions, they would have known or recklessly disregarded the true nature of the transactions and relationships with them.

201.  For instance, Zhou Min Ni is disclosed as owning significant equity in numerous of the related parties with which HF Foods transacted, as alleged above, including 30% of UGO USA, Inc., over 30% of NC Noodle, and 30% of Eastern Fresh. Additionally, Zhou Min Ni was disclosed as owning a 51% equity interest in Revolution Industry as of July 2018.[21] Indeed, Zhou Min Ni's interest in NC Noodle was concealed

_____

[21] The Company subsequently disclosed that Revolution Industry was 100% owned by Zhou Min Ni's son, Raymond Ni. *See e.g.*, 2018 Annual Report, at 61 ("The son of Mr. Zhou Min N, Raymond Ni owns 100% of Revolution Industry LLC.").

114

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

until the Company revealed in its 3Q 2020 Form 10-Q, that Zhou Min Ni "previously owned 37.34% equity in this entity as of 12/31/2019" and "Mr. Ni's equity interest was disposed of on 1/1/2020." The failure to timely disclose Zhou Min Ni's ownership interest in NC Noodle not only violated SEC Regulations and GAAP, and company policy, and rendered the relevant challenged misstatements false or misleading, but also allowed Zhou Min Ni to secretly line his pockets with even more of the Company's funds.

202. Defendants knew of or recklessly disregarded the Company's undisclosed fleet of luxury vehicles through their status as co-owners/co-registrants, use of certain vehicles, and relationships to Truse Trucking, as well as Raymond Ni's public display of such vehicles.

203. As co-owners and co-registrants of the luxury cars with Truse Trucking, and executives involved in the Company's day-to-day affairs, Defendants Zhou Min Ni, Chan Sin Wong, and Jonathan Ni would have known or recklessly disregarded that the luxury vehicles owned by Truse and used by them and Raymond Ni were for personal, non-business use. Zhou Min Ni, as president of Truse Trucking who certified Truse Trucking's annual reports filed with the North Carolina Secretary of state prior to and throughout the Class Period, was aware of, or recklessly disregarded, the luxury vehicles owned by Truse Trucking, especially those that were co-owned by and co-registered to him. Chan Sin Wong and Jonathan Ni, as executives who also certified Truse Trucking's annual reports filed with the North Carolina Secretary of State, would have also been aware of, or

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

recklessly disregarded, the luxury vehicles owned by Truse Trucking, especially those that were co-owned by and co-registered to them during the Class Period.

204. Likewise, Zhang knew or recklessly disregarded of his and B&R's relationship with Yi Tuan Zhang, who headed the investment group of which Rongcheng Trading/B&R was a part, was listed as the initial agent for service of process for key B&R subsidiary Rongcheng Trading, LLC, and seemingly referred to Rongcheng Trading/B&R, as part of the family business.

205. Defendants' scienter can also be inferred from the fact that the Company lacked adequate internal preventative controls throughout the Class Period. As the Company disclosed in its 2018 Annual Report:

> ***Our management has concluded that (i) our internal controls over financial reporting were not effective as of December 31, 2018, (ii) there existed a material weaknesses in our internal control over financial reporting as of December 31, 2018, and (iii) our disclosure controls and procedures were not effective as of December 31, 2018.***
>
> \* \* \*
>
> Under the supervision and with the participation of our management, including our principal executive officer and principal financial and accounting officer, we conducted an evaluation of the effectiveness of our disclosure controls and procedures, as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act, as of the end of the fiscal year ended December 31, 2018. ***Based on this evaluation, our principal executive officer and principal financial and accounting officer have concluded that as a result of the material weakness in our internal control over financial reporting as described below, our disclosure controls and procedures were not effective as of December 31, 2018.***
>
> \* \* \*
>
> As of December 31, 2018, our management assessed the effectiveness of our internal control over financial reporting based on the criteria for effective internal control over financial reporting established in *Internal Control - Integrated Framework*, issued by the Committee of Sponsoring Organizations of the Treadway Commission in 2013. ***In connection with this review and the audit of our consolidated financial***

116

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

*statements for the year ended December 31, 2018, we identified material weakness and control deficiencies in our internal control over financial reporting. The material weakness related to the deficiency in the ability of our in-house accounting professionals to generate financial statements in the form required by applicable SEC requirements. Control deficiencies are related to the lack of proper documentation to evidence the review of customer orders and purchase orders, and lack of proper documentation to evidence customers' acknowledgement of transaction amounts and account balances. Due to the foregoing material weakness and control deficiencies, management concluded that as of December 31, 2018, our internal control over financial reporting was ineffective*.

In order to address and resolve the foregoing material weakness, we have begun to implement measures designed to improve our internal control over financial reporting to remediate these material weaknesses, including hiring additional financial personnel with requisite training and experience in the preparation of financial statements in compliance with applicable SEC requirements, formalizing our processes to generate documentation sufficient to support customer orders and purchase orders, and implementing controls to obtain documentation evidencing customer agreements to transaction amounts and account balances.

*The measures we are implementing are subject to continued management review supported by confirmation and testing, as well as audit committee oversight.* Management remains committed to the implementation of remediation efforts to address these material weaknesses. Although we will continue to implement measures to remedy our internal control deficiencies, there can be no assurance that our efforts will be successful or avoid potential future material weaknesses. In addition, *until remediation steps have been completed and/or operated for a sufficient period of time, and subsequent evaluation of their effectiveness is completed, the material weaknesses identified and described above will continue to exist.*

Our independent registered public accounting firm is not yet required to formally attest to the effectiveness of our internal controls over financial reporting, and will not be required to do so for as long as we are an "emerging growth company" pursuant to the provisions of the JOBS Act.

[Emphasis added.]

206. The Company's control deficiencies and material weaknesses disclosed in the 2018 Annual Report had not been remedied—and seemingly worsened—by the time the Company filed its 2019 Annual Report. The 2019 Annual Report disclosed in pertinent

117

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

part:

> Our management has concluded that (i) our internal controls over financial reporting were not effective as of December 31, 2019, (ii) there existed material weaknesses in our internal control over financial reporting as of December 31, 2019, and (iii) our disclosure controls and procedures were not effective as of December 31, 2019.

> \* \* \*

> As of December 31, 2019, our management assessed the effectiveness of our internal control over financial reporting based on the criteria for effective internal control over financial reporting established in "*Internal Control - Integrated Framework*", issued by the Committee of Sponsoring Organizations of the Treadway Commission in 2013. In connection with this review and the audit of our consolidated financial statements for the year ended December 31, 2019, we identified material weaknesses and control deficiencies in our internal control over financial reporting. ***The material weaknesses related to (1) of the Company does not have in-house accounting personnel with sufficient knowledge of US GAAP and SEC reporting experiences, especially related to complex transactions and new accounting pronouncements; and (2) The Company failed to maintain effective IT General Controls, including missing certain entity level controls in IT management, lack of segregation of duties in IT functions, proper review of the operation of application systems, and measures to protect data security and maintain business sustainability. Control deficiencies are related to the lack of proper documentation to evidence the management review in various business processes***. Due to the foregoing material weakness and control deficiencies, management concluded that as of December 31, 2019, our internal control over financial reporting was ineffective.

[Emphasis added.]

207. Given that GAAP requires disclosure of related party transactions as alleged above, the deficiencies and weaknesses in the Company's controls, which were known to or recklessly disregarded by Defendants, can reasonably and plausibly be tied to Defendants' disclosure failures and misrepresentations implicating related party transactions that are alleged herein, providing further evidence of their scienter.

208. Defendants also had motive and opportunity to engage in fraud. As the Company's senior executives who were involved in the Company's day-to-day affairs, the

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Individual Defendants had opportunity to commit fraud. Defendants also had opportunity to commit fraud given that the Company admittedly lacked adequate internal controls to prevent and detect fraud, as alleged above.

209.   The Individual Defendants were also motivated to engage in fraud for a variety of reasons, including to conceal misconduct from regulators and continue siphoning money from the Company through related party transactions.

210.   Additionally, by not owning and registering the fleet of luxury vehicles in their personal names alone, Zhou Min Ni and Chan Sin Wong may reap tax benefits and deductions they would otherwise not receive.

211.   Zhou Min Ni reaped other benefits as well from engaging in and concealing the misconduct alleged herein. Zhou Min Ni recently paid off the balance of the substantial loans to Revolution Automotive and other related parties using shares of illiquid HF stock, which "allowed him to draw cash out of the busines in exchange for nearly worthless paper", and offload Company stock at artificially inflated values, according to the Hindenburg Report. More specifically, as the Report explained:

> **HF's Chairman Has Effectively Sold Almost 10% Of His Shares by Purchasing ~$12 Million in Loans Made by HF And Paying Them Back With His Own Illiquid Stock**
>
> *In another series of incestuous and alarming related-party transactions, HF's Chairman/CEO bought cash loans issued by HF to related and nonrelated parties and paid these loans back using shares of his illiquid HF stock.*

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

The Chairman/CEO's transactions include purchasing loans originated by HF Foods to his son's "business", Revolution Automotive, along with other related parties.

\* \* \*

***We think this shuffling of assets is nothing more than a way for the company's Chairman/CEO to unload his otherwise illiquid and overvalued stock, while extracting cash from the company through related-party loans.***

(Emphases added.)

212.   Since the Company acts through its employees, the scienter of the Individual Defendants, including their motive and opportunity, is directly imputable to the Company.

213.   Further, many of the public statements disseminated in the name of the Company, including statements denying the claims in the Hindenburg Report, were based on information provided by, or known by, Defendants.

## X.    LOSS CAUSATION

214.   During the Class Period, as detailed herein, Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of the Company's securities, and operated as a fraud or deceit on Class-Period purchasers of such securities by misrepresenting, among other things, the Company's compliance with policies governing related party transactions, and the Company's related party transactions, the Companies' vehicles, and the ties between HF Foods, B&R, and the Chinese investment groups, predating the combination between HF Foods and B&R.

120

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

215. As the truth relating to Defendants' prior false statements, misrepresentations, and fraudulent conduct was disclosed to the market and the undisclosed risks materialized, the price of HF Foods securities fell, as the prior artificial inflation came out of their respective prices. As a result of their purchases of the HF Foods securities during the Class Period, Plaintiffs and other members of the Class suffered economic loss, i.e., damages, under the federal securities laws.

## XI.    CLASS ACTION ALLEGATIONS

216. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired HF Foods securities publicly traded on NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of HF Foods and its subsidiaries, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

217. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, HF Foods securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds, if not thousands of members in the proposed Class.

218. Plaintiffs' claims are typical of the claims of the members of the Class as all

121

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

219.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiffs have no known interests antagonistic to or in conflict with those of the Class.

220.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of HF Foods;

- whether the Individual Defendants caused HF Foods to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of HF Foods securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages, and, if so, what is the proper measure of damages.

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

221. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

222. Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- HF Foods securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiffs and members of the Class purchased, acquired and/or sold HF Foods securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

223. Based upon the foregoing, Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

224. Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

225. Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

226. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

227. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiffs and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; (ii)

124

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

artificially inflate and maintain the market price of HF Foods securities; and (iii) cause Plaintiffs and other members of the Class to purchase or otherwise acquire HF Foods securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

228. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for HF Foods securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about HF Foods' finances and business prospects.

229. By virtue of their positions at HF Foods, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiffs and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with

125

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

230. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of HF Foods, the Individual Defendants had knowledge of the details of HF Foods' internal affairs.

231. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of HF Foods. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to HF Foods' businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of HF Foods securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning HF Foods' business and financial condition which were concealed by Defendants, Plaintiffs and the other members of the Class purchased or otherwise acquired HF Foods securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

232.   During the Class Period, HF Foods securities were traded on an active and efficient market. Plaintiffs and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of HF Foods securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiffs and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiffs and the Class, the true value of HF Foods securities was substantially lower than the prices paid by Plaintiffs and the other members of the Class. The market price of HF Foods securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiffs and Class members.

233.   By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

234.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

## COUNT II

### (Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against All Defendants)

235.   Plaintiffs repeat and reallege every allegation contained above as if fully set forth herein.

236.   Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

237.   Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

238.   During the relevant period, Defendants disseminated the false and misleading 2019 Proxy, 2020 Proxy, and HF/B&R Definitive Proxy, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

which they were made, not misleading. The 2019 Proxy, 2020 Proxy, and HF/B&R Definitive Proxy misrepresented and/or omitted material facts as alleged above, including material information about related party transactions, the Company's vehicles, and executive compensation.

239.  Each proxy, particularly the 2019 Proxy, 2020 Proxy, and HF/B&R Definitive Proxy, was an essential link in the accomplishment of the matters set forth for shareholder determination in the respective proxies, including the election of directors, ratification of an independent auditor, the advisory approval of executive compensation, and the approval of the HF/B&R combination, and was prepared, reviewed and/or disseminated by Defendants.

240.  In so doing, Defendants made untrue statements of material facts and omitted to state material facts necessary to make the statements that were made not misleading in violation of § 14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder. By virtue of their positions within the Company and/or roles in the process and in the preparation of the above-referenced proxies, Defendants were aware of this information and of their duty to disclose this information in the proxies.

241.  Defendants were at least negligent in filing the 2019 Proxy, 2020 Proxy, and HF/B&R Definitive Proxy with these materially false and misleading statements.

242.  The omissions and false and misleading statements in the 2019 Proxy, 2020 Proxy, and HF/B&R Definitive Proxy are material in that a reasonable shareholder would

129

consider them important in deciding how to vote on the matters set forth for shareholder determination.

243.   In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the 2019 Proxy, 2020 Proxy, and HF/B&R Definitive Proxy and in other information reasonably available to shareholders.

244.   By reason of the foregoing, Defendants have violated § 14(a) of the 1934 Act and SEC Rule 14a-9(a) promulgated thereunder.

245.   Because of the false and misleading statements in the 2019 Proxy, 2020 Proxy, and HF/B&R Definitive Proxy, Plaintiffs and the Class were injured.

## COUNT III

**(Violations of Section 20(a) of the Exchange Act
Against the Individual Defendants)**

246.   Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

247.   During the Class Period, the Individual Defendants participated in the operation and management of HF Foods, and conducted and participated, directly and indirectly, in the conduct of HF Foods' business affairs. Because of their senior positions, they knew the adverse non-public information about HF Foods' misstatement of income and expenses and false financial statements.

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

248.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to HF Foods' financial condition and results of operations, and to correct promptly any public statements issued by HF Foods which had become materially false or misleading.

249.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which HF Foods disseminated in the marketplace during the Class Period concerning HF Foods' results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause HF Foods to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of HF Foods within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of HF Foods securities.

250.    Each of the Individual Defendants, therefore, acted as a controlling person of HF Foods. By reason of their senior management positions and/or being directors of HF Foods, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, HF Foods to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of HF Foods and possessed the power to control the specific activities

131

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

which comprise the primary violations about which Plaintiffs and the other members of the Class complain.

251.   By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by HF Foods.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Lead Plaintiff and/or Additional Plaintiff as the Class representative(s);

B.      Requiring Defendants to pay damages sustained by Plaintiffs and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiffs and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Dated: December 4, 2020

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Murielle J. Steven Walsh*
Jeremy A. Lieberman (*pro hac vice*)
J. Alexander Hood II (*pro hac vice*)
Murielle J. Steven Walsh (*pro hac vice*)
Eric D. Gottlieb (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile:  212-661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com
Email: mjsteven@pomlaw.com
Email: egottlieb@pomlaw.com

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

*Counsel for Lead Plaintiff, the Proposed Class, and Additional Plaintiff*

**THE SCHALL LAW FIRM**
Brian Schall
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: 310-301-3335
Facsimile: 877-590-0482
Email: brian@schallfirm.com

**BRONSTEIN GEWIRTZ & GROSSMAN LLC**
Peretz Bronstein
60 East 42nd Street – Suite 4600
New York, NY 10165
Telephone: 212-697-6484
Facsimile: 212-697-7296
Email: peretz@bgandg.com

*Additional Counsel*

133

AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS