ALSTON & BIRD LLP
    Charles W. Cox (Cal. Bar No. 162854)
333 S. Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone:   (213) 576-1000
Facsimile:    (213) 576-1100
E-mail: charles.cox@alston.com

ALSTON & BIRD LLP
    John A. Jordak, Jr. (pro hac vice)
    Courtney Quirós (pro hac vice)
    Samuel C. Feldman (pro hac vice)
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone:   (404) 881-7000
Facsimile:    (404) 881-7777
E-mail: john.jordak@alston.com
E-mail: courtney.quiros@alston.com
E-mail: sam.feldman@alston.com

*Counsel for Defendants HF Foods Group Inc., Zhou Min Ni,*
*Xiao Mou Zhang, Caixuan Xu, Chan Sin Wong, and Jian Ming Ni*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| JESUS MENDOZA, Individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>     v.<br><br>HF FOODS GROUP INC., ZHOU MIN NI, XIAO MOU ZHANG, CAIXUAN XU, and JIAN MING NI,<br><br>                              Defendants. | Case No. 2:20-cv-02929-ODW (JPRx)<br><br><u>CLASS ACTION</u><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**<br><br>Filing Date:     March 29, 2020<br>Trial Date:      Not set<br><br><u>Hearing</u><br><br>Date:      March 22, 2021<br>Time:      1:30 p.m.<br>Courtroom:   5D |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ........................................................................ 3

PROCEDURAL STATUS.......................................................................... 5

ARGUMENT ............................................................................................. 5

    I.    THE AMENDED COMPLAINT FAILS TO PLEAD A PLAUSIBLE CLAIM UNDER SECTION 10 OF THE EXCHANGE ACT................................................................... 6

        A.    The Amended Complaint Fails to Plead an Actionable Misstatement or Omission. ............................................. 7

            1.    Company Automobiles........................................... 7

            2.    Related Party Transactions.................................... 8

            3.    FTSE/Russell Index............................................ 10

            4.    Response to the Hindenburg Report..................... 11

        B.    The Amended Complaint Fails to Plead a Strong Inference of Scienter. ................................................. 12

            1.    The Amended Complaint Impermissibly Seeks to Establish Scienter Through Group Pleading. ...................... 13

            2.    The Farrago of Scienter Allegations Advanced in the Amended Complaint Does Not Meet the Heightened Pleading Standard Required Under the PSLRA................. 13

            3.    The Scienter Allegations Are Not as Cogent and Compelling as the Opposing Inferences............................ 17

        C.    The Amended Complaint Fails to Plead Loss Causation. ............. 19

    II.    THE AMENDED COMPLAINT FAILS TO PLEAD A PLAUSIBLE CLAIM UNDER SECTION 14 OF THE EXCHANGE ACT................................................................. 21

i

III.   THE   AMENDED   COMPLAINT   FAILS   TO   PLEAD   A
        PLAUSIBLE   CLAIM   UNDER   SECTION   20   OF   THE
        EXCHANGE ACT....................................................................................25

CONCLUSION..................................................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................... 5, 24

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................... 5

*Bonanno v. Cellular Biomedicine Grp., Inc.*,
   2016 U.S. Dist. LEXIS 119194 (N.D. Cal. Sept. 2, 2016)................... 20

*Brown v. Ambow Educ. Holding Ltd.*,
   2014 U.S. Dist. LEXIS 18809 (C.D. Cal. Feb. 6, 2014) ....................... 21

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech.,
   Inc.*,
   856 F.3d 605 (9th Cir. 2017) ......................................................... 6, 15

*Desaigoudar v. Meyercord*,
   223 F.3d 1020 (9th Cir. 2000) ........................................................... 21

*DSAM Glob. Value Fund v. Altris Software, Inc.*,
   288 F.3d 385 (9th Cir. 2002) ............................................................ 15

*Dura Pharmaceuticals, Inc. v. Broudo*,
   544 U.S. 336 (2005)......................................................................... 19

*Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*,
   594 F.3d 783 (11th Cir. 2010) .......................................................... 24

*Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*,
   778 F.3d 228 (1st Cir. 2015) ............................................................ 16

*Glazer Capital Mgmt., LP v. Magistri*,
   549 F.3d 736 (9th Cir. 2008) ............................................................ 17

*In re Am. Apparel, Inc. S'holder Litig.*,
   2013 U.S. Dist. LEXIS 6977 (C.D. Cal. Jan. 16, 2013)........................ 14

*In re Countrywide Fin. Corp. Sec. Litig.*,
   588 F. Supp. 2d 1132 (C.D. Cal. 2008) ............................................. 15

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010) ............................................................. 25

*In re Diamond Foods, Inc. Derivative Litig.*,
2012 U.S. Dist. LEXIS 74129 (N.D. Cal. May 29, 2012)................................ 22, 24

*In re FVC.COM Inc.*,
32 F. App'x 338 (9th Cir. 2002) ............................................................ 10

*In re Hansen Nat. Corp. Sec. Litig.*,
527 F. Supp. 2d 1142 (C.D. Cal. 2007) ............................................... 13, 18

*In re Herbalife, Ltd. Sec. Litig.*,
2015 U.S. Dist. LEXIS 37109 (C.D. Cal. Mar. 16, 2015) ........................... 20

*In re HP Derivative Litig.*,
2012 U.S. Dist. LEXIS 137640 (N.D. Cal. Sept. 25, 2012)................................ 24

*In re Impac Mortg. Holdings, Inc.*,
554 F. Supp. 2d 1083 (C.D. Cal. 2008) ................................................. 10

*In re Intrexon Corp. Sec. Litig.*,
2017 U.S. Dist. LEXIS 26401 (N.D. Cal. Feb. 24, 2017)................................ 20

*In re Kalobios Pharms., Inc. Sec. Litig.*,
258 F. Supp. 3d 999 (N.D. Cal. 2017)................................................... 25

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
616 F. App'x 442 (2d Cir. 2015) ......................................................... 15

*In re Nektar Therapeutics*,
2020 U.S. Dist. LEXIS 122715 (N.D. Cal. July 13, 2020) ........................... 20

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ....................................................... 14, 25

*In re Omnicom Grp., Inc. Sec. Litig.*,
597 F.3d 501 (2d Cir. 2010) .............................................................. 19

*In re Paypal Holdings, Inc.*,
2018 U.S. Dist. LEXIS 9061 (N.D. Cal. Jan. 18, 2018)................................ 24

*In re Rigel Pharms., Inc. Secs. Litig.*,
697 F.3d 869 (9th Cir. 2012) ............................................................. 18

iv

*Jiangchen v. Rentech, Inc.*,
   2017 U.S. Dist. LEXIS 222743 (C.D. Cal. Nov. 20, 2017) ..................................... 9

*Jui-Yang Hong v. Extreme Networks, Inc.*,
   2017 U.S. Dist. LEXIS 64297 (N.D. Cal. Apr. 27, 2017)..................................... 10

*Kim v. Advanced Micro Devices, Inc.*,
   2019 U.S. Dist. LEXIS 87287 (C.D. Cal. May 23, 2019)..................................... 16

*Knollenberg v. Harmonic, Inc.*,
   152 F. App'x 674 (9th Cir. 2005)..................................... 21, 23

*Knurr v. Orbital ATK, Inc.*,
   272 F. Supp. 3d 784 (E.D. Va. 2017) ..................................... 14

*Konkol v. Diebold, Inc.*,
   590 F.3d 390 (6th Cir. 2009) ..................................... 14

*Lloyd v. CVB Fin. Corp.*,
   811 F.3d 1200 (9th Cir. 2016) ..................................... 15, 16

*Loos v. Immersion Corp.*,
   762 F.3d 880 (9th Cir. 2014) ..................................... 19, 20

*Loritz v. Exide Techs.*,
   2013 U.S. Dist. LEXIS 202817 (C.D. Cal. Dec. 19, 2013)..................................... 9

*Makor Issues & Rights v. Tellabs, Inc.*,
   437 F.3d 588 (7th Cir. 2006) ..................................... 13

*Mauss v. NuVasive, Inc.*,
   2014 U.S. Dist. LEXIS 170441 (S.D. Cal. Dec. 9, 2014) ..................................... 21

*May v. KushCo Holdings, Inc.*,
   2020 U.S. Dist. LEXIS 213905 (C.D. Cal. Sept. 25, 2020) ..................................... 13

*McGee v. Am. Oriental Bioengineering, Inc.*,
   2014 U.S. Dist. LEXIS 134137 (C.D. Cal. Sept. 23, 2014) ..................................... 16

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ..................................... *passim*

*Meyer v. Greene*,
   710 F.3d 1189 (11th Cir. 2013) ..................................... 20

v

*Miller v. PCM, Inc.*,
  2018 U.S. Dist. LEXIS 148930 (C.D. Cal. Jan. 3, 2018) .................................... 20

*New York City Emples.' Ret. Sys. v. Jobs*,
  593 F.3d 1018 (9th Cir. 2010) ................................................................ 23

*Nguyen v. Endologix, Inc.*,
  962 F.3d 405 (9th Cir. 2020) ..................................................... 6, 13, 17

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
  779 F.3d 1036 (9th Cir. 2015) ................................................................ 3

*Nozak v. N. Dynasty Mins. Ltd.*,
  804 F. App'x 732 (9th Cir. 2020) ......................................................... 14

*Ore. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
  774 F.3d 598 (9th Cir. 2014) ........................................................ 6, 12, 19

*Owens v. Jastrow*,
  789 F.3d 529 (5th Cir. 2015) ................................................................ 16

*PAR Inv. Partners, L.P. v. Aruba Networks, Inc.*,
  681 F. App'x 618 (9th Cir. 2017) ........................................................... 7

*Patel v. Parnes*,
  253 F.R.D. 531 (C.D. Cal. 2008) ............................................................. 9

*Petrie v. Elec. Game Card Inc.*,
  2011 U.S. Dist. LEXIS 6203 (C.D. Cal. Jan. 12, 2011) ........................... 13

*Prodanova v. H.C. Wainwright & Co., LLC*,
  2019 U.S. Dist. LEXIS 167101 (C.D. Cal. July 2, 2019) ......................... 17

*Resnik v. Swartz*,
  303 F.3d 147 (2d Cir. 2002) ................................................................. 22

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*,
  845 F.3d 1268 (9th Cir. 2017) ................................................................ 7

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) ......................................................... 13, 18

*S. Ferry LP, No. 2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) ......................................................... 14, 15

vi

*Santa Fe Indus., Inc. v. Green,*
    430 U.S. 462 (1977).........................................................................9

*Seinfeld v. Bartz,*
    322 F.3d 693 (9th Cir. 2003) ...............................................22, 23

*Shi v. Ampio Pharms.,*
    2020 U.S. Dist. LEXIS 158778 (C.D. Cal. June 19, 2020)...................14

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.,*
    365 F.3d 353 (5th Cir. 2004) .........................................................13

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.,*
    552 U.S. 148 (2008)........................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007).......................................................................17

*Wanca v. Super Micro Comput., Inc.,*
    2018 U.S. Dist. LEXIS 107758 (N.D. Cal. June 27, 2018)..................16

*Webb v. SolarCity Corp.,*
    884 F.3d 844 (9th Cir. 2018) .........................................................18

*Winer Fam. Tr. v. Queen,*
    503 F.3d 319 (3d Cir. 2007) ..........................................................13

*Young v. Dreisbach,*
    182 F. App'x 714 (9th Cir. 2006) ....................................................6

*Zee v. Green Dot Corp.,*
    2013 U.S. Dist. LEXIS 198927 (C.D. Cal. May 2, 2013)....................18

*Ziemba v. Cascade Int'l, Inc.,*
    256 F.3d 1194 (11th Cir. 2001) .....................................................16

*Zucco Partners, LLC v. Digimarc Corp.,*
    552 F.3d 981 (9th Cir. 2009) ............................................16, 17, 25

**FEDERAL STATUTES**

15 U.S.C. § 78j(b) ..............................................................................6

15 U.S.C. § 78n(a) ..........................................................................1, 6

15 U.S.C. § 78n(a)(1)..........................................................................21

MEMORANDUM IN SUPPORT

15 U.S.C. § 78t(a) .................................................................... 1, 6, 25

15 U.S.C. § 78u-4(b) .......................................................... *passim*

**RULES**

Fed. R. Civ. P. 8 ............................................................................ 5

Fed. R. Civ. P. 9(b) ........................................... 5, 6, 9, 18, 19, 21

Fed. R. Civ. P. 12(b)(6) .......................................................... 1, 5, 6

MEMORANDUM IN SUPPORT

Defendants HF Foods Group Inc. ("HF Foods" or the "Company"), Zhou Min Ni, Xiao Mou Zhang, Caixuan Xu, Chan Sin Wong, and Jian Ming Ni (collectively, "Defendants") respectfully submit this memorandum of points and authorities in support of their motion to dismiss the Amended Class Action Complaint ("Amended Complaint" or "AC") pursuant to Fed. R. Civ. P. 8, 9(b), and 12(b)(6), and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b) ("PSLRA").

## PRELIMINARY STATEMENT

On March 23, 2020, the stock price of HF Foods dropped $2.52 per share after an admitted short-seller published a negative report accusing the Company of being "completely uninvestable" as a result of red flags and related party transactions. Within days, a disgruntled stockholder seized on the short-seller report and commenced this putative class action alleging that the Company's filings with the Securities and Exchange Commission over a nineteen-month period were materially false and misleading in violation of federal securities laws because they omitted disclosures concerning related party transactions and Company operating practices. According to the stockholder, the short-seller report revealed that these alleged omissions were the root cause of the Company's declining performance (rather than other factors such as the global pandemic impacting restaurants and food suppliers). Lead Plaintiff has now filed an Amended Complaint extending the putative class period by eight months through November 9, 2020.[1]

Notwithstanding its prolix length and superficial detail, the Amended Complaint falls far short of meeting the federal pleading standard, let alone the heightened standard for pleading securities claims mandated by the PSLRA. Accordingly, the claims pursuant to Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), as well as the tag along Section 14(a) and 20(a) claims, 15 U.S.C. §§ 78n(a) & 78t(a), fail as a matter of law.

---

[1]   The Amended Complaint defends this expansion of the class period based on novel the theory that a disagreement with the claims somehow itself constitutes fraud.

1

- **Falsity**. The Amended Complaint fails to plead particularized facts demonstrating that the challenged statements were false or misleading. Instead, it simply reproduces long swaths from HF Foods' public filings followed by a laundry list of "reasons" the passages were purportedly false or misleading. That is plainly insufficient under the PSLRA.

- **Scienter**. The Amended Complaint fails to plead particularized facts supporting a strong inference of scienter as to each Defendant and each statement. The claims lack the typical hallmarks supporting a strong inference of scienter, such as allegations by confidential witnesses or insider stock sales. Instead, the scienter allegations in this case are premised on paper-thin motive and opportunity allegations, bare assertions that the alleged fraud related to the core operations of the Company, and weaknesses in internal controls that HF Foods previously disclosed in its public filings. Taken individually or holistically, a strong inference of scienter is not plausible from such frail allegations.

- **Loss Causation**. The Amended Complaint fails to plead particularized facts supporting loss causation. Courts routinely refuse to find loss causation where the alleged fraud is revealed through self-interested short reports repackaging publicly-available information.

- **Collateral Claims**. The Amended Complaint also fails to plead particularized facts supporting collateral claims under Sections 14(a) and 20(a) of the Exchange Act. Indeed, other than reciting the elements of these tag along claims, the Amended Complaint provides no distinguishing facts or allegations that would support their viability. Instead, they appear solely designed to give the illusion of heft to an otherwise deficient pleading.

Lead Plaintiff has had ten months to develop its theories and claims. The sum total of its efforts is a pleading that falls woefully short of stating a plausible claim. Accordingly, the motion should be granted and the claims should be dismissed.

**STATEMENT OF FACTS**

HF Foods is a leading foodservice distributor to Asian restaurants located primarily in the Southeastern, Pacific, and Mountain West regions of the United States. [AC, ¶ 30.] The Company's predecessor, HF Group Holding Corporation, was founded as a private company more than twenty years ago by Zhou Min Ni and his wife, Chan Sin Wong. [*Id.*] On August 23, 2018, that entity and Atlantic Acquisition Corporation completed a reverse merger transaction resulting in HF Foods becoming a public company. [*Id.*, ¶ 31.] Sixteen months later, HF Foods completed a merger transaction with B&R Global Holdings, Inc. ("B&R"), a California-based Asian food distributor, to create the largest distributor to Asian restaurants in the United States. [*Id.*, ¶¶ 4, 141.] Zhou Min Ni and Xiao Mou Zhang serve as the co-Chief Executive Officers of the Company; Caixuan Xu serves as its Chief Internal Control Officer.[2] [*Id.*, ¶¶ 18, 20, 22.]

HF Foods' revenue growth has been impressive, including a 33.4% increase between 2018 and 2019. [HF Foods, Annual Report (Form 10-K), at 28 (Mar. 16, 2020).[3]] As with many companies, a portion of the Company's revenue – about 5% in this case – comes from contractual relationships with third parties that share a common ownership or relationship with Company insiders. [*Id.* at 67.] HF Foods repeatedly disclosed the existence and nature of these relationships, including the amount and form of commercial dealings with these related parties, and insider holdings in the related counter-party. [*Id.* at 64-67.] On March 16, 2020, in the early days of the global COVID-19 pandemic, HF Foods warned investors of the risk to revenue and profits resulting from the emerging pandemic. [*Id.* at 28.]

---

[2] Jian Ming Ni (no relation to Zhou Min Ni) served as Chief Financial Officer of HF Foods until he left the Company in April 2019. [*Id.*, ¶ 21.] Jian Ming Ni cannot be liable for any statements made after he left the Company.

[3] The Court may take judicial notice of "documents referred to in the complaint or any matter subject to judicial notice, such as SEC filings." *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043 (9th Cir. 2015) (quoting *Dreiling v. Am. Express Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006)).

A week later, an admitted short-seller published an incendiary report about the Company with the title: "HF Foods: 90%+ Downside on Massive Undisclosed Related-Party Transactions, Shareholder Cash Spent on Exotic Supercars & Outrageous Fundamental Valuation." [AC, ¶ 6.] The short-seller stated that the report merely represented his "opinion" and expressly disavowed any representation as to the "accuracy, timeliness, or completeness of any such information" in the report.[4] The author of the report disclosed that readers "should assume that as of the publication date of any short-biased report or letter, Hindenburg Research (possibly along with or through our members, partners, affiliates, employees, and/or consultants) along with our clients and/or investors has a short position" and that, therefore, they stand "to realize significant gains in the event that the price" of HF Foods declines. [*Id.*] The report also noted that "all information" contained in the report was "obtained from public sources," and heavily cited HF Foods' public filings with the SEC to support the author's opinion that the Company was overvalued. [*Id.*]

Notwithstanding the public sourcing and self-interested motives attendant to the short-seller report, the Amended Complaint alleges the report first revealed the Company (i) engaged in transactions with related parties; (ii) owned luxury automobiles that were used for personal use on occasion by Company insiders; and (iii) had been erroneously included in the FTSE/Russell index. [AC, ¶ 6.] The Amended Complaint alleges that HF Foods' stock price dropped $2.52 per share upon release of the Hindenburg short-seller report. [*Id.*, ¶ 7.] The Amended Complaint further alleges that HF Foods' stock price dropped $0.77 per share seven months later after the Company disclosed in a quarterly SEC filing that the SEC had "initiated a formal, non-public investigation" of the Company. [*Id.*, ¶¶ 194, 196.]

---

[4] *See Hindenburg Research*, "HF Foods: 90%+ Downside on Massive Undisclosed Related-Party Transactions, Shareholder Cash Spent on Exotic Supercars & Outrageous Fundamental Valuation" (March 23, 2020), https://hindenburgresearch.com/hf-foods/ ("Hindenburg Report").

1
2
3
4
5
6
7
8
9
10
11
12
13

### PROCEDURAL STATUS

This action was filed on March 29, 2020. [Doc. 1.]  The original complaint alleged that from August 23, 2018 to March 23, 2020, HF Foods issued materially false and/or misleading statements in its periodic SEC filings.  [*Id*.]  On October 13, 2020, the Court appointed Yun Yee to serve as Lead Plaintiff to represent a putative class of stockholders who assert that they purchased HF Foods stock at inflated prices as a result of Defendants' allegedly false and misleading statements. [Doc. 40.] Thereafter, an Amended Complaint was filed, which remains the operative pleading in this action.  [Doc. 47.]  The Amended Complaint purports to expand the putative class period from August 23, 2018 to November 9, 2020.  [*Id*.]  This constitutes Defendants' initial response to the Amended Complaint.  For the reasons set forth herein, the motion to dismiss should be granted pursuant to Fed. R. Civ. P. 8, 9(b), 12(b)(6) and the PSLRA.

14

### ARGUMENT

15
16
17
18
19
20
21
22
23
24
25
26
27
28

A motion to dismiss under Rule 12(b)(6) tests whether the plaintiff has pleaded sufficient facts to support a claim under any cognizable legal theory.  The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted).  Properly pleaded material allegations in a complaint are accepted as true solely for purposes of the motion, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Moreover, the Court is "not required to indulge unwarranted inferences in order to save a complaint from dismissal." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064-65 (9th Cir. 2008).

The Amended Complaint purports to assert claims under Sections 10(b), 14(a), and 20(a) of the Exchange Act.  15 U.S.C. §§ 78j(b), 78n(a), 78t(a).  "[P]laintiffs in private securities fraud class actions face formidable pleading requirements to properly state a claim and avoid dismissal under Fed. R. Civ. P. 12(b)(6)."  *Metzler*, 540 F.3d at 1054-55.  In addition to satisfying Rule 12, they also "must meet the higher, exacting pleading standards of Federal Rule of Civil Procedure 9(b) and the [PSLRA]."  *Ore. Pub. Emps. Ret. Fund v. Apollo Grp. Inc*., 774 F.3d 598, 604 (9th Cir. 2014).[5]  If they cannot, "the court must dismiss the complaint upon motion of the defendant."  *Young v. Dreisbach*, 182 F. App'x 714, 716 (9th Cir. 2006).

## I.     THE AMENDED COMPLAINT FAILS TO PLEAD A PLAUSIBLE CLAIM UNDER SECTION 10 OF THE EXCHANGE ACT.

The Amended Complaint purports to state a claim under Section 10(b) of the Exchange Act.  In order to state such a claim, the Amended Complaint must plead, and a plaintiff must ultimately prove: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).  In making that showing, a pleading "must also satisfy the dual heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the [PSLRA], which require that the complaint plead both falsity and scienter with particularity."  *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 613 (9th Cir. 2017).[6]

---

[5]  The PSLRA was enacted "to curb perceived abuses" in securities cases, including "nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests and manipulation by class action lawyers." *Nguyen v. Endologix, Inc*., 962 F.3d 405, 414 (9th Cir. 2020) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 (2007)).

[6]  *See Nguyen*, 962 F.3d at 413-14 ("The precedents of the Supreme Court and this court teach that the PSLRA's heightened pleading requirements are meaningful ones, requiring courts carefully to evaluate securities fraud complaints to ensure compliance with the statute's elevated pleading standards.").

If the pleading fails to meet that heightened standard on even a single element of the claim, the motion to dismiss must be granted. *See Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1274 (9th Cir. 2017); *PAR Inv. Partners, L.P. v. Aruba Networks, Inc.*, 681 F. App'x 618, 619 (9th Cir. 2017). Here, the Amended Complaint fails to plead multiple elements of a Section 10(b) claim.

### A.   The Amended Complaint Fails to Plead an Actionable Misstatement or Omission.

The Amended Complaint falls far short of the heightened standard required to plead a Section 10(b) claim through its failure to allege with specificity an actionable misrepresentation or omission of a material fact. *See* 15 U.S.C. § 78u-4(b)(1). "By requiring specificity, § 78u-4(b)(1) prevents a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating *why* the defendant's alleged statements or omissions are deceitful." *Metzler*, 540 F.3d at 1061 (emphasis in original). If a complaint fails to plead an actionable misstatement or omission, it must be dismissed regardless of the allegations regarding the remaining elements of a Section 10(b) claim. The alleged misrepresentations and omissions in the Amended Complaint fall into four categories, none of which is sufficient to state a plausible claim under the federal securities laws.

### 1.   Company Automobiles

The Amended Complaint asserts Defendants failed to disclose that HF Foods "owned an undisclosed fleet of luxury vehicles that Defendants Zhou Min Ni, Chan Sin Wong, and their son, Raymond Ni, used for non-business purposes." [AC, ¶¶ 5, 203.] The Amended Complaint alleges that virtually every financial statement issued by the Company over a nineteen-month period was somehow fraudulent because of this alleged omission. The Amended Complaint's bare allegations do not support a viable securities fraud claim.

MEMORANDUM IN SUPPORT

*First*, the Amended Complaint does not allege that the value of any Company-owned automobile was excluded from the Company's balance sheet, nor does it provide any authority for the proposition that HF Foods had an obligation to disclose each corporate vehicle owned by the Company. The Amended Complaint's salacious allegations concerning luxury automobiles do not overcome that there are no well-pleaded allegations that the Company's financials or disclosures with respect to Company-owned automobiles were incorrect or inaccurate in any way.

*Second*, the Amended Complaint confuses its own allegations concerning the referenced automobiles. The Amended Complaint identifies nine automobiles, but fails to specify when the vehicles were purchased by the Company and whether they are still owned by the Company. [AC, ¶ 35.] Instead, it asserts the vehicles are "co-owned" (whatever that means in a corporate context) by Zhou Min Ni and his wife, Chan Sin Wong. Owning an automobile does not constitute securities fraud. [*Id.*]

*Third*, notwithstanding its allegation that the automobiles were actually "co-owned" by Mr. Ni and his wife, the Amended Complaint fails to plead with specificity facts demonstrating the personal use of a Company vehicle was material or inconsistent with their employment agreements. [*See, e.g.*, AC, ¶ 80.] The Amended Complaint does not plead facts alleging how often the vehicles were used for personal use, the fair value of that use, whether such value was material, or anything else that would support a plausible securities fraud claim. The PSLRA requires particularized facts, not innuendo and speculation.

## 2.    Related Party Transactions

The Amended Complaint also asserts that HF Foods engaged in "related party transactions [that] violated Company policy, SEC regulations, and Generally Accepted Accounting Practices" and that it "engaged in undisclosed related party transactions, including its merger with B&R." [AC, ¶ 5.] These allegations likewise fail to meet the heightened pleading standard required by Rule 9(b) and the PSLRA.

*First*, the PSLRA does not permit a plaintiff to cobble together a claim by reproducing lengthy passages from a company's public filings and then simply alleging they are false or misleading in their entirety without any meaningful analysis or explanation. *Metzler*, 540 F.3d at 1070 ("A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false, does not meet this standard.").[7]   As a court in this district recently found: "Neither courts nor defendants should have to wade through the morass of 'puzzle pleadings' as this wastes judicial resources and undermines the requisite notice for a defendant to respond." *Jiangchen v. Rentech, Inc.*, 2017 U.S. Dist. LEXIS 222743, at *12, *20 (C.D. Cal. Nov. 20, 2017) (dismissing complaint where "inconsistent use of emphasis, use of cross-references, and failure to delineate the reasons why statements were false and misleading . . . require[d] the Court to parse through statements to discover which are false and misleading").   Here, the Amended Complaint impermissibly buries its allegations concerning related-party transactions in dozens of excerpts from the detailed Company disclosures.

*Second*, the Amended Complaint's undisciplined pleading manner masks that HF Foods provided extensive disclosures to investors concerning the Company's related party transactions, including the identity of the related party, the transactional amount of commerce with each related entity (sales, purchases, advances), and the nature of the counter-party's relationship to Company insiders.  [*See, e.g.*, AC, ¶¶ 109-11, 116-20.]  Quibbling with the wisdom of those transactions does not state a viable securities fraud claim.[8]  *See Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 479 (1977) ("Congress by § 10(b) did not seek to regulate transactions which constitute no more

---

[7]  *See also Patel v. Parnes*, 253 F.R.D. 531, 552-53 (C.D. Cal. 2008) (dismissing complaint that "cite[d] one or more press releases, a conference call, and . . . SEC filings" and "then allege[d] . . . positive statements, assurances and forecasts made [during the relevant period] were false or misleading" without tying "these reasons to particular statements"); *Loritz v. Exide Techs.*, 2013 U.S. Dist. LEXIS 202817, at *10 (C.D. Cal. Dec. 19, 2013) (same).

[8]  *See, e.g.*, AC, ¶¶ 111, 118, 128-29, 138, 143, 150-51, 156.

than internal corporate mismanagement.") (internal citation omitted).[9]

*Third*, claims concerning the B&R merger fare no better.  The Amended Complaint asserts that statements concerning this transaction were somehow false and misleading because B&R allegedly was a related party.  [AC, ¶ 193.]  As purported support for that proposition, the Amended Complaint points to the Hindenburg short-seller report's statement that HF and B&R were related because they were "both under the umbrella of the same investment group."  [*Id.*]  The pleaded allegations do not support the desired conclusion.  Indeed, read most favorably to Lead Plaintiff, the Amended Complaint alleges that between 2012 and 2014 (*i.e.*, long before HF Foods became a public company) a food distribution company in China did business in the United States with both the predecessor of HF Foods and B&R.  [*Id.*, ¶ 65.]  The Amended Complaint does not plead particularized facts that, at the time of the B&R merger in November 2019, there was overlapping ownership or were other interests that would cause HF and B&R to be deemed related parties under the federal disclosure regime.  Short-seller innuendo and speculation do not constitute facts sufficient to plead a claim under the PSLRA.[10]

### 3.   FTSE/Russell Index

The Amended Complaint next asserts Defendants made false and/or misleading statements relating to the Company's inclusion on the FTSE/Russell Index.  [AC, ¶ 5.]  In particular, the Amended Complaint takes issue with four statements: (i) an August 23, 2018 press release disclosing that the "the former shareholders of HF Group will be issued 19.97 million shares of stock" in the reverse merger with Atlantic [AC, ¶ 70]; (ii) an August 28, 2018 Form 8-K attaching the August 23 press release [*Id.*, ¶

---

[9]   *See also In re Impac Mortg. Holdings, Inc.*, 554 F. Supp. 2d 1083, 1095 (C.D. Cal. 2008) (corporate mismanagement claims "are not actionable under Section 10(b)"); *Jui-Yang Hong v. Extreme Networks, Inc.*, 2017 U.S. Dist. LEXIS 64297, at *65-66 (N.D. Cal. Apr. 27, 2017) (same).

[10]   *See In re FVC.COM Inc.*, 32 F. App'x 338, 340 (9th Cir. 2002) (explaining that allegations based on "mere speculation" are "precisely the kind of allegation that the PSLRA is designed to defeat at the pleading stage.").

169]; (iii) a June 25, 2019 Form 8-K disclosing that upon consummation of the merger between HF Foods and B&R, the B&R stockholders would receive 30,700,000 shares of HF Foods common stock [*Id.*, ¶ 170]; and (iv) a March 16, 2020 Form 10-K in which the Company disclosed that it "had 52,145,096 shares of common stock issued and outstanding" as of March 23, 2020 [*Id.*, ¶ 171]. The Amended Complaint alleges these statements "were materially false and/or misleading because HF Foods was engaging in foul play to meet FTSE/Russell Index criteria." [*Id.*, ¶ 172.]

This claim is woefully deficient. The Amended Complaint contains no allegations, let alone particularized ones, that the share counts provided by HF Foods were inaccurate in any way. To the contrary, the Amended Complaint admits the Company correctly calculated and disclosed its share count in its 2020 Form 10-K and the FTSE/Russell Index erroneously used a different number when rebalancing its index. [*Id.*, ¶ 182.] Obviously, a fraud claim does not lie where there has been no misstatement by any Defendant.[11] *Metzler*, 540 F.3d at 1061.

### 4.    Response to the Hindenburg Report

After the release of the short-seller's Hindenburg report, HF Foods published a statement on its website and in a Form 8-K filed with the SEC:

> The Company is aware of derogatory assertions made by a self-described short seller of our stock. Those comments should not be relied upon by anyone interested in our Company. Our published financial statements and other public disclosures fairly present, in all material respects, the financial condition and results of operations of the Company, as well as our Company subsidiaries, our dealings with related parties, and the compensation of the Company's executive officers.

[AC, ¶ 184.] The Amended Complaint asserts this statement was false and misleading for the reasons set forth elsewhere in the pleading. [*Id.*, ¶ 186 (citing ¶¶ 71, 74, 76, 79-80, 82, 106-08, 113-15, 121-23, 125-27, 131-34, 146, 158-59).]

This last-ditch attempt to find a securities fraud claim from a response to a short-seller's report is misplaced. The Amended Complaint fails to plead

---

[11]  It is axiomatic that the error by the FTSE/Russell Index after the B&R merger could not have rendered the earlier statements false or misleading. [AC, ¶ 182.]

MEMORANDUM IN SUPPORT

particularized facts as to what is false or misleading about the challenged statement. *See Metzler*, 540 F.3d at 1061 ("By requiring specificity, § 78u-4(b)(1) prevents a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating *why* the defendant's alleged statements or omissions are deceitful."). The Company has not restated its financial statements and its auditors have not withdrawn their audit opinions. Moreover, as the Amended Complaint concedes, the Company disclosed its related party transactions. This claim fails the most basic of pleading requirements under the PSLRA and should therefore be dismissed.

*   *   *   *   *

At bottom, the Amended Complaint fails the most fundamental requirement for stating a securities claim: alleging facts with the requisite specificity establishing a material misrepresentation or omission. That failure is dispositive of this claim.

### B. The Amended Complaint Fails to Plead a Strong Inference of Scienter.

The Amended Complaint also falls far short of pleading a strong inference of scienter. The PSLRA requires that "the complaint shall, with respect to each act or omission alleged . . . , state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). This showing must be made on both a defendant-by-defendant and claim-by-claim basis. *Apollo Grp.*, 774 F.3d at 607 ("[W]e require that the Plaintiffs allege scienter with respect to each of the individual defendants[.]"). The Ninth Circuit instructs:

> To allege the required scienter, a complaint must "allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness." "[D]eliberate recklessness" is more than "*mere* recklessness or a motive to commit fraud." It is instead "an *extreme* departure from the standards of ordinary care," which "presents a danger of misleading buyers or sellers that is either known to the defendant or is so *obvious* that the actor must have been aware of it."

12

*Nguyen*, 962 F.3d at 414 (internal citations omitted).[12]

### 1. The Amended Complaint Impermissibly Seeks to Establish Scienter Through Group Pleading.

The Amended Complaint first fails to satisfy the stringent requirements for pleading scienter because it "impermissibly groups all of the Individual Defendants together, with no particularized facts alleged as to each Defendant." *May v. KushCo Holdings, Inc*., 2020 U.S. Dist. LEXIS 213905, at *22 (C.D. Cal. Sept. 25, 2020). The recent *KushCo Holdings* decision represents the latest in a long line of cases in this district rejecting the "group pleading" doctrine. *See, e.g.*, *In re Hansen Nat. Corp. Sec. Litig*., 527 F. Supp. 2d 1142, 1153-54 (C.D. Cal. 2007) ("[T]he group pleading doctrine can no longer be used in pleading cases under the PSLRA[.]")[13]

Here, the Amended Complaint indiscriminately lumps together Defendants and attempts to cobble together a scienter theory without particularized facts as to each Defendant and each claim as required by the PSLRA.  15 U.S.C. § 78u-4(b)(2).

### 2. The Farrago of Scienter Allegations Advanced in the Amended Complaint Does Not Meet the Heightened Pleading Standard Required Under the PSLRA.

The Amended Complaint attempts to plead scienter through a grab bag of misplaced theories.  Indeed, the pleading careens from one theory to the next without providing specificity as to how each Defendant purportedly acted with the requisite state of mind.

---

[12] *See also Metzler*, 540 F.3d at 1061 ("In order to state a claim for securities fraud that complies with the dictates of the [Reform Act], the [AC] must raise a 'strong inference' of scienter – *i.e.*, a strong inference that the defendant acted with an intent to deceive, manipulate, or defraud.") (quoting 15 U.S.C. § 78u-4(b)(2)); *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001) ("To meet this pleading requirement, the complaint must contain allegations of specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made.").

[13] Indeed, the "Central District of California, in particular, appears to be unanimous in this conclusion." *Petrie v. Elec. Game Card Inc*., 2011 U.S. Dist. LEXIS 6203, at *10 (C.D. Cal. Jan. 12, 2011).  A number of Circuit Courts also reject the group pleading doctrine.  *See, e.g.*, *Southland Sec. Corp. v. INSpire Ins. Sols., Inc*., 365 F.3d 353, 363 (5th Cir. 2004); *Makor Issues & Rights, Ltd. v. Tellabs, Inc*., 437 F.3d 588, 603 (7th Cir. 2006), *vacated on other grounds*, 551 U.S. 308 (2007); *Winer Fam. Tr. v. Queen*, 503 F.3d 319, 337 (3d Cir. 2007).

13

**SEC investigation**.   The Amended Complaint alleges that "[t]he existence of the SEC's investigation . . . provides evidence of scienter."   [AC, ¶ 198.]   Not so.   "[T]he existence or nonexistence of an SEC enforcement action is of little help in assessing whether plaintiffs have alleged sufficient facts to state a claim for violation of the securities laws."   *In re Am. Apparel, Inc. S'holder Litig.*, 2013 U.S. Dist. LEXIS 6977, at *43 (C.D. Cal. Jan. 16, 2013).   Indeed, "the allegation that the SEC is conducting an investigation 'is too speculative to add much, if anything, to an inference of scienter.'"   *Knurr v. Orbital ATK, Inc.*, 272 F. Supp. 3d 784, 807 (E.D. Va. 2017) (quoting *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 628 n.2 (4th Cir. 2008)).   For that reason, "a decision by government agencies to investigate a company is not sufficient to meet the heightened *Tellabs* standard on its own."   *Konkol v. Diebold, Inc.*, 590 F.3d 390, 402 (6th Cir. 2009).

**Core Operations**.   The Amended Complaint next asserts that scienter is somehow established because the alleged fraud relates to the "core business of the Company." [AC, ¶ 199.]   Under the core operations doctrine, a plaintiff seeks to satisfy the heightened pleading standard under the PSLRA through a theory that infers "facts critical to a business's 'core operations' or an important transaction are known to a company's key officers."   *S. Ferry LP, v. Killinger*, 542 F.3d 776, 783-84 (9th Cir. 2008).   This type of scienter allegation is often made, and almost equally often rejected, as a basis for inferring scienter in securities class actions.[14]   Indeed, it is only

---

[14]   *See, e.g.*, *Nozak v. N. Dynasty Mins. Ltd.*, 804 F. App'x 732, 734 (9th Cir. 2020) ("The core operations theory cannot support a strong inference of scienter because Plaintiffs have not provided detailed and specific allegations about management's exposure to factual information within the company.") (internal citations and quotations omitted); *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063-64 (9th Cir. 2014) ("'[A]bsent some additional allegation of specific information conveyed to management and related to the fraud' or other allegations supporting scienter, the core operations inference will generally fall short of a strong inference of scienter."); *S. Ferry*, 542 F.3d at 784 ("Where a complaint relies on allegations that management had an important role in the company but does not contain additional detailed allegations about the defendants' actual exposure to information, it will usually fall short of the PSLRA standard.); *Shi v. Ampio Pharms.*, 2020 U.S. Dist. LEXIS 158778, at *18 (C.D. Cal. June 19, 2020) ("Plaintiffs have not alleged the existence of contemporaneous information within [the company] that contradicted or undermined Defendants' public statements at

14

in an "exceedingly rare circumstance" that such a "bare core operations inference may suffice." *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1191 (C.D. Cal. 2008) (internal quotations omitted).  That is because "corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter." *S. Ferry*, 542 F.3d at 785.  Here, the Amended Complaint does not plead with specificity that the alleged fraud involved the core operations of the Company.  This does not pass muster under the heightened pleading standards governing a motion to dismiss pursuant to the PSLRA.

*Internal controls*.  The Amended Complaint next alleges that "scienter can also be inferred from the fact that the Company lacked adequate internal preventative controls throughout the Class Period."  [AC, ¶ 205.]  The purported basis for this erroneous conclusion is the allegation that Generally Accepted Accounting Principles ("GAAP") required certain accounting with respect to related-party transactions.  [*Id.*]  The fatal problem with this theory is that alleged violations of GAAP and deficiencies in internal controls do not support an inference of scienter.  *See, e.g.*, *DSAM Glob. Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002) ("[M]ere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter.") (internal citation omitted); *In re Magnum Hunter Res. Corp. Sec. Litig.*, 616 F. App'x 442, 445 (2d Cir. 2015) ("Nor do . . . statements related to internal controls weaknesses support such an inference[.]")[15]

Instead, "[t]o raise a strong inference of scienter, the [complaint] must allege facts demonstrating that defendants knowingly and recklessly engaged in an improper accounting practice, for example, that a company's external auditors counseled against

---

the time Defendants made those statements.  Thus, the core operations doctrine does not apply.").

[15] *See also Dearborn Heights*, 856 F.3d at 621-23 (noting "the inability of GAAP violations alone to provide evidence of scienter"); *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1207 (9th Cir. 2016) (The complaint did not "allege the role of the individual defendants in preparing the company's accounting statements or what knowledge they had of GAAP principles.  Accordingly, the district court correctly dismissed the GAAP claims.").

a practice or that a company's CFO was aware that the practice was improper." *Lloyd*, 811 F.3d at 1207 (internal quotations omitted).  There are no such allegations here.  Indeed, to the contrary, the Company disclosed the existence of material weakness in its internal controls throughout the class period (*see, e.g.*, AC, ¶ 206 quoting HF Foods, Annual Report (Form 10-K), at 24 (Mar. 16, 2020) ("We have identified material weaknesses in our internal controls") an inconvenient but important fact that is inconsistent with an intent to defraud.[16]

Similarly, the Amended Complaint's belabored references to SOX certifications do not provide a strong inference of scienter.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1003-04 (9th Cir. 2009) (We . . . have ruled that 'Sarbanes-Oxley certifications are not sufficient, without more, to raise a strong inference of scienter.'") (quoting *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 747 (9th Cir. 2008)).[17]

***Motive and Opportunity***.  The Amended Complaint lastly asserts that an inference of scienter exists because Defendants "had motive and opportunity to engage in fraud." [AC, ¶¶ 208-09.]  The Amended Complaint alleges that the individual Defendants were "motivated to engage in fraud for a variety of reasons, including to conceal misconduct from regulators and continue siphoning money from the Company" and had the opportunity to do so by virtue of their position as "senior executives who were involved in the Company's day-to-day affairs."  [*Id.*]

---

[16] *See, e.g.*, *Owens v. Jastrow*, 789 F.3d 529, 540 (5th Cir. 2015) ("[T]he red flags were disclosed to the public, which negates the inference that defendants acted with scienter[.]"); *Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 244 (1st Cir. 2015) (holding disclosures "undercut any inference of scienter"); *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1211 (11th Cir. 2001) (same).

[17] *See also Kim v. Advanced Micro Devices, Inc*., 2019 U.S. Dist. LEXIS 87287, at *30 (C.D. Cal. May 23, 2019) (same); *McGee v. Am. Oriental Bioengineering, Inc*., 2014 U.S. Dist. LEXIS 134137, at *51 (C.D. Cal. Sept. 23, 2014) ("With respect to plaintiffs' allegations regarding SOX certifications, the Ninth Circuit has rejected the notion that signing SOX certifications is strongly indicative of scienter."); *Wanca v. Super Micro Comput., Inc*., 2018 U.S. Dist. LEXIS 107758, at *16 (N.D. Cal. June 27, 2018) ("[T]he malicious inference that Plaintiff draws from the SOX Certifications is no more cogent and compelling than an unintended mistake[.]").

Allegations like these are "not enough to establish a cogent and compelling inference of scienter." *Zucco Partners,* 552 F.3d at 998; *Glazer Capital*, 549 F.3d at 748 ("[E]vidence of a personal profit motive on the part of officers and directors . . . is insufficient to raise a strong inference of scienter."); *Prodanova v. H.C. Wainwright & Co., LLC*, 2019 U.S. Dist. LEXIS 167101, at *16 (C.D. Cal. July 2, 2019) ("[A]n alleged motive to commit fraud is not alone sufficient to establish a strong inference of scienter.") (internal citations and quotations omitted). Indeed, if "simple allegations of pecuniary motive were enough to establish scienter, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions." *Zucco Partners*, 552 F.3d at 1005. The Amended Complaint does not plead particularized facts supporting a scienter theory based on motive and opportunity.

### 3. The Scienter Allegations Are Not as Cogent and Compelling as the Opposing Inferences.

Even if the scienter allegations in the Amended Complaint are considered holistically, they fall far short of pleading a strong inference of scienter as required under the PSLRA. The United States Supreme Court has made clear that in making this determination, "the court must take into account plausible opposing inferences." *Tellabs*, 551 U.S. at 323; *Metzler*, 540 F.3d at 1061 ("[C]ourt must consider *all* reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs.") (emphasis in original). And, in doing so, the "strong" inference of fraudulent intent "must be more than merely plausible or reasonable – it must be cogent, and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. The result "is an 'exacting' pleading obligation . . . that 'present[s] no small hurdle for the securities fraud plaintiff.'" *Nguyen*, 962 F.3d at 414.

Here, the inferences drawn from the allegations in the Amended Complaint are not as cogent and compelling as the opposing inferences. *First*, the absence of confidential witnesses supporting the allegations in the Amended Complaint

MEMORANDUM IN SUPPORT

undermines a strong inference of scienter.  Indeed, despite months and months to investigate its theories, the Amended Complaint fails to surface a single corroborating witness for its many fanciful allegations.  That unusual omission weighs against finding a strong inference of scienter.  *Zee v. Green Dot Corp.*, 2013 U.S. Dist. LEXIS 198927, at *24 (C.D. Cal. May 2, 2013); *In re Hansen*, 527 F. Supp. 2d at 1163 (finding that where "allegations are  . . . not, as is the case in many securities fraud cases, [based] on the statements of confidential witnesses and/or employees and former employees" plaintiff did not "satisfy the strict pleading requirement of the PSLRA and Rule 9(b)").

*Second*, the absence of stock sales by the individual Defendants further negates an inference of scienter in this case.  *See Webb v. SolarCity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018) ("[W]e have recognized that a lack of stock sales can detract from a scienter finding[.]").  Indeed, a lack of stock sales weighs against a strong inference of scienter because it is "inconsistent with Plaintiff's theory that financial motive establishes scienter."  *In re Rigel Pharms., Inc. Secs. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012); *see also Metzler*, 540 F.3d at 1067 (holding absence of stock sales suggested that there was no insider information from which to benefit and supported finding that there was not a strong inference of scienter); *Ronconi*, 253 F.3d at 436 (finding no strong inference of scienter where knowledgeable insiders did not sell stock at a time that would have taken advantage of allegedly fraudulent statements).

*Third*, Defendants' actions are wholly inconsistent with an intent to defraud investors.  Company insiders did not bail out of their investments and, instead, remain among the largest stockholders in the Company.  They caused the Company to provide extensive disclosure concerning related party transactions.  They disclosed material weaknesses in the Company's internal controls and the steps that the Company was taking to correct those deficiencies.  Those actions, individually and collectively, are not the type of actions undertaken by individuals engaged in a scheme to defraud.

## C.   **The Amended Complaint Fails to Plead Loss Causation.**

The Amended Complaint's failure to plead loss causation constitutes a third independent basis for dismissing the claims in the Amended Complaint.  In *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), the United States Supreme Court held that to maintain a claim for securities fraud, the complaint must demonstrate a "causal connection between the material misrepresentation and the loss." *Id.* at 342.[18]  In doing so, the Court rejected the argument that loss causation can be established by pleading that a plaintiff purchased stock at an inflated price. *Id.* Instead, the complaint must plausibly allege that the defendant's fraud was "*revealed* to the market and *caused* the resulting losses." *Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014) (quoting *Metzler*, 540 F.3d at 1063).  And, in doing so, allegations must meet the pleading standard set forth in Rule 9(b). *Apollo Grp.*, 774 F.3d at 608.

The Amended Complaint points to two purported corrective disclosures in an attempt to meet its burden of pleading loss causation: (i) publication of the short-seller's Hindenburg report on March 23, 2020; and (ii) the filing of a Form 10-Q seven months later disclosing that the SEC had initiated an investigation of the Company.  [AC, ¶¶ 173-83, 194-96.]  Neither alleged "disclosure" establishes loss causation.

*First*, a short-seller report that repackages publicly available information does not constitute a "corrective disclosure" for purposes of pleading loss causation. *Immersion*, 762 F.3d at 889 (holding no corrective disclosure where "information had been derived 'entirely from public filings and other publicly available [sources]' of which the stock market was presumed to be aware").[19]  The anonymous author of the

---

[18]  *See also Apollo Grp.*, 774 F.3d at 608 (finding a complaint "must demonstrate a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered[.]"); *Metzler*, 540 F.3d at 1062 (explaining "loss causation is the causal connection between the [defendant's] material misrepresentation and the [plaintiff's] loss[.]").

[19]  *See also In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010) ("A negative journalistic characterization of previously disclosed facts does

19

short-seller Hindenburg report made clear that the report was based on publicly-available information ("all information contained herein is accurate and reliable, and has been obtained from public sources") and constituted the author's opinions ("This report represents our opinion, and we encourage every reader to do their own due diligence."). Those admissions are fatal as to the Amended Complaint's theory of loss causation.

*Second*, the disclosure by HF Foods that the SEC had commenced an investigation of the Company is insufficient to demonstrate loss causation. *Immersion*, 762 F.3d at 890. In *Immersion*, the Ninth Circuit held:

> The announcement of an investigation does not "reveal" fraudulent practices to the market. Indeed, at the moment an investigation is announced, the market cannot possibly know what the investigation will ultimately reveal. While the disclosure of an investigation is certainly an ominous event, it simply puts investors on notice of a *potential* future disclosure of fraudulent conduct. Consequently, any decline in a corporation's share price following the announcement of an investigation can only be attributed to market speculation about whether fraud has occurred. This type of speculation cannot form the basis of a viable loss causation theory. Accordingly, we hold that the announcement of an investigation, without more, is insufficient to establish loss causation.

---

not constitute a corrective disclosure of anything but the journalists' opinions."); *In re Nektar Therapeutics,* 2020 U.S. Dist. LEXIS 122715, at *55-56 (N.D. Cal. July 13, 2020) ("[M]ere repackaging of already-public information by an analyst or short-seller is simply insufficient to constitute a corrective disclosure.") (quoting *Meyer v. Greene,* 710 F.3d 1189, 1199 (11th Cir. 2013)); *In re Herbalife, Ltd. Sec. Litig.,* 2015 U.S. Dist. LEXIS 37109, at *17 (C.D. Cal. Mar. 16, 2015) (holding loss causation not established where short seller's assessment relied on "information readily obtainable from . . . public filings and other publicly available documents"); *Miller v. PCM, Inc.,* 2018 U.S. Dist. LEXIS 148930, at *35 (C.D. Cal. Jan. 3, 2018) (holding loss causation was not established where purported corrective disclosure was short report "gleaned entirely from public filings and information that was 'reasonably available' to its author, who professed no expertise, and clarified that the post represented his or her 'own opinions'") (internal citations omitted); *Bonanno v. Cellular Biomedicine Grp., Inc.*, 2016 U.S. Dist. LEXIS 119194, at *13 (N.D. Cal. Sept. 2, 2016) (holding short report that "only collected and opined on already public information" does not "constitute disclosure of 'the truth' as required for a corrective disclosure"); *In re Intrexon Corp. Sec. Litig.*, 2017 U.S. Dist. LEXIS 26401, at *24 (N.D. Cal. Feb. 24, 2017) (holding loss causation was not established where alleged corrective disclosure was issuance of short seller report that "attribute[d] its findings to public filings, websites and other publicly available documents").

1    *Id.*[20]

2                          *    *    *    *    *

3        In the end, the Amended Complaint fails on three fronts: it lacks an actionable

4    misrepresentation or omission, it does not demonstrate a strong inference of scienter,

5    and it cannot establish loss causation.  The failure to plead these threshold elements of

6    the claim doom the Amended Complaint, and it should be dismissed with prejudice.

7    ## II.    THE AMENDED COMPLAINT FAILS TO PLEAD A PLAUSIBLE CLAIM UNDER SECTION 14 OF THE EXCHANGE ACT.

8        The Amended Complaint also purports to state a claim under Section 14(a) of

9    the Exchange Act.  Section 14(a) prohibits the solicitation of proxies "in contravention

10   of such rules and regulations as the [SEC] may prescribe as necessary or appropriate."

11   15 U.S.C. § 78n(a)(1).  "To state a claim under Section 14(a), a plaintiff must

12   establish that (1) a proxy statement contained a material misrepresentation or omission

13   which (2) caused the plaintiff injury and (3) that the proxy solicitation, [rather than the

14   particular defect in the solicitation materials], was an essential link in the

15   accomplishment of the transaction."  *Knollenberg v. Harmonic, Inc.*, 152 F. App'x

16   674, 682 (9th Cir. 2005) (internal quotations omitted).  A Section 14(a) claim must

17   also meet the particularity requirements of Rule 9(b) as well as the heightened

18   pleading standard set forth in the PSLRA.  *Desaigoudar v. Meyercord*, 223 F.3d 1020,

19   1022-23 (9th Cir. 2000).  Here again, the Amended Complaint falls far short of

20   meeting this burden.

---

[20]  *See also Greene*, 710 F.3d at 1201 (holding "the commencement of an SEC investigation, without more, is insufficient to constitute a corrective disclosure for purposes of § 10(b)"); *Brown v. Ambow Educ. Holding Ltd.*, 2014 U.S. Dist. LEXIS 18809, at *27 (C.D. Cal. Feb. 6, 2014) ("[S]tatements regarding . . . internal investigation also do not amount to corrective disclosures for purposes of pleading a Section 10(b) claim because '[t]he announcement of an investigation reveals just that — an investigation — and nothing more.'"); *Mauss v. NuVasive, Inc.*, 2014 U.S. Dist. LEXIS 170441, at *16 (S.D. Cal. Dec. 9, 2014) (holding disclosure that company was under investigation was insufficient to allege loss causation).

The Amended Complaint fails to plead *any* material misstatement or omission, let alone a material misstatement or omission in the challenged proxies.  *See*, *supra*, at pp. 7-12.  Further, pleading a Section 14(a) claim through an omission necessitates that "either the SEC regulations specifically require disclosure of the omitted information in a proxy statement, or the omission makes other statements in the proxy statement materially false or misleading." *Resnik v. Swartz*, 303 F.3d 147, 151 (2d Cir. 2002); *Seinfeld v. Bartz*, 322 F.3d 693, 697 (9th Cir. 2003) (approving *Resnik* and dismissing Section 14(a) claim where no duty of disclosure).  Here, the Amended Complaint asserts that HF Foods' 2019 Proxy, 2020 Proxy, and the HF/B&R Definitive Proxy omitted material facts "about related party transactions, the Company's vehicles, and executive compensation."  [AC, ¶ 238.]  Not so.

***Related party transactions***.  The Amended Complaint alleges that "the Company's numerous disclosed related party transactions with purported affiliates are rife with red flags and it has engaged in undisclosed related party transactions." [*Id*., ¶ 44.]  As to the disclosed transactions, the Amended Complaint relies on vague allegations and innuendo suggesting those transactions were not favorable to the Company or benefited insiders.  [*See, e.g*., *id*., ¶¶ 49, 56, 58-61.]  Those are conclusions, not well-pleaded facts.  Moreover, "there can be no liability for a Section 14(a) claim based on a theory of mismanagement." *In re Diamond Foods, Inc. Derivative Litig*., 2012 U.S. Dist. LEXIS 74129, at *19-20 (N.D. Cal. May 29, 2012). Allegations that Company management should not have permitted the contested related party transactions, or that the related party transactions are less favorable than hypothetical deals with non-related parties, cannot form the basis of a 14(a) claim.

With regard to the B&R merger transaction, the Amended Complaint offers no support for the conclusory allegation that HF and B&R are related-parties under the federal disclosure regime.  *See supra*, at pp. 8-10.  Instead, it merely alleges that an Asian food distributor did business years ago with both B&R and the predecessor of HF Foods and then concludes that this demonstrates the merger was an undisclosed

related-party transaction (notwithstanding that the Merger Agreement and transaction terms were fully disclosed to stockholders of both companies). This is not sufficient.

***Company vehicles***. The Amended Complaint alleges that the proxies understated the value of compensation paid to certain executives because they "failed to disclose or account for the fleet of luxury vehicles worth over $1.5 million that were owned by the Company, but . . . used for personal purposes." [AC, ¶ 87.] As discussed above, the Amended Complaint does not claim that the value of Company-owned vehicles was omitted from the balance sheets of the Company, nor does it plead facts as to the value of the alleged personal use of such vehicles or whether that value fell outside the range of benefits permitted under the executive's employment agreements. In other words, "[e]ven if we take all of the well-pleaded allegations of material fact as true and construe them in the light most favorable to [Lead Plaintiff], he has not shown that the proxy statement made materially false or misleading statements or contained any material omission." *Seinfeld*, 322 F.3d at 699-700.

The Amended Complaint also fails to plead facts giving rise to a "strong inference" that Defendants acted with a culpable mental state. *See Knollenberg*, 152 F. App'x at 682-83 (requiring at least a "strong inference" of negligence). The Amended Complaint states that Defendants "were at least negligent" in filing the challenged proxies. [AC, ¶ 241.] That bare conclusion is purportedly based on "[Defendants'] positions within the Company and/or roles in the process and in the preparation of the above-referenced proxies." [*Id*., ¶ 240.] As previously noted, the reliance on a group pleading theory is impermissible under the PSLRA. *See supra*, at p. 13.

The Amended Complaint likewise fails to plead facts that "the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *New York City Emps. Ret. Sys. v. Jobs,* 593 F.3d 1018, 1022 (9th Cir. 2010). The Amended Complaint alleges that each of the three proxies "was an essential link in the accomplishment of the

matters set forth for shareholder determination in the respective proxies, including the election of directors, ratification of an independent auditor, the advisory approval of executive compensation, and the approval of the HF/B&R combination." [AC, ¶ 239.] This "formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.

As a starting point, it is well-settled that a "complaint alleging generally that the mere election of directors was an essential link to the directors' subsequent wrongdoing does not satisfy Section 14(a)'s requirements." *In re Paypal Holdings, Inc.*, 2018 U.S. Dist. LEXIS 9061, at *13 (N.D. Cal. Jan. 18, 2018).[21] For example, in *Diamond Foods,* the court rejected a Section 14(a) claim that a proxy was actionable because "it contained false financial information that influenced the vote to re-elect the directors who were up for election and allowed for the ratification of the appointment of Deloitte & Touche LLP as auditors." 2012 U.S. Dist. LEXIS 74129, at *19-20. The *Diamond Foods* court explained: a "claim that the reelection of the directors was an essential link to loss-generating corporate action because of the directors' subsequent mismanagement' cannot form the basis of liability under Section 14(a)." *Id*. With no other basis alleged in the Amended Complaint, the claims as to the 2019 and 2020 proxies fail as a matter of law.

The Section 14(a) claim as to the HF/B&R Definitive Proxy also fails the "essential link" test. The Amended Complaint alleges that the proxy failed to disclose that HF Foods and B&R were related parties, but there are no well-pleaded allegations causally connecting that purported omission to the losses for which the putative class now complains. Accordingly, the Amended Complaint fails to plead an essential element of the claim and should be dismissed.

---

[21] *See also Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*, 594 F.3d 783, 797 (11th Cir. 2010); *In re HP Derivative Litig.*, 2012 U.S. Dist. LEXIS 137640 (N.D. Cal. Sept. 25, 2012).

MEMORANDUM IN SUPPORT

Finally, this claim also fails with regard to the 2020 Proxy because the alleged omissions were disclosed in the short-seller's report.  "If the market has become aware of the allegedly concealed information, the facts allegedly omitted by the defendant would already be reflected in the stock's price and the market will not be misled."  *In re Kalobios Pharms., Inc. Sec. Litig.*, 258 F. Supp. 3d 999, 1008 (N.D. Cal. 2017) (quoting *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 513 (9th Cir. 1991)).

## III.   THE AMENDED COMPLAINT FAILS TO PLEAD A PLAUSIBLE CLAIM UNDER SECTION 20 OF THE EXCHANGE ACT.

The Amended Complaint purports to state a claim under Section 20(a) of the Exchange Act.  [AC, ¶ 251.]  In order to state such a claim, "a plaintiff must first prove a primary violation of underlying federal securities laws . . . and then show that the defendant exercised actual power over the primary violator."  *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d at 1052.  Because the Amended Complaint does not state a primary violation, this claim fails.  *See* 15 U.S.C. § 78t(a); *Zucco Partners*, 552 F.3d at 990 ("Section 20(a) claims may be dismissed summarily . . . if a plaintiff fails to adequately plead a primary violation" of the securities laws.); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1113 n.6 (9th Cir. 2010) ("Because the § 10(b) claims were properly dismissed, the § 20(a) claims were also properly dismissed.").

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that the motion should be granted and the Amended Complaint should be dismissed with prejudice.


DATED:  January 19, 2021                     Respectfully submitted,

                                             ALSTON & BIRD LLP

                                             /s/ Charles W. Cox
                                                 Charles W. Cox


                                             *Counsel for Defendants HF Foods Group Inc., Zhou Min Ni, Xiao Mou Zhang, Caixuan Xu, Chan Sin Wong, and Jian Ming Ni*

MEMORANDUM IN SUPPORT