1
2
3
4
5
6
7
8
9
10

O

# United States District Court
# Central District of California

| | |
|---|---|
| JESUS MENDOZA, Individually and on behalf of all others similarly situated, | Case No. 2:20-CV-02929-ODW (JPRx) |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT [55]** |
| HF FOODS GROUP INC., et al., | |
| Defendants. | |

## I. INTRODUCTION

This is a putative class action for securities fraud under sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934. On March 29, 2020, Plaintiff Jesus Mendoza filed his Complaint against Defendant HF Foods Group, Inc. ("HF Foods") along with Defendants Zhou Min Ni, Xiao Mou Zhang, Jian Ming Ni, and Caixuan Xu. (Compl., ECF No. 1.) Thereafter, the case was consolidated with *Walter Ponce Sanchez v. HF Foods Group Inc., et al.,* No. 2:20-cv-03967-ODW (JPRx). (Minute Order, ECF No. 35.) Mendoza's case was designated as the lead case, and thereafter, Plaintiff Yun F. Yee was designated as the Lead Plaintiff. (Order, ECF No. 40.)

Plaintiffs filed their consolidated Amended Class Action Complaint on December 4, 2020, and their Corrected Amended Class Action Complaint ("AC") on

December 11, 2020.  (Am. Class Action Compl., ECF No. 47; Corrected Am. Class Action Compl. ("Amended Complaint" or "AC"), ECF No. 51.)   The Amended Complaint added Chan Sin Wong as a Defendant.[1]

In the Amended Complaint, Plaintiffs set forth claims against Defendants for 1) violations of section 10(b) of the Securities Exchange Act and Securities and Exchange Commission Rule ("Rule") 10b-5; 2) violations of section 14(a) of the Securities Exchange Act and Rule 14a-9; and 3) violations of section 20(a) of the Securities Exchange Act.  (AC ¶¶ 225–251.)  Plaintiffs assert their first two claims against all Defendants and their third claim against the Individual Defendants.

On January 19, 2021, Defendants moved to dismiss the Amended Complaint for failure to state a claim.  Plaintiffs opposed, and Defendants responded.  (Mot., ECF No. 55; Opp'n, ECF No. 56; Reply, ECF No. 57.)

For the reasons below, the Court **GRANTS** Defendants' Motion**, with leave to amend.**[2]

## II.    REQUEST FOR JUDICIAL NOTICE

Defendants request that the Court take judicial notice of two exhibits. (Req. for Judicial Notice ("RJN"), ECF No. 55-2.)  Exhibit A is a 2019 Form 10-K HF Foods filed with the Securities Exchange Commission ("SEC") on March 16, 2020. (*See* RJN Ex. A.)  Exhibit B is a Hindenburg Research internet report entitled "HF Foods: 90%+ Downside on Massive Undisclosed Related-Party Transactions, Shareholder Cash Spent on Exotic Supercars & Outrageous Fundamental Valuation" (the "Hindenburg Report"), dated March 23, 2020.  (*See* RJN Ex. B.)

Generally, when ruling on a Federal Rule of Civil Procedure ("FRCP") 12(b)(6) motion to dismiss, a district court may not consider evidence outside of the pleadings.

---

[1] Defendants Zhou Min Ni, Xiao Mou Zhang, Jian Ming Ni, Caixuan Xu, and Chan Sin Wong are referred to herein as "Individual Defendants."

[2] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

*See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).  However, courts have two avenues for considering information outside of the complaint without converting a FRCP 12(b)(6) motion into one for summary judgment: judicial notice and incorporation by reference.  *Id.*

Judicial notice allows courts to consider a fact that is not subject to reasonable dispute because it is "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.  This includes "matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).  As is particularly relevant to this Motion, the Court may properly take judicial notice of SEC filings as they are "public disclosure documents required by law to be filed." *See, e.g.*, *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *Plevy v. Haggerty*, 38 F. Supp. 2d 816, 821 (C.D. Cal. 1998) (taking judicial notice of SEC filings, even those "not specifically mentioned" in the complaint).

The Court's second avenue for recognizing material outside the pleadings is incorporation by reference.  "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claims." *Ritchie*, 342 F.3d at 908.  Then, "the defendant may offer such a document, and the district court may treat such document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.*; *see also In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1159 (C.D. Cal. 2007) (taking judicial notice of a document where security fraud plaintiffs' claims were "predicated upon" the document); *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 864 (N.D. Cal. 2004) (recognizing press releases submitted in opposition to a 12(b)(6) motion to dismiss via both judicial notice and incorporation by reference).

Exhibit A is a SEC filing that was available during some of the relevant timeframe.  (*See* RJN Ex. A.)  Moreover, Plaintiffs expressly refer to, and rely on, this

document in the Amended Complaint.  (AC ¶¶ 29, 102–103, 164–171.)  Therefore, the Court judicially notices the fact and existence of Exhibit A, and its contents are deemed incorporated into the Amended Complaint by reference.

Exhibit B, the Hindenburg Report, is incorporated by reference into the AC because Plaintiffs quote the Hindenburg Report extensively and repeatedly throughout the AC.  (AC ¶¶ 38, 50, 51, 56, 60, 61, 63, 68, 106, 113, 121, 122, 125, 126, 142, 159, 211.)  The Report also forms the basis of Plaintiffs' claims, in that Plaintiffs allege the report revealed the truth about HF Foods and caused its stock price to drop.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (finding the district court did not abuse its discretion incorporating by reference articles that purportedly caused a stock price drop); (*see, e.g.*, AC ¶¶ 173–183).  Exhibit B is deemed incorporated into the AC by reference, and the Court may refer to it in determining if Plaintiffs have stated a claim.

## III.   BACKGROUND

HF Foods distributes food products to Asian restaurants located primarily in the Southeastern, Pacific, and Mountain West regions of the United States.  (AC ¶ 30.)  More than twenty years ago, Zhou Min Ni and Chan Sin Wong founded HF Foods' predecessor, HF Group Holding Corporation.  (*Id.*)  On August 23, 2018, that entity and Atlantic Acquisition Corporation completed a reverse merger transaction resulting in HF Foods becoming a public company.  (*Id.* ¶ 31.)  Sixteen months later, HF Foods completed a merger transaction with B&R Global Holdings, Inc. ("B&R"), a California-based Asian food distributor, to create the largest distributor to Asian restaurants in the United States.  (*Id.* ¶¶ 4, 141.)  The term "Company" is hereinafter used to refer to HF Foods in its various incarnations throughout the relevant time period.

Xiao Mou Zhang serves as the Company's Chairman, and since November 2019 he and Zhou Min Ni have served as the co-Chief Executive Officers of the Company.  (AC ¶¶ 18, 20.)  Chan Sin Wong, the other co-founder, served as President, CEO, and Director of the Company until November 2019, and she served as an executive of many

of the Company's key operating subsidiaries throughout the Class Period.  (*Id.* ¶ 19.)  Caixuan Xu currently serves as the Company's Chief Internal Control Officer; he was previously its CFO and Principal Accounting Officer.  (*Id.* ¶¶ 21–22.)  Jian Ming Ni served as the Company's CFO until April 2019.  (*Id.* ¶ 21.)

Plaintiffs are investors who acquired HF Foods securities between August 23, 2018 and November 9, 2020.  (AC ¶ 1.)  The fraud Plaintiffs allege Defendants committed during this time relates to three distinct subjects: related party transactions, the Company's ownership of luxury cars, and the Company's manipulation of the index rebalancing process in order to meet Russell Index criteria.

First, Defendants allegedly facilitated and concealed various related party transactions between the Company and other entities, to Plaintiffs' detriment.  This includes the Company's allegedly suspicious transactions with Revolution Industry and Revolution Automotive LLC, both of which are owned by Raymond Ni, the son of Defendants Zhou Min Ni and Chan Sin Wong.  (*Id.* ¶¶ 51–53.)  It also includes "questionable transactions" with Eastern Fresh NJ LLC and Fortune One Foods Inc. that are, according to the Hindenburg Report, "consistent with what [one] would expect if these entities are being used to funnel out shareholder cash." (*Id.* ¶ 61.)  Additionally, while the Company's SEC filings disclosed that a business called NC Noodle was a related party by virtue of Jian Ming Ni's majority ownership of the Company, the filings omitted the fact that Zhou Min Ni also had a 37.35% equity interest in NC Noodle until December 31, 2019.  (*Id.* ¶¶ 54–58, 121, 144, 192, 201.)  Defendants did not disclose this fact until November 9, 2020, after the SEC began investigating the Company.  (*Id.* ¶¶ 55, 192, 201.)

The Amended Complaint contains detailed allegations of the Company's accounts receivable, loan transactions, and total sales volume with various entities substantially owned by the Company's principals, including the abovementioned entities.  (AC ¶¶ 109–112, 116–120, 129–130, 136–139, 144, 148, 161, 166.)  Plaintiffs allege that this data represents related party transactions which Defendants fraudulently

failed to disclose throughout the class period.  (*Id.*)  Finally, Plaintiffs allege that, as later revealed by the Hindenburg Report, the Company's merger with B&R constituted a related party transaction because both the Company and B&R were part of the same Chinese investment group for years prior to the acquisition.  (*Id.* ¶¶ 62–63.)

The second group of fraud allegations concerns the Company's ownership throughout the class period of a fleet of vehicles worth nearly $1.6 million, including four Ferraris, a Bentley, and a collectible 2005 Ford GT.  As alleged, Zhou Min Ni, Chan Sin Wong, and their son Raymond used these cars for personal, non-business purposes.  (*Id.* ¶¶ 35, 37–39.)  Plaintiffs allege Defendants concealed or failed to disclose the Company's ownership of these cars in various public filings and statements.  (*Id.* ¶¶ 34, 72–103.)

Finally, Plaintiffs allege that the Company was erroneously included on the FTSE/Russell Index, which may have been due to Defendants' improper manipulations of the number of free-floating shares.  (*Id.* ¶¶ 68–71, 169–170.)

On March 23, 2020, the Hindenburg Report was posted on the internet.  (AC ¶ 6; *see also* RJN Ex. B.)  The authors cited the Company's public filings with the SEC and other research to support their opinion that the Company was overvalued.  (AC ¶¶173–183.)  Plaintiffs allege that the Hindenburg Report first revealed that the Company (1) engaged in transactions with related parties; (2) owned luxury automobiles that were used for personal use on occasion by Company insiders; and (3) had been erroneously included in the FTSE/Russell index.  (AC ¶ 6.)  In a Legal Disclaimer at the end of the Report, the authors expressly disavowed any representation as to the "accuracy, timeliness, or completeness of any . . . information" in it.  (RJN Ex. B at 26.)  The Report also noted that "all information" contained in the Report was "obtained from public sources."  (*Id.*)

The Company's stock price dropped $2.52 per share upon release of the Hindenburg Report.  (*Id.* ¶ 7.)  Several months later, on November 9, 2020, the Company's stock price dropped $0.77 per share (approximately 9% of the share value)

6

1   after the Company disclosed in a quarterly SEC filing that the SEC had "initiated a
2   formal, non-public investigation" of the Company.  (*Id.* ¶¶ 9, 194, 196.)

3                                    **IV.   LEGAL STANDARD**

4          A court may dismiss a complaint under FRCP 12(b)(6) for lack of a cognizable
5   legal theory or insufficient facts pleaded to support an otherwise cognizable legal
6   theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).   To
7   survive a dismissal motion, a complaint need only satisfy the "minimal notice pleading
8   requirements" of FRCP 8(a)(2).   *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).
9   FRCP 8(a)(2) requires "a short and plain statement of the claim showing that the pleader
10  is entitled to relief."   The factual "allegations must be enough to raise a right to relief
11  above the speculative level."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007);
12  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a claim must be "plausible on
13  its face" to avoid dismissal).

14         The determination of whether a complaint satisfies the plausibility standard is a
15  "context-specific task that requires the reviewing court to draw on its judicial
16  experience and common sense."  *Ashcroft*, 556 U.S. at 679.  A court is generally limited
17  to the pleadings and must construe all "factual allegations set forth in the complaint . . .
18  as true and . . . in the light most favorable" to the plaintiff.   *Lee*, 250 F.3d at 679.
19  However, a court need not blindly accept conclusory allegations, unwarranted
20  deductions of fact, and unreasonable inferences.  *Sprewell v. Golden State Warriors*,
21  266 F.3d 979, 988 (9th Cir. 2001).   Ultimately, there must be sufficient factual
22  allegations "to give fair notice and to enable the opposing party to defend itself
23  effectively," and the "allegations that are taken as true must plausibly suggest an
24  entitlement to relief, such that it is not unfair to require the opposing party to be
25  subjected to the expense of discovery and continued litigation."  *Starr v. Baca*, 652 F.3d
26  1202, 1216 (9th Cir. 2011).

27                                    **V.   DISCUSSION**

28         Plaintiffs assert three claims for federal securities violations: Claim One against

all Defendants, for misrepresentations and omissions in connection with the purchase of HF Foods' stock, in violation of section 10(b) and Rule 10b-5; Claim Two against all Defendants, for misrepresentations and omissions in connection with HF Foods' proxy statements under section 14(a) and Rule 14a-9; and Claim Three against the Individual Defendants for control person liability under section 20(a) stemming from the first two claims. (AC ¶¶ 225–251.) Defendants argue that all three claims should be dismissed.

## A.   Claim One under Section 10(b)

Plaintiffs' Claim One is for violations of section 10(b) and Rule 10b-5. Section 10(b) of the Securities and Exchange Act of 1934 makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). Pursuant to this section, the SEC promulgated Rule 10b-5, which makes it unlawful, in connection with the purchase or sale of any security:

> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . . not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person . . . .

17 C.F.R. § 240.10b-5.

The elements of a § 10(b) private action are "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008). To satisfy the scienter requirement, "the complaint must allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness." *In re Daou Sys. Inc.*, 411 F.3d 1006, 1015 (9th Cir. 2005) (citing *In re Silicon Graphics Sec. Litig.*,

183 F.3d 970, 974 (9th Cir. 1999), *superseded by statute on other grounds as recognized in In re Quality Sys. Sec. Litig.*, 865 F.3d 1130, 1146 (9th Cir. 2017)).  Moreover, a plaintiff bringing a civil case for securities fraud must comply with the heightened pleading requirements of FRCP 9(b) and the Private Securities Litigation Reform Act ("PSLRA").  *In re VeriFone Holdings Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012).  FRCP 9(b) mandates that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  And under the PSLRA, a securities fraud plaintiff must plead "(1) each statement alleged to have been misleading; (2) the reason or reasons why the statement is misleading; and (3) all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1); *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1023 (9th Cir. 2000).

Defendants move to dismiss Claim One on the grounds that the Amended Complaint fails to sufficiently allege falsity, scienter, and loss causation.  (Mot. 21.)  The Court holds that Claim One claim fails in its entirety due to a lack of clear allegations of falsity that meet the requirements of FRCP 9(b) and the PSLRA.  Moreover, parts of the claim fail against at least some of the Individual Defendants due to group pleading problems.

The most orderly way to conduct an analysis of this cause of action and the 132-page, 251-paragraph pleading supporting it is according to the categories of adverse information Defendants are alleged to have concealed.  Plaintiffs allege that Defendants concealed (1) information about the fleet of luxury cars, and (2) information about the related party transactions, including (3) the merger with B&R.  The Court examines each of these three groups of allegations in turn.

### 1. Luxury Cars

"Rule 10b–5 and Section 14(e) in terms prohibit only misleading and untrue statements, not statements that are incomplete."  *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).  Thus, "[t]o be actionable under the securities laws, an omission must be misleading; in other words it must affirmatively create an

1   impression of a state of affairs that differs in a material way from the one that actually
2   exists." *Id.*  Moreover, where, as here, the fraud is based on a positive misrepresentation
3   or an omission, the PSLRA requires that "the complaint . . . specify each statement
4   alleged to have been misleading" and "the reason or reasons why the statement is
5   misleading.   15 U.S.C. § 78u-4(b)(1).   Moreover, "if an allegation regarding the
6   statement or omission is made on information and belief, the complaint shall state with
7   particularity all facts on which that belief is formed." *Id.*

8        Plaintiffs fail to allege that Defendants made any particular false or misleading
9   statement about the luxury cars.  Neither the Company's disclosures about its delivery
10  fleet nor its disclosures of executive compensation constitute a false or misleading
11  statement about the luxury cars.  To the extent Plaintiffs allege these disclosures are
12  misleading, Plaintiffs fail to allege why.

13       Plaintiffs allege and argue that when the Company disclosed information about
14  its fleet of delivery vehicles in its regular reports to the SEC, it fraudulently omitted or
15  concealed that it owned other corporate vehicles it did not use for delivery.  (*See, e.g.*,
16  AC ¶¶ 84–85; Opp'n 12–14.)   But this is not a reasonable inference, nor is it a
17  sufficiently clear allegation of *what* was misleading and *why*.  The disclosures Plaintiffs
18  call fraudulent do no more than set forth facts about the Company's delivery fleet.
19  Nothing about these delivery fleet disclosures misleads the reader into thinking that the
20  company did not own other non-delivery vehicles of a different type.  An omission is
21  not false under Rule 10b-5 if it is merely incomplete as opposed to substantially
22  misleading.  *See Police Ret. Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th
23  Cir. 2014) ("We have expressly declined to require a rule of completeness for securities
24  disclosures . . . ."); *Brody*, 280 F.3d at 1006.

25       Plaintiffs also allege that the Company disclosed the salaries of its executives on
26  public filings and that these disclosures constitute a concealment of the luxury cars.
27  (*See, e.g.*, AC ¶ 75.)  But as with the vehicle fleet disclosures, these executive salary
28  disclosures fail to constitute a well-pleaded falsity.  Plaintiffs' theory, repeatedly

10

alleged, is that it was the Company, not any individual executive, who owned the cars. (*See* AC ¶¶ 37, 74, 85, 92, 94; *but see id.* ¶ 35 (ambiguously alleging that all the cars "were co-owned and co-registered with either Zhou Min Ni or Sin Wong Chan").) There is no well-pleaded allegation that the Company conveyed the cars to its principals as compensation; the only reasonable reading of the Amended Complaint is that the Company owned the luxury cars.

That being the case, the Company would have had no reason to report the cars as executive compensation, and Plaintiffs and other potential investors would have had no reason to expect to see the cars reported as executive compensation. Thus, there is no reasonable reading of the Amended Complaint under which the Company's executive salary disclosures positively misled investors into thinking the Company did not own any non-delivery vehicles. Further supporting this conclusion is Defendants' apt observation that Plaintiffs did not allege the Company excluded the luxury cars from its figures on its balance sheets. (Reply 3.)

Under the FRCP 9(b) and PSLRA heightened pleading requirements, merely stating that a corporate disclosure document was misleading because it did not contain an allegedly concealed piece of information does not satisfy the PSLRA's "reason or reasons why" requirement. 15 U.S.C. § 78u-4(b)(1). But this is all Plaintiffs do in alleging Defendants concealed the luxury cars. (*See, e.g.*, AC ¶ 85.) Plaintiffs fail to allege case-specific facts indicating why the disclosures should have contained the concealed information or how the document otherwise misled its readers regarding the concealed information. *Brody*, 280 F.3d at 1006.

Courts in the Ninth Circuit are directed to "carefully . . . evaluate securities fraud complaints" to "ensure compliance with the [PSLRA's] elevated pleading standards." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020). Upon careful evaluation, Plaintiffs' Amended Complaint does not present sufficient reasons why the delivery fleet disclosures or executive compensation disclosures were misleading. Thus, any Rule 10b-5 fraud based on omission or concealment of the luxury cars fails in this case

due to lack of adequately alleged falsity.  The Court need not and presently does not make any determination regarding scienter or loss causation from concealment of the luxury cars.

### 2.   *Related Party Transactions Other Than the B&R Merger*

Plaintiffs also allege Rule 10b-5 securities fraud arising from the various related party transactions that Defendants failed to disclose during the relevant period.  For the moment, the Court sets aside the merger with B&R and first considers all the other related party transactions alleged in the Amended Complaint.  These transactions appear to be primarily sales transactions and include those with Revolution Industry, LLC and Revolution Automotive, LLC, (AC ¶¶ 51–53); with NC Noodle, (*id.* ¶¶ 54–58); with UGO USA (NC) Inc., Eastern Fresh NJ LLC, and Fortune One Foods Inc., (*id.* ¶¶ 59–61); and all the other transactions evidenced by the data in the SEC filings, which Plaintiffs have alleged with excruciating detail, (*id.* ¶¶ 109–168).

### a.   *Falsity*

The related party sales transaction group of allegations fails as to falsity because none of these transactions are sufficiently tied to a particular statement, representation, or action on the part of Defendants which was factually false or misled investors.  In paragraphs 109 through 168, Plaintiffs set forth numbers and figures from the filings showing sales volume and accounts receivable with various related parties, followed by the following generic assertions:

> The statements referenced above . . . regarding related party transactions were materially false and/or misleading. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that HF Foods' insiders and related parties had been, and were then, enriching themselves through related party transactions.
>
> . . .
>
> Defendants' statements set forth above . . . regarding related party transactions were also false and/or misleading given that they misrepresented or failed to disclose the Company's related party

12

1
2
3

> transactions were in violation of the letter and spirit of the Company's policies generally prohibiting related party transactions, and the Company's related party transaction disclosures violated applicable SEC regulations and generally accepted accounting principles.

4
(*See, e.g.*, AC ¶¶ 113, 114.)

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

These circuitous allegations fail to answer the question that PSLRA requires them to answer: *why* the numbers on the filings were false, or *how* the information in the filing had a tendency to mislead. 15 U.S.C. § 78u-4(b)(1)(B) (requiring that securities fraud complaints "specify . . . the reason or reasons why the statement is misleading"). "By requiring specificity, § 78u-4(b)(1) prevents a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating *why* the defendant's alleged statements or omissions are deceitful." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). In opposing this Motion, Plaintiffs are reluctant to acknowledge that the very purpose of these filings was to *disclose* the related party transactions, but this fact is unavoidable and is indeed plainly alleged in the Amended Complaint. (*See, e.g.*, AC ¶ 116.) At bottom, Plaintiffs are alleging that documents that purport to enter related party transactions into the public record are instead *concealing* related party transactions. The contradiction inherent in this assertion makes it implausible to some degree. Thus, in order to state a plausible and particularized claim, Plaintiffs must also allege facts explaining why or how the document, which facially reveals related party transactions, instead conceals them.

22
23
24
25
26
27
28

Here, Plaintiffs' Amended Complaint lacks the required facts. Paragraph 113, and paragraphs like it, are tautologies that amount to no more than the assertion that 'these filings were false because they fail to disclose related party transactions.' But, as discussed above, there is no rule of completeness for security disclosures. *Intuitive Surgical*, 759 F.3d at 1061. Paragraph 114, and paragraphs like it, are non sequiturs asserting that 'these filings were false because they did not disclose that the Company was violating its own internal policy.' This allegation fails because whether a company

violated its own internal policy is a matter of internal management, and "Congress by § 10(b) did not seek to regulate transactions which constitute no more than internal corporate mismanagement." *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 479 (1977) (citation omitted); *see also Colin v. Onyx Acceptance Corp.*, 31 F. App'x 359, 361 (9th Cir. 2002) ("Section 10(b) does not embrace causes of action for breach of fiduciary duties or corporate mismanagement."); *In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1095 (C.D. Cal. 2008) (same).

Plaintiffs' allegations of the filings' falsity are neither cogent nor compelling and fail to set forth any substantial basis for the proposition that Defendants, through the filings, lied to or misled investors. Thus, Defendants' alleged concealment or omission of these related party sales transactions does not support a Rule 10b-5 fraud claim.

### b. *Scienter; Group Pleading*

Defendants also argue the Amended Complaint fails because it groups all the Individual Defendants together, without particularized facts alleged as to each Defendant. (Mot. 13.) Plaintiffs maintain that this sort of "group pleading" practice has not been expressly prohibited by the Ninth Circuit, and that regardless, it is reasonable to infer that at least some of the Individual Defendants would have or should have known that material facts were misstated or omitted. (Opp'n 18–19.) Defendants' argument on this issue is well taken and constitutes a second, independent basis for concluding that Defendants' alleged concealment of the related party sales transactions does not support a Rule 10b-5 fraud claim.

Group pleading is typically considered a failure of scienter, and scienter is defined as "a mental state embracing intent to deceive, manipulate, or defraud," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). Under the PSLRA, the Court must compare allegations of scienter with other plausible explanations for the allegedly false or misleading statements to determine whether there is a "cogent and compelling" inference of scienter which is "strong in light of other explanations." *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008). Courts must therefore

14

"consider *all* reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs." *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). To do otherwise "would be to eviscerate the PSLRA's strong inference requirement by allowing plaintiffs to plead in a vacuum." *Id.*

Numerous courts in the Ninth Circuit have held that allegations grouping several defendants together, with no particularized facts alleged as to each defendant, are insufficient to plead the defendant's state of mind (that is, to plead scienter) with the particularity required by the PSLRA. *See In re Am. Apparel, Inc. Shareholder Litig.*, No. CV 10-06352-MMM (JCGx), 2013 WL 174119, at *25 (C.D. Cal. Jan. 16, 2013) (collecting cases) ("Courts within the Ninth Circuit have . . . largely concluded that group pleading is not compatible with the PSLRA's requirements."); *see also Petrie v. Elec. Game Card Inc.*, No. SACV 10–00252 DOC (RNBx), 2011 WL 165402, at *3 (C.D. Cal. Jan. 12, 2011) ("Although the Ninth Circuit has yet to squarely address the issue, the majority of district courts within the Circuit to confront the group pleading doctrine post-*Tellabs* have decided that the doctrine did not survive. The Central District of California, in particular, appears to be unanimous in this conclusion.").

Here, Plaintiffs make little to no distinction among the actions taken and the intentions held by the five Individual Defendants with respect to the related party sales transactions. Plaintiffs allege the executive positions of the Individual Defendants, (AC ¶¶ 18–22), and elsewhere they repeatedly lump all five Individual Defendants (and possibly the corporate Defendant) into the collective "Defendants," (*see, e.g.*, ¶ 10 ("Defendants' wrongful acts and omissions"), ¶ 55 ("Defendants' failure to timely disclose Zhou Min Ni's interest in NC Noodle violated those rules and regulations"), ¶ 58 ("Defendants' scheme to funnel the Company's funds into their own personal pockets"), ¶ 113 ("Defendants' failure to timely disclose Zhou Min Ni's 37.34% ownership interest in NC Noodle"), ¶¶ 82, 85, 89, 92, 101, 103 ("Defendants' SOX certifications were also materially false or misleading")).

Moreover, Plaintiffs' allegations in the Amended Complaint are devoid of any particular factual allegations tying the Individual Defendants to the statements that were published by the Company.  Instead, the allegations are based on the imprecise assertion that all Individual Defendants were somehow involved in creating the documents in an undefined way or had some other sort of control over statements of the company.  (*See, e.g.*, AC ¶ 24 ("The Individual Defendants possessed the power and authority to control the contents of HF Foods' SEC filings, press releases, and other market communications."); ¶ 231 ("Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of HF Foods.").

But a company's "mere publication" of a restatement or other disclosure is not enough to create a strong inference of the scienter of an individual executive. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009).  Nor is "corporate management's general awareness of the day-to-day workings of the company's business" sufficient to "establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud." *Metzler*, 540 F.3d at 1068 (citing *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1087–88 (9th Cir.2002)).  Applying this principle here, the mere fact that one of the Individual Defendants is or was a senior executive at the Company does not mean that he or she knew that a particular transaction was an improper related party transaction, nor does it mean that that individual was aware that the company was making misrepresentations about the transactions to the public in SEC filings or elsewhere. Based on the allegations, it is more compelling to infer that the Company's executives as a whole thought that they had sufficiently disclosed their related party transactions in the appropriate filings.

The sole potential exception is inapplicable here because the nature of the alleged wrongdoing is not, in and of itself, so "patently obvious" that any executive would have known fraud was occurring. *In re Arrowhead Research Corp. Sec. Litig.*, No. 2:14-cv-

07890-CBM-ASx, 2016 WL 6681180, at *5 (C.D. Cal. Aug. 18, 2016) (finding that falsity of statements about company's lead clinical drug were not "so patently obvious" to executives as to allow group pleading); *Zucco*, 552 F.3d at 1000 (recognizing but not permitting implication of scienter arising from allegations of "management's role in the company" along with particular allegations suggesting management "had actual access to the disputed information" in light of which "it would be absurd to suggest that management was without knowledge of the matter").

When the conclusory allegations in the Amended Complaint are disregarded, Plaintiffs have alleged little more than the executive position of each of the Individual Defendants. There are no allegations of case-specific facts suggesting that any of the Individual Defendants knew the transactions were harming the Company or working a fraud on investors. Accordingly, any fraud claim arising from the related party sales transactions fails for lack of scienter.

### 3. The B&R Merger

The merger with B&R is of a different character than the related party sales transactions just discussed. The Hindenburg Report repeatedly emphasized the apparently improper nature of this significant $500 million merger, and the Amended Complaint contains some allegations that are unique to the merger. (*See, e.g.*, AC ¶¶ 62–66, 141–146.) Nevertheless, Plaintiffs have likewise failed to adequately allege a falsity arising from Defendants' concealing or omitting information about its merger and relationship with B&R.

The merger allegations suffer from many of the same pleading defects discussed above: there are allegations about merger documents, and there are allegations that the merger was concealed, but there is very little tying these two sets of allegations together. Plaintiffs allege exhaustive details about the HF Foods/B&R Preliminary Proxy and Definitive Proxy, but just as with the allegations of the related party transactions, the details in the Proxies are fully unmoored from the conclusory assertions that the Proxies concealed B&R's status as a related party. (*See* AC ¶¶ 90–99, 143–159.) Plaintiffs

17

allege that these documents "did not state that B&R was a related party," but again, merely stating that a particular document lacks a particular piece of adverse information does not satisfy the PSLRA's "reason or reasons" requirement.   15 U.S.C. § 78u-4(b)(1)(B); *Metzler*, 540 F.3d at 1061.  Plaintiffs fail to allege with particularity what aspect of these documents *misled* them about the Company's relationship with B&R.  (*See* AC ¶ 158.)

The closest Plaintiffs come to addressing this deficiency is in paragraph sixty-two, in which they allege that, "On June 25, 2019, HF Foods filed a current report on Form 8-K announcing that it had entered into a merger agreement with B&R Group . . . .  The merger agreement between HF Foods and B&R Group provided that the transaction was negotiated at 'arm's-length.'"  (AC ¶ 62.)  This is the most specific allegation the Amended Complaint provides about the Company's public communications and representations regarding B&R, but upon careful evaluation it fails to meet the heightened pleading requirements of FRCP 9(b) and the PSLRA.  *See Nguyen*, 962 F.3d at 414.  Although the merger agreement may have indicated the merger was at arm's-length, paragraph sixty-two does not indicate that the merger agreement was included with the Form 8-K, or, more generally, that the Company somehow announced or disseminated to the market the assertion that the merger was at arms'-length.  Thus, the allegation does not make clear how the Company lied to or misled investors about the nature of the transaction.  These omissions are unacceptable under FRCP 9(b) and the PSLRA, both of which require plaintiffs to set forth the facts and circumstances of the fraud with particularity.  *Metzler*, 540 F.3d at 1061.

In short, the Amended Complaint contains no clear allegation of a false or misleading statement about the B&R Merger or the Company's relationship to B&R.  Thus, the Rule 10b-5 fraud claim arising from the B&R merger fails due to insufficiently alleged falsity.  The Court need not and does not determine whether Plaintiffs' allegations of scienter and loss causation from misrepresentations about the B&R merger are sufficient.

1    Thus, all the alleged bases for Rule 10b-5 fraud—the luxury cars, the related
2  party sales transactions, and the B&R merger—fail on the falsity requirement.  For
3  completeness, the Court notes that Plaintiffs' ancillary allegations about the "gaming"
4  of the Russell Index, (AC ¶¶ 169–172), fail for the same essential reason: Plaintiffs
5  point to public filings and conclusorily allege that the filings did not disclose certain
6  facts about the number of free-floating shares, without alleging *why* investors would
7  have expected to see this information on the filings.

8    For these reasons, the Court **GRANTS** the Motion as to Claim One.

9         **B.    Claim Two under § 14(a)**

10    By way of Claim Two, Plaintiffs allege that Defendants prepared, reviewed, or
11  disseminated false and misleading proxy statements in violation of § 14(a) and
12  Rule 14a-9 promulgated thereunder.  (AC ¶¶ 235–245.)  Claim Two fails because the
13  Amended Complaint's allegations of both falsehood and the requisite level of
14  culpability are inadequate.

15    Under § 14(a) and Rule 14a-9, it is unlawful to solicit shareholder votes with a
16  proxy statement that either (1) contains a false or misleading statement of material fact
17  or (2) omits any material fact so that the statement is misleading.  *See* 15 U.S.C.
18  § 78n(a)(1); 17 C.F.R. § 240.14-9(a).  A well-pleaded claim for violations of § 14(a)
19  and Rule 14a-9 requires facts indicating that "(1) a proxy statement contained a material
20  misrepresentation or omission which (2) caused the plaintiff injury and (3) that the
21  proxy solicitation itself, rather than the particular defect in the solicitation materials,
22  was an essential link in the accomplishment of the transaction." *N.Y.C. Emps.' Ret. Sys.*
23  *v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010) (*overruled on other grounds by Lacey v.*
24  *Maricopa County*, 693 F.3d 896 (9th Cir. 2012).

25    First, as discussed in the context of falsity in Claim One, Plaintiffs have failed to
26  allege that any of the proxy statements contained a material misrepresentation or
27  omission.  Plaintiffs set forth the proxy statements in the Amended Complaint and
28  alleged in a conclusory way that those statements concealed information about the

1    luxury cars, the related party sales transactions, and the B&R merger.   (*See, e.g.*,
2    AC ¶¶ 143–146.)  But Plaintiffs do not allege the "reason or reasons" why the assertions
3    in the proxy statements were false or misleading.  15 U.S.C. § 78u-4(b)(1)(B).

4         Second, "a Section 14(a), Rule 14a-9 plaintiff must demonstrate that the
5    misstatement or omission was made with the requisite level of culpability."
6    *Desaigoudar*, 223 F.3d at 1022.  For § 14(a) claims, the required level of culpability is
7    negligence.  *See In re Verisign, Inc., Derivative Litig.,* 531 F. Supp. 2d 1173, 1211
8    (N.D. Cal. 2007).  Furthermore, because the "PSLRA's pleading requirements are
9    applicable to [Rule 14a-9] claims, the [Amended Complaint] must thus be plead[ed]
10   with particularity and state facts that give rise to a strong inference of negligence."  *In*
11   *re Gemstar-TV Guide, Int'l Inc. Sec. Litig.*, No. CV 02-02775-MRP (PLAx), 2003 U.S.
12   Dist. LEXIS 25884, at *30–31 (C.D. Cal. Aug. 15, 2003); *see Jobs,* 593 F.3d at 1022.

13        Here, Plaintiffs allege as part of Claim Two that "Defendants were at least
14   negligent in filing" the three proxies at issue.  (AC ¶ 241.)  This allegation is presumably
15   founded upon the claim that "[b]y virtue of their positions within the Company and/or
16   roles in the process and in the preparation of the above-referenced proxies, Defendants
17   were aware of this information and of their duty to disclose this information in the
18   proxies."  (*Id.* ¶ 240.)

19        Plaintiffs do not plead Defendants' negligence to the PSLRA's heightened
20   standard.  As with their Rule 10b-5 fraud claim, Plaintiffs cannot rely on group pleading.
21   *In re Am. Apparel*, 2013 WL 174119, at *25.  Nor can Plaintiffs rely on conclusory
22   labels or boilerplate references to corporate executive duties.  *See Metzler*, 540 F.3d
23   1049 at 1068 (rejecting a complaint's reference to the "day-to-day" experiences of a
24   corporate executive to establish scienter).  As discussed, much of Plaintiffs' Amended
25   Complaint relies on these devices, and this claim also fails for that reason.  The
26   PSLRA's "exacting pleading obligation . . . presents no small hurdle for the securities
27   fraud plaintiff," and in this case, Plaintiffs did not clear the hurdle.  *Nguyen*, 962 F.3d
28   at 414 (internal quotation marks and brackets omitted).

1       For these reasons, the Court **GRANTS** the motion as to Claim Two.

2 **C.    Claim Three Against Individual Defendants under § 20(a)**

3       Plaintiffs' Claim Three is for control person liability under § 20(a) of the

4 Securities Exchange Act of 1934. A claim under § 20(a) is dependent on a primary

5 violation of either § 10(b) or § 14(a) of the Exchange Act or Rule 10b-5 or Rule 14a-9.

6 *Zucco*, 552 F.3d at 990 (holding the existence of a primary violation is a prerequisite

7 for control person liability under § 20(a)); *Golub v. Gigamon Inc.*, 847 F. App'x 368,

8 373 (9th Cir. 2021) (affirming dismissal of a § 20(a) claim when plaintiff failed state an

9 actionable claim under § 14(a)). As the Court finds that Plaintiffs fail to plead a

10 violation of either § 10(b) or § 14(a), the Court **GRANTS** the Motion as to Claim Three.

11 **D.    Leave to Amend**

12       Generally, a court should freely give leave to amend a dismissed complaint.

13 *See* Fed. R. Civ. P. 15(a); *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052

14 (9th Cir. 2003) (emphasizing leave to amend is "especially important in the context of

15 the PSLRA" because "an unprecedented degree of specificity is required" and "the

16 drafting of a cognizable complaint can be a matter of trial and error"). The Court

17 **GRANTS** Plaintiffs leave to amend with respect to the claims and issues addressed

18 herein.

19 **E.    Form of Pleading**

20       The disorganized, prolix nature of the Amended Complaint is an additional basis

21 for granting Defendants' Motion. "Neither courts nor defendants should have to wade

22 through the morass of 'puzzle pleadings' as this wastes judicial resources and

23 undermines the requisite notice for a defendant to respond." *In re New Century*, 588 F.

24 Supp. 2d 1206, 1218–19 (C.D. Cal. 2008). Dismissal is appropriate when, as here,

25 "[t]he inconsistent use of emphasis, use of cross-references, and failure to delineate the

26 reasons why statements were false and misleading presented in the [complaint] require

27 the [c]ourt to parse through statements to discover which are false and misleading . . . ."

28 *Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW (FFMx), 2017 WL 10363990,

at *8 (C.D. Cal. Nov. 20, 2017).  As the Court has observed herein, there are vast swaths of Plaintiffs' 132-page pleading that do little to advance or support Plaintiffs' claims. There are also aspects of the pleading that are repetitive, often in a way that contributes ambiguity and uncertainty to the pleading.  (*See, e.g.*, AC ¶¶ 62, 141.)

It is "[t]he plaintiff" who "has the responsibility to craft a clear and concise complaint." *In re New Century*, 588 F. Supp. 2d at 1219.  The problem with Plaintiffs' pleading is not that it is too short, and merely adding allegations to this already byzantine pleading is unlikely to convince the Court that a claim has been stated. Accordingly, the Court will take a jaundiced view of any amended pleading that is longer than the current one and may strike an amended pleading in this matter if it perpetuates the prolixity that prevents meaningful analysis of the claims.

## VI.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss the Amended Class Action Complaint, **with leave to amend**.  (ECF No. 55.) If Plaintiffs elect to file a Second Amended Class Action Complaint ("SAC"), they shall do so within **twenty-one (21)** days of the date of this Order.  If Plaintiffs file a SAC, Defendants shall file a response no later than **fourteen (14) days** from the date Plaintiffs file the SAC.  If Plaintiffs do not timely file a SAC, then as of their deadline and without further notice this dismissal shall be with prejudice.

**IT IS SO ORDERED.**

August 25, 2021

OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE